# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| ROBERT DILLOW, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:22cv280 |
| | ) | |
| VIRGINIA POLYTECHNIC INSTITUTE | ) | |
| AND STATE UNIVERSITY, et al., | ) | |
| | ) | |
|    Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Shara Penermon ("Penermon"), Steven Schuh ("Schuh"), Katie Polidoro ("Polidoro"), Anthony Scott ("Scott"), and Frances Keene ("Keene") (collectively "Defendants"), by counsel, submit this brief in support of their Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

In this case, Robert Dillow claims that his two-year suspension from Virginia Tech violated his constitutional rights to due process and equal protection under the law and violated Title IX of the Education Amendments of 1972. After a female student accused Dillow of sexual assault in February 2020, Virginia Tech commenced an investigation of the female's allegations, held a disciplinary hearing in April 2020, and ultimately concluded that Dillow's actions warranted a two-year suspension.

For a number of reasons, Dillow's Complaint fails to state a cognizable cause of action pursuant to either 42 U.S.C. § 1983 or Title IX. First and foremost, his claims are time-barred. Second, he fails to allege a liberty or property interest for purposes of his



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 1 -

due process claims, and as a matter of law, Dillow received the process he was due. Dillow's equal protection and Title IX claims fail to state a claim as well, as he fails to allege sufficient facts creating an inference that gender bias was the "but for" cause of his suspension. As such, Dillow's Complaint should be dismissed with prejudice.

<u>**STATEMENT OF ALLEGED FACTS**</u>

In January 2020, a female student at Virginia Tech, Jane Doe ("Doe"), met Dillow, also a Virginia Tech student, through Tinder, a dating app. ECF No. 1, ¶¶ 3, 19, 21. Through the messaging feature of the app, Doe and Dillow planned to meet in person on January 27. <u>Id.</u>, ¶ 21. Dillow and one of his friends met Doe on the evening of January 27 at a restaurant in Blacksburg where both Dillow and Doe each consumed a Long Island Iced Tea and a hamburger. <u>Id.</u>, ¶ 23. The trio then went to a bar where Dillow and Doe each consumed acocktail and then shared another cocktail. <u>Id.</u>, ¶ 24. Doe was unable to "drive due to her consumption of alcohol," so Dillow called a friend to pick them up from the bar and help move Doe's car so that it would not be towed that night. <u>Id.</u>, ¶¶ 25–26.

Dillow and Doe went to Dillow's apartment and played video games and "attempted to make brownies." <u>Id.</u>, ¶ 27. At some point, Doe was in Dillow's bedroom. <u>Id.</u> Both were sufficiently intoxicated that neither could remember if they had sexual intercourse. <u>Id.</u> Dillow claims Doe fell asleep in the living room around 12:30 am, and at approximately 1:00 am Doe called her ex-boyfriend to pick her up from Dillow's apartment. <u>Id.</u>, ¶ 28. The ex-boyfriend arrived around 1:30 am, and Doe kissed Dillow before leaving the apartment. <u>Id.</u>

The next day, January 28, Dillow and Doe exchanged text messages, and Dillow wrote, "I found a condom wrapper on the floor so we either fu[****] or we decided to



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0449\NHS
4864-8927-7230 .v9

blow it up like a balloon LMAO." Id., ¶ 29. After reading that message, Doe allegedly "came to believe that a sexual assault had occurred" and reported to the Blacksburg Police Department ("BPD") that Dillow had sexually assaulted her. Id., ¶ 30. Doe had "a sexual assault PERK exam performed the same day," and the BPD took statements from Dillow and Dillow's friend. Id. According to Dillow, the Commonwealth's Attorney for Montgomery County declined to bring charges against Dillow "due to a lack of evidence." Id.

On February 3, 2020, Doe made a complaint to Virginia Tech's Title IX office accusing Dillow of sexually assaulting her. Id., ¶ 31. On February 11, defendant Penermon informed Dillow that Virginia Tech had initiated a Title IX investigation against him and issued a no-contact order against him as to Doe. Id., ¶ 32. Penermon conducted the investigation and prepared a Title IX investigation report containing: (1) statements from Dillow, Doe, and others; (2) screenshots of text messages on or around the night in question; and (3) the BPD police report regarding Doe's allegations. Id., ¶ 33. The "results of the PERK exam were not included" in the report. Id.

Penermon submitted the Title IX report on March 23, 2020, and on April 21, defendant Sloan sent Dillow some additional documents Doe prepared and submitted for the hearing scheduled the next day. Id., ¶ 35 (". . . Sloan sent Plaintiff several additional documents **that Jane Doe had prepared** for their Title IX hearing . . . .") (emphasis added). Dillow claims Doe's documents contained additional statements that were absent from Doe's statement in the Title IX report. Id. Dillow contends that he did not have a "meaningful time to respond" to these statements because the hearing was set for the next day. Id., ¶ 36. Dillow does not allege that he asked anyone at Virginia Tech to



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0449\NHS
4864-8927-7230 .v9

reschedule the hearing so that he could consider these additional statements. He does not allege when Virginia Tech received these documents or that Virginia Tech delayed delivering them to Dillow.

Virginia Tech held a hearing on Doe's allegations against Dillow on April 22, 2020. Defendant Schuh and another hearing officers were responsible for determining if Dillow violated Virginia Tech policy based on a preponderance of the evidence standard. Id., ¶¶ 37, 50. Dillow does not provide any allegations as to what occurred or what evidence or testimony was presented at the hearing. On April 24, 2020, Dillow was found responsible for the offense of Sexual Violence-Rape and suspended for two years. Id., ¶ 38. Dillow appealed the decision on May 3, 2020, and on June 16, 2020, defendant Keene, the assigned appellate officer, denied Dillow's appeal. Id., ¶¶ 39–40, 43.

ARGUMENT & AUTHORITY

**I.   Standard of Review**

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content in a complaint that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.



629.0449\NHS
4864-8927-7230 .v9

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. <u>Wag More Dogs, LLC v. Cozart</u>, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," <u>ACA Financial Guaranty Corp. v. City of Buena Vista</u>, 298 F. Supp. 3d 834, 855 (W.D. Va. 2018), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." <u>ACA Fin. Guar. Corp.</u>, 917 F.3d at 212 (internal quotations omitted).

The pleadings of pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551, U.S. 89, 94 (2007). But that "'does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a . . . claim . . . .'" <u>Agbaje v. Hargrave Military Acad.</u>, 328 F. Supp. 3d 539, 544 (W.D. Va. 2018) (quoting <u>Knowles v. S.C. Dep't of Corrs.</u>, No. 2:09-1921-MBS, 2010 WL 2990157, at *3, 2010 U.S. Dist. LEXIS 76984 (D.S.C. July 29, 2010)). Likewise, the court must not "act as an . . . advocate," conjuring "claims not specifically raised in a complaint." <u>Hoye v. Gilmore</u>, No. 7:15cv203, 2016 WL 3512275, 2016 U.S. Dist. LEXIS 80880, at *5 n.2 (W.D. Va. June 20, 2016) (citing <u>Brock v. Carroll</u>, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985); <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978)).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 5 -

## II.  **Plaintiff's Due Process, Equal Protection, and Title IX Claims are Time-Barred**

While often not suited for determination at the motion to dismiss stage, the affirmative defense that a claim is time-barred may be decided under Rule 12(b)(6) "if all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Here, Dillow expressly alleges that he received notice that he had been found responsible for the student conduct violation on April 24, 2020. ECF No. 1, ¶ 38. Yet, Dillow did not file his Complaint until June 2, 2022. As set forth more fully below, Dillow's claims are time-barred.

### a.  **Fourteenth Amendment Claims**

Dillow asserts Defendants violated his rights to due process and equal protection under the law as guaranteed by the Fifth Amendment and made applicable to the states pursuant to the Fourteenth Amendment to the United States Constitution. These claims are barred because they were not filed within two years of their accrual on April 24, 2020.

The statute of limitations for § 1983 claims is the state limitations period for personal injury actions. John Doe v. Va. Polytechnic Inst. & State Univ., 400 F. Supp. 3d 479, 489–90 (W.D. Va. 2019)[1] (citing Owens v. Balt. City State's Attys. Office, 767 F.3d 379, 388 (4th Cir. 2014); A Soc'y Without a Name, for People Without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011)). In Virginia, personal injury claims must be brought within two years from the accrual of the cause of action. Va. Code § 8.01-243(A). Under federal law, "[a] civil rights claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" A Soc'y Without a Name, 655 F.3d at 348 (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). So, when

---

[1] Hereinafter referred to as "Doe I v. Va. Tech."

629.0449\NHS
4864-8927-7230 .v9

a "plaintiff possesses sufficient facts about the harm done to him [such] that reasonable inquiry will reveal his cause of action," the statute of limitations clock begins counting down. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing United States v. Kubrick, 444 U.S. 111, 123 (1979)).

For purposes of accrual, the "proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam). Once the plaintiff "can file suit and obtain relief," his claim has accrued. Green v. Brennan, 578 U.S. 547, 554 (2016) (internal quotations and citation omitted).

Multiple courts across the country, including this one, have determined that claims involving student dismissals or suspensions accrue upon the university's issuance of its initial decision. See Doe I v. Va. Tech, 400 F. Supp. 3d at 492–93; Tolliver v. Prairie View A&M Univ., No. H-18-1192, 2018 WL 4701571, 2018 U.S. Dist. LEXIS 169031, at *6 (S.D. Tex. Oct. 1, 2018); Endres v. Ne. Ohio Med. Univ., No. 5:17cv2408, 2018 WL 4002613, 2018 U.S. Dist. LEXIS 142745, at *16–17 (N.D. Oh. Aug. 22, 2018); Samuelson v. Or. State Univ., 162 F. Supp. 3d 1123, 1134–35 (D. Or. 2016); Datto v. Harrison, 664 F. Supp. 2d 472, 485 (E.D. Pa. 2009); Siblerud v. Colo. State Bd. of Agric., 896 F. Supp. 1506, 1511 (D. Colo. 1995) (citing Ricks, 449 U.S. at 261).

The moment Dillow could file his lawsuit was the same moment he learned of Virginia Tech's decision to suspend him after the allegedly discriminatory and constitutionally inadequate process afforded him.  Here, Dillow affirmatively pleads that he received notice of Virginia Tech's decision to suspend him on April 24, 2020. Because Dillow did not file this action until June 2, 2022—more than two years later—the only



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

piece of his claim that could potentially proceed forward would be a Fourteenth Amendment violation in regard to Dillow's appeal of the suspension decision. See <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 490–91.

### b. <u>Title IX</u>

Similar to 42 U.S.C. § 1983, "Title IX does not contain an express statute of limitations . . . ." <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, No. 7:21cv378, ____ F. Supp. 3d _____, 2022 WL 3006391, 2022 U.S. Dist. LEXIS 134267, *37 (W.D. Va. July 28, 2022)[2] (citing <u>Wilmink v. Kanawha Cnty. Bd. of Educ.</u>, 214 F. App'x. 294, 296 n. 3 (4th Cir. 2007)). Thus, courts apply the forum state's statute of limitations for personal injury claims to a plaintiff's claim under Title IX. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 495–96; Va. Code § 8.01-243(A).

When exactly a Title IX claim accrues for purposes of the statute of limitations rests in federal law. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 489–90, 494 (citations omitted). Again, like 42 U.S.C. § 1983 claims,

> the touchstone for determining the commencement of the limitations period is *notice*: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action. The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.

<u>Samuelson v. Oregon State Univ.</u>, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016), <u>aff'd</u>, 725 F. App'x 598 (9th Cir. 2018) (emphasis added); <u>Stanley v. Trustees of California State University</u>, 433 F.3d 1129, 1136 (9th Cir. 2006) (quoting <u>Hoesterey v. City of Cathedral City</u>, 945 F.2d 317, 319 (9th Cir. 1991) (internal quotations and citations omitted)). Therefore, when a "plaintiff possesses sufficient facts about the harm done to him [such]



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[2] Hereinafter referred to as "<u>Doe II v. Va. Tech</u>".

629.0449\NHS
4864-8927-7230 .v9

that a reasonable inquiry will reveal his cause of action," the statute of limitations begins to run. <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

In <u>Doe I v. Va. Tech</u>, Judge Dillon joined the overwhelming weight of authority that Title IX gender discrimination claims accrue upon notice of the discriminatory act, not when the consequences of that act become most painful. In those cases, consolidated for purposes of the Court's decision on Virginia Tech's motions to dismiss, several former Virginia Tech students alleged gender bias in Virginia Tech's student conduct process. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 485. The <u>Doe I</u> Court had to address the issue of when those plaintiffs' respective claims accrued for purposes of Virginia Tech's statute of limitations defense. <u>Id.</u> at 490, 494.

In their briefing on the issue of accrual, the parties in <u>Doe I v. Va. Tech</u> addressed at length the Supreme Court's decision in <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980). <u>Id.</u> In <u>Ricks</u>, the Supreme Court held that the applicable statute of limitations began to run for a professor's Title VII claim when the college denied the professor tenure and notified him of that decision—not when the professor felt the final effects of the decision. <u>Ricks</u>, 449 U.S. at 258, 261. Judge Dillon found the <u>Ricks</u> decision directly applicable, along with several other district court cases from across the country. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 490–92.

More recently, Judge Urbanski adopted Judge Dillon's reasoning from <u>Doe I v. Va. Tech</u> to find that another Title IX claim against Virginia Tech was time-barred. <u>Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 134267, *37–38. In that case, the male plaintiff alleged that his professor allocated grant funds to a female student and claimed that decision represented



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0449\NHS
4864-8927-7230 .v9

a violation of Title IX. Id. at *36–37. Because the allocation occurred in 2018, and Doe did not file suit until June of 2021, the claim regarding the 2018 grant funding was time-barred. Id. at *38. That plaintiff also alleged that the professor allocated grant funds to the female student in 2019-2020. Id. at *44. Notably, Judge Urbanski parsed that claim from the claim regarding the 2018 grant funds just as Judge Dillon parsed the claims regarding the student conduct hearing and the appeal process in Doe I v. Va. Tech. Compare id. at *44–45 with Doe I v. Va. Tech, 400 F. Supp. 3d at 493.

Here, just as in Doe I v. Va. Tech, Dillow's Title IX claim regarding his suspension began to run on the date he received notice of Virginia Tech's decision to suspend him, which he affirmatively alleges occurred more than two years before he filed this lawsuit. Therefore, that claim is time-barred, and the only claim that could potentially proceed forward would be a Title IX violation in regard to Dillow's appeal of the suspension decision. See Doe I v. Va. Tech, 400 F. Supp. 3d at 490–91.[3]

### III. **Dillow Fails to State an Actionable Procedural Due Process Claim**

Not only is Dillow's due process claim time-barred, but Count I of the Complaint fails to state a claim for relief because Dillow fails to allege a recognized liberty or property interest. Furthermore, he concedes he received advance notice of the charges against him and an opportunity to be heard prior to the adverse action. Finally, if the only claim that is timely is Dillow's claim regarding the appeal, there are no allegations implicating any procedural due process concerns as to the appeal.

---

[3]  See also Lendo v. Garrett Cnty. Bd. of Educ., 820 F.2d 1365, 1367 (4th Cir. 1987); Martin v. Clemson Univ., 654 F. Supp. 2d 410, 421–22 (D.S.C. 2009); Morris v. Government Dev. Bank, 27 F.3d 746, 749 (1st Cir. 1994).

**a.** <u>**Dillow fails to allege a liberty or property interest.**</u>

Dillow's due process claim fails to allege a protected property or liberty interest to buttress his due process claim. As such, the claim fails as a matter of law.

The Fourteenth Amendment provides that "no state shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to allege a due process claim under the Fourteenth Amendment, Dillow must allege facts sufficient to show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." <u>Kendall v. Balcerzak</u>, 650 F.3d 515, 528 (4th Cir. 2011). Whether he satisfactorily alleges a protected property or liberty interest is a pure question of law. <u>Tompkins v. U.S. Dep't of Veterans Affairs</u>, 16 F.4th 733, 739, n.7 (10th Cir. 2021).

The deprivation of a protected interest warrants some sort of notice and opportunity to be heard. <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1975). But a procedural due process violation occurs only with respect to the deprivation of liberty and property interests that the Fourteenth Amendment actually encompasses. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).

Dillow describes his property interest as "a constitutionally protected property interest in his undergraduate education at Virginia Tech given that Plaintiff paid tuition to Virginia Tech in order to attend classes." ECF No. 1, ¶ 48. Dillow describes his liberty interest as "a constitutionally protected liberty interest in his reputation as well as his freedom to pursue a career in Food Science, his chosen career path." <u>Id.</u>, ¶ 49. Dillow's allegations, however, fall woefully short of those necessary to state a due process claim.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0449\NHS
4864-8927-7230 .v9

Indeed, they are even more deficient than the allegations Judge Urbanski recently summarily dispensed with in <u>Doe II v. Va. Tech</u>.

**1.   Dillow does not have a property interest in his continued education.**

As to Plaintiff's alleged property interest in his continued education, "[a] property interest is 'created and its dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.'" <u>Doe v. Alger</u>, 228 F. Supp. 3d 713, 725 (W.D. Va. 2016) (hereinafter "<u>Alger II</u>") (internal quotations and citation omitted). Property interests are not created by abstract needs or desires. Rather, they must arise from "state statutes, contracts, regulations, or policies." <u>Id.</u> Additionally, constitutionally protected property interests do not arise from unilateral expectations or abstract needs or desires. <u>Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 134267, *16.

Dillow does not rely on a state statute or regulation to support his claimed property interest. Instead, he appears to rely only on an implied contract between Dillow and Virginia Tech based upon his payment of tuition. ECF No. 1, ¶ 48. That single, conclusory allegation is insufficient as a matter of law to allege a cognizable property interest in continued education at a public university.

At the outset, neither the Supreme Court nor the Fourth Circuit has actually recognized a property right to continued enrollment in a public college or university. <u>Sheppard v. Visitors of Va. State Univ.</u>, 933 F.3d 230, 239 (4th Cir. 2021). Nor have they recognized "that the Commonwealth of Virginia has created such a right." <u>Doe v. Alger</u>, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) (hereinafter "<u>Alger I</u>"). Indeed, it is "undisputed that the Commonwealth of Virginia has not created a property interest in continued



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0449\NHS
4864-8927-7230 .v9

university education." <u>Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 134267, *19 (citations omitted).[4]

In <u>Alger I</u>, a plaintiff's procedural due process claim survived a motion to dismiss. <u>Id.</u> at 658. But that plaintiff alleged that James Madison University ("JMU") created a property right in the plaintiff's continued education by adopting policies allowing for dismissal, suspension, or expulsion of students only for cause. <u>Id.</u> at 657. The plaintiff in <u>Alger I</u> also claimed that JMU's student rights policy served as a basis for his entitlement to continued enrollment. <u>Id.</u> at 658. In fact, the allegations in <u>Alger I</u> regarding the plaintiff's alleged property interest spanned approximately four single-spaced pages, and he attached and quoted extensively from JMU's Policy on Student Rights to buttress his claim. <u>See</u> <u>Doe v. Alger</u>, No. 5:15cv35, ECF No. 30, at *2–4, 18–19 (July 17, 2015). The <u>Alger I</u> Court did not conclude that a property right actually existed based on those allegations. Rather, the court decided those allegations were sufficient to allow the plaintiff the opportunity to prove one existed. <u>See</u> <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 500. By comparison, the allegations in <u>Alger I</u> stand in stark contrast to the single, conclusory allegation present in paragraph 48 of Dillow's Complaint.

A little over a month ago, Judge Urbanski also concluded that a student failed to allege sufficient facts to support a property interest in continued university education. <u>Doe II v. Va. Tech</u> 2022 U.S. Dist. LEXIS 134267, at *26–28. In that case, the plaintiff

---

[4]  There is "'no statutory right to be a public or private college or university student.'" <u>M.B. v. McGee</u>, No. 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) (quoting <u>Alger</u>, 175 F. Supp. 3d at 660); <u>see also</u> <u>Abbas v. Woleben</u>, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446, [*cont.*] at *19 (E.D. Va. 2013); <u>Nofsinger v. Va. Commonwealth Univ.</u>, No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. July 13, 2012), <u>aff'd</u>, 523 F. App'x 204 (4th Cir. 2013); <u>McCoy v. E. Va. Med. Sch.</u>, No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, 2012 WL 662529, at *2 (E.D. Va. Feb. 28, 2012); <u>Davis v. George Mason Univ.</u>, 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005), <u>aff'd</u>, 193 F. App'x 248 (4th Cir. 2006).

- 13 -

FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

alleged his payment of tuition and vague policies and customs created a property interest in continued enrollment. Id. at *27. Judge Urbanski disagreed, finding that student had merely alleged an abstract need or desire for continued enrollment. Id. at *27–28 (citation omitted).

Dillow does not allege any facts undergirding his alleged property interest in his education, and his insinuation that his payment of tuition created a property right arising out of some sort of contractual relationship between Dillow and Virginia Tech is the very same argument that has been rejected time and time again. Simply put, the payment of tuition does not create an express or implied contract. See Jacob Doe v. Va. Tech, No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *17 (W.D. Va. Mar. 19, 2020) (hereinafter "Jacob Doe v. Va. Tech") (citing Doe v. Washington & Lee Univ., 439 F. Supp. 3d 784 (W.D. Va. 2020); Doe v. Marymount Univ., 297 F. Supp. 3d 573, 588 (E.D. Va. 2018)); see also George v. Averett Univ. of Danville, No. 4:19cv8, 2019 WL 3241177, 2019 U.S. Dist. LEXIS 119600, at *7–8 (W.D. Va. July 18, 2019) (Kiser, J.); see also Doe II v. Va. Tech, 2022 U.S. Dist. LEXIS 134267, *27–28.

Dillow's attempt to assert a property interest in his continued education based upon the payment of tuition has no basis in the law. Here, just like the plaintiffs in Doe II v. Va. Tech, Doe I v. Va. Tech, Jacob Doe v. Va. Tech, and other recent decisions involving university student discipline, Dillow fails to allege a cognizable property interest in his continued education.[5]

---

[5] While not alleged here, there is no liberty interest in a college student's continued education either. See Jacob Doe v. Va. Tech, 2020 U.S. Dist. LEXIS 47754, at *12–13 (citing Alger 1, 175 F. Supp. 3d at 657–58); Doe I v. Va. Tech, 400 F. Supp. 3d at 499.

629.0449\NHS
4864-8927-7230 .v9

**2.  Dillow fails to allege a protected liberty interest.**

Dillow also fails to allege a liberty interest to support a due process claim because there is no protected liberty in his reputation. Under <u>Paul v. Davis</u>, 424 U.S. 693 (1976), reputation injury must be accompanied by some "state action that distinctly altered or extinguished a legal status or right . . . ." <u>Alger I</u>, 175 F. Supp. 3d at 660 (citing <u>Shirvinski v. U.S. Coast Guard</u>, 673 F.3d 308, 315 (4th Cir. 2012); <u>Doe v. Rector & Visitors of George Mason Univ.</u>, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015)). This "stigma-plus" element demands allegations showing that "as a result of the state action complained of, a right or status <u>previously recognized by state law</u> was distinctly altered or extinguished." <u>Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 134267, *29 (internal quotations omitted).

In <u>Doe I v. Va. Tech</u> and <u>Jacob Doe v. Va. Tech</u>, Judge Dillon concluded that an expelled university student failed to state a claim for a deprivation of a liberty interest. <u>Jacob Doe v. Va. Tech</u>, 2020 U.S. Dist LEXIS 47754, at *12–13; <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 499. Both decisions relied on her prior analysis in <u>Alger I</u>. <u>Id.</u>

In <u>Alger I</u>, Judge Dillon ruled that allegations more substantial than those in Dillow's Complaint were still insufficient to state a claim for deprivation of a liberty interest. <u>Alger I</u>, 175 F. Supp. 3d at 658. The plaintiff in <u>Alger I</u> maintained that "he had 'a protected liberty interest in his good name, reputation, honor, and integrity,'" claimed that "stigmatizing information [would] be part of his permanent record and . . . shared with other colleges and universities." <u>Id.</u> Finding Fourth Circuit precedent in the government employment context distinguishable, the <u>Alger I</u> Court concluded those allegations failed to state a constitutionally protected liberty interest. <u>Id.</u> at 661.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 15 -

Here, the Complaint in this case is similarly ill-fated: Dillow alleges damage to his reputation only and his "freedom to pursue . . . his chosen career path." ECF No. 1, ¶ 49. Other than the cursory, passing reference to his alleged liberty interest, Dillow offers no factual allegations to support that claim other than the same allegation rejected by the <u>Alger I</u> Court. Thus, Dillow fails to allege sufficient facts to state a prima facie procedural due process claim, and Count I must be dismissed.[6]

**b. <u>Plaintiff received due process.</u>**

Even if Plaintiff has alleged a protected liberty or property interest, his claim still fails because he fails to allege facts showing a deprivation of the constitutionally required due process for student discipline.

The fundamental requirements of due process are fair notice and an opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985); <u>see</u> <u>also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). But what process is due is a "flexible" inquiry and depends on the "particular situation" at hand. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).

Dillow claims that "Defendants" were "constitutionally required to ensure that the Title IX hearing was conducted in a fair and impartial manner" and "to adhere to Virginia Tech's internal policy which provides that an individual accused of sexual assault cannot be found responsible unless their guilt can be established by a preponderance of the evidence." ECF No. 1, ¶ 50. Dillow alleges that defendants Penermon, Polidoro, and Scott allowed Jane Doe to submit a set of documents to the Title IX hearing and gave them to Dillow the day before the hearing. <u>Id.</u>, ¶ 51. According to Dillow, receiving the documents



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[6]  Furthermore, Virginia law provides a process to have the notation on Dillow's transcript expunged. <u>See</u> Va. Code § 23.1-900(C); ECF No. 1, ¶ 66.

629.0449\NHS
4864-8927-7230 .v9

the day before the hearing denied him a "meaningful opportunity to respond" to them. <u>Id.</u>
Yet, he does not allege when anyone at Virginia Tech received these documents, and he
fails to allege that he asked for additional time to respond.

Dillow also maintains that defendant Schuh violated his due process rights by
finding him responsible for sexual assault "despite lacking a preponderance of the
evidence." <u>Id.</u>, ¶ 53. Dillow also claims Penermon failed to investigate the dynamic
between Jane Doe and her ex-boyfriend as a motive for Jane Doe to make a false
accusation and that Schuh and Tully did not "give any weight to this dynamic" either. <u>Id.</u>, ¶
59. Keene allegedly violated Dillow's due process rights by "upholding the decision . . . ."
<u>Id.</u>, ¶ 61.

Defendants afforded Plaintiff the "rudiments of procedural due process--notice and
an opportunity to be heard." <u>Butler v. Rector & Bd. of the Coll. of William & Mary</u>, 121 F.
App'x 515, 520 (4th Cir. 2005). To meet that standard, "[t]he proceedings need not . . .
take the form of a judicial or quasi-judicial trial; so long as the student is given notice of
the charges against him, notice of the time of the hearing, and a full opportunity to be
heard . . . ." <u>B.S. v. Bd. of Sch. Trs.</u>, 255 F. Supp. 2d 891, 898 (N.D. Ind. 2003). In the context
of student discipline, the Supreme Court has stated with respect to short suspension cases
that "there need be no delay between the time notice [of the charge] is given and the time
of the hearing." <u>Goss v. Lopez</u>, 419 U.S. 565, 582 (1975). In this Circuit, "the standards
established by the Fifth Circuit in <u>Dixon v. Alabama State Board of Education</u>, 294 F.2d
150 (5th Cir. 1961)" applies. <u>Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 1324267, *31
(citations omitted). The <u>Dixon</u> Court described the process due as follows:

> The notice should contain a statement of the specific charges and grounds
> which, if proven, would justify expulsion under the regulations of the Board



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0449\NHS
4864-8927-7230 .v9

of Education.... [A] hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection. If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled.

Dixon, 294 F.2d at 158–59.

The essence of Dillow's claim is that he did not receive adequate notice in advance of the hearing regarding some documents submitted by Jane Doe. The rest of his claim is merely a disagreement with the findings by the hearing officers. Dillow does not allege that he did not receive adequate or timely notice of the *charges* against him. He does not allege that he was not permitted to present witnesses, have a representative to advise him, or cross-examine Jane Doe. He does not allege that he could not present his own documents as evidence. He takes no qualm with the burden of proof at the disciplinary hearing. Rather, he merely claims that—in his opinion—the evidence was insufficient to meet that burden.

By Dillow's own allegations, he knew that Jane Doe filed a report with the Blacksburg Police Department on January 28, 2020, and he agreed to be interviewed by the police in regard to Doe's report. ECF No. 1, ¶ 30. On February 11, he received notice of the Title IX investigation. Id., ¶ 32. The investigator completed a report on Doe's



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 18 -

allegations on March 23, and the hearing was held almost a month later on April 22. <u>Id.</u>, ¶¶ 33, 36. While Dillow alleges Doe submitted additional, new information that was provided to him on April 21, he does not allege when Virginia Tech received it or claim that Virginia Tech withheld it until the day before the hearing. <u>See</u> <u>id.</u>, ¶ 35. He does not allege that Virginia Tech failed to provide advance notice of the hearing; he merely takes issue as to when Doe submitted her "new" evidence. He also fails to allege that he was prevented from or otherwise unable to cross-examine Doe as to the "new" information he claims was in those documents.

Thus, by the time of the hearing, Dillow had almost four months' notice of the allegations against him and a little over two months' notice of the initiation of the Title IX investigation by Virginia Tech. That was more than adequate time to prepare his defense and contact any witnesses. Accordingly, Plaintiff fails to allege sufficient facts to suggest Virginia Tech denied him adequate notice and a meaningful opportunity to be heard. That Doe submitted an additional statement in advance of the hearing was not in the control of Defendants, and Defendants provided it to Dillow without any allegation of a delay. Dillow had the opportunity to review the statements in advance of the hearing rather than having to respond to them in the moment at the hearing. Additionally, while Dillow claims that Penermon did not investigate the "dynamic" between Doe and her ex-boyfriend, he does not allege that he was precluded from presenting any information or evidence on that subject at the hearing.

Lastly, there are no factual allegations as to how the appeal was procedurally defective.



629.0449\NHS
4864-8927-7230 .v9

The Complaint confirms Virginia Tech performed an investigation, provided Dillow with notice of the charges against him well before his hearing, provided him additional evidence from his accuser after receiving it and in advance of the hearing, held a hearing, and provided Dillow a right to appeal. Taken together, these allegations show that Virginia Tech provided Doe adequate notice and a "meaningful hearing." Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002); Butler, 121 F. App'x at 520; Cobb v. Rector & Visitors of the Univ. of Va., 69 F. Supp. 2d 815, 829 (W.D. Va. 1999). The Constitution does not promise him anything more. Dillow's simple disagreement with the outcome of the hearing and appeal does not trigger due process concerns absent any procedural shortcomings. For these reasons, in addition to those stated above, Dillow's due process claim fails as a matter of law.

## IV. Dillow Fails to Allege an Equal Protection or Title IX Claim Based on Gender Bias.

Dillow's equal protection claim and Title IX claim rely on the same essential facts. Compare ECF No. 1, ¶¶ 66–75 with id. ¶¶ 76–91. When a plaintiff asserts an equal protection claim under the Fourteenth Amendment and a Title IX claim based on the same essential facts, courts typically analyze the two claims together. See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 238 (4th Cir. 2021) (affirming dismissal of equal protection claim for "largely the same reasons" as affirming dismissal of Title IX claim); Doe v. Fairfax Cnty. Sch. Bd., 403 F. Supp. 3d 508, 515 (E.D. Va. 2019) (analyzing equal protection and Title IX claims together); but see Peltier v. Charter Day Sch., Inc., 8 F.4th 251, 273–74 (4th Cir. 2021) (citing Wilcox v. Lyons, 970 F.3d 452, 463–64 (4th Cir. 2020)), aff'd en banc 37 F.4th 104 (4th Cir. 2022).



629.0449\NHS
4864-8927-7230 .v9

a. **Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. The guarantee is one of laws, not results. Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 273 (1979). To state an equal protection claim under the Fourteenth Amendment, "'a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.'" Sheppard, 993 F.3d at 238 (quoting Equity in Athletics, Inc. v. Dep't. of Educ., 639 F.3d 91, 108 (4th Cir. 2011)). "Allegations of a procedurally or otherwise flawed proceeding combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." Sheppard v. Visitors of Va. State Univ., No. 3:18cv723, 2019 WL 6039953, 2019 U.S. Dist. LEXIS 198012, *12 (E.D. Va. Nov. 14, 2019) (internal quotations omitted).

b. **Title IX**

Title IX of the Education Amendments of 1972 provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance.

20 U.S.C. § 1681(a).

In Sheppard v. Visitors of Virginia State University, the Fourth Circuit clarified the pleading standard for individual Title IX claims in the Fourth Circuit. Sheppard, 993 F.3d at 235–37. The Sheppard Court agreed—in part—with the approach to Title IX cases adopted by the Seventh Circuit, which asks whether "the alleged facts, if true, raise a plausible inference that the university discriminated against the student on the basis of



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 21 -

sex?" <u>Sheppard</u>, 993 F.3d at 236 (internal quotations omitted).[7] The <u>Sheppard</u> Court clarified, however, that "a Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged [decision]." <u>Id.</u> That causal link requires "'but-for' causation," which means that the plaintiff's "gender was the 'but-for' cause of his treatment . . . ." <u>Id.</u> at 236–37, 238 (citations omitted).

To meet that standard, the plaintiff must identify "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 503 (internal quotations and citation omitted). Allegations of "clear procedural irregularities" that "are sufficiently numerous, lopsided, and/or important" may "sometimes support an inference of sex discrimination." <u>Jacob Doe v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 144420, *32 (internal quotations and citations omitted).

Mere conjecture and speculation of discrimination based on sex, however, fails to state a claim under Title IX. <u>Yusuf</u>, 35 F.3d at 715. That a plaintiff believes that his gender was the reason for the alleged discriminatory action, "absent more, does not suffice to render his claim plausible." <u>Sheppard</u>, 993 F.3d at 238. Indeed, mere conclusory allegations are insufficient to make it plausible that gender bias was a but for cause of an alleged erroneous outcome of a disciplinary proceeding. <u>See</u> <u>Doe v. W. New Eng. Univ.</u>, 228 F. Supp. 3d 154, 190 (D. Mass. 2016), <u>adopted</u> <u>by</u> 228 F. Supp. 3d 154 (D. Mass. 2017); <u>Sahm v. Miami Univ.</u>, 110 F. Supp. 3d 774, 778–80 (dismissing plaintiff's Title IX claim

---

[7]  Prior to the decision in <u>Sheppard</u>, courts in the Western District of Virginia generally followed the analysis set forth in <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2d Cir. 1994) for analyzing Title IX claims. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 502–03. The <u>Sheppard</u> Court explained that the "selective enforcement" and "erroneous outcome" theories in <u>Yusuf</u> could be avenues to establish the requisite "but for" causation. <u>Sheppard</u>, 993 F.3d at 236.

629.0449\NHS
4864-8927-7230 .v9

because the complaint failed to allege any statements of members of the disciplinary body or university officials or any patterns of conduct that permitted the court to infer bias against male students); <u>Doe v. Univ. of Mass-Amherst</u>, No. 14-30143, 2015 WL 4306521, 2015 U.S. Dist. LEXIS 65452, at *27 (D. Mass. July 14, 2015); <u>Harris v. St. Joseph's Univ.</u>, 2014 WL 1910242, 2014 U.S. Dist. LEXIS 65452, at *16–17 (E.D. Pa. May 13, 2014) (dismissing plaintiff's Title IX claim due to his failure to allege sufficient facts to support his claim that gender bias was a motivating factor in the university's decision); <u>see</u> <u>also</u> <u>King v. DePauw Univ.</u>, No. 2:14cv70, 2014 U.S. Dist. LEXIS 117075, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) (denying plaintiff's motion for a preliminary injunction based on an alleged violation of Title IX due to the absence of any evidence that "plaintiff's gender was a motivating factor in any of [the university's] actions").

**c.   <u>Dillow offers only conclusory allegations of gender bias</u>**

Dillow's equal protection and Title IX claims fail to state a claim for multiple reasons.

First, he fails to identify a comparator in "circumstances sufficiently similar to his own and . . . treated more favorably by the school." <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 403 F. Supp. 3d 508, 516 (E.D. Va. 2019) (internal quotations omitted). To be "sufficiently similar" for equal protection purposes, the comparator "*must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it.'" <u>Sheppard</u>, 2019 U.S. Dist. LEXIS 70661 at *12 (quoting <u>Saravanan v. Drexel Univ.</u>, No. 17-3409, 2017 U.S. Dist. LEXIS 193925, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017)). Thus, "[w]here an accused student seeks to use their accuser as a comparator, the two can be compared to show



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

selective enforcement 'only if they both initiate or attempt to initiate a complaint against each other.'" <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 403 F. Supp. 3d at 516 (quoting <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 384 F. Supp. 3d 598, 608 (E.D. Va. 2019)). Because Dillow does not allege that he made a complaint against his accuser for similar misconduct, Dillow's claim fails as a matter of law. <u>Id.</u> (citing <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 384 F. Supp. 3d 598, 609 n.6 (E.D. Va. 2019); <u>Rossley v. Drake Univ.</u>, 342 F. Supp. 3d 904, 933 (S.D. Iowa 2018)).

Second, Dillow's Complaint is entirely devoid of any allegations raising an inference that any defendant was motivated by discriminatory animus. <u>Sheppard</u>, 993 F.3d at 238. The core of Dillow's claim is simply that the defendants chose to believe Jane Doe's version of events rather than Dillow's, and therefore the defendants must have been motivated by discriminatory animus. But these are exactly the type of conclusory allegations rejected by courts time and again. Indeed, if Dillow's logic rang true, then if the defendants chose to believe Dillow over Doe, that would be result of discriminatory animus against females. This is the very Catch-22 situation courts have sought to prevent by strictly requiring allegations of facts and circumstances demonstrating gender bias, not just the plaintiff's disagreement with the outcome. And without allegations that any defendant was motivated by discriminatory animus, the implication is that the defendants chose to believe the accuser over the accused, which does not amount to discrimination. <u>See</u> <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) (bias in favor of alleged victims of sexual assault and against alleged perpetrators is not the equivalent of bias against males) (collecting cases); <u>Doe v. Univ. of Cincinnati</u>, 173 F. Supp. 3d 586, 607 (S.D. Ohio 2016); <u>Haley v. Va. Commonwealth Univ.</u>, 948 F. Supp. 573, 579 (E.D. Va. 1996).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 24 -

Even if the Defendants reached the wrong decision here, "trials in civil courts sometimes produce erroneous outcomes as well as procedural errors. Appellate courts do not quickly infer that an erroneous result *must have been caused* by unlawful bias, especially in difficult credibility contests." <u>Doe v. Univ. of S. Indiana</u>, No. 22-1864, ___ F. 4th ___, 2022 U.S. App. LEXIS 21860, 2022 WL 3152596, *10 (7th Cir. Aug. 8, 2022) (emphasis added). There are simply "no facts pled that would plausibly link [Dillow's suspension] . . . to any personal animus or discrimination on the part of the individual Defendants." <u>Nofsinger v. Va. Commonwealth Univ.</u>, No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, *29–30 (E.D. Va. July 13, 2012), <u>aff'd</u> 2013 U.S. App. LEXIS 6579 (4th Cir. Apr. 2, 2013); <u>see also</u> <u>Gulyas v. Appalachian State Univ.</u>, No. 5:16cv225, 2017 WL 3710083, 2017 U.S. Dist. LEXIS 137868, *24–25 (W.D.N.C. Aug. 28, 2017) ("Notably, while Plaintiff's allegations may be sufficient to permit an inference that Defendant Elrod acted in a biased manner against Plaintiff, Plaintiff does not allege any facts—such as statements by Elrod or prior conduct by Elrod or App. State—that suggest that any bias . . . was attributable to Plaintiff's gender as opposed to the result of any number of possible non-protected factors . . . .").

Again, the crux of Dillow's claim appears to be that the hearing officers chose to believe Doe's version of events over Dillow's. But that alone coupled only with a conclusory allegation of gender bias does not meet the pleading standard set forth in <u>Sheppard</u>. And to the extent the Court agrees that Dillow's claims are time-barred except for the appeal, there are zero allegations raising any inference of gender bias in regard to the appellate officer or the appeal process.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

Without factual allegations to demonstrate the steep causation requirement that gender bias was "***the*** but-for" cause of the university's decision, Plaintiff fails to state a claim under the Equal Protection Clause or Title IX.

<u>CONCLUSION</u>

WHEREFORE, Defendants Virginia Polytechnic Institute and State University, Shara Penermon, Steven Schuh, Katie Polidoro, Anthony Scott, and Frances Keene, by counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case with prejudice, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, SHARA PENERMON, STEVEN SCHUH, KATIE POLIDORO, ANTHONY SCOTT, and FRANCES KEENE

/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: klondos@faplawfirm.com
          nschnetzler@faplawfirm.com



629.0449\NHS
4864-8927-7230 .v9

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Virginia Polytechnic Institute and
State University, Shara Penermon, Steven Schuh,
Katie Polidoro, Anthony Scott, and Frances
Keene*



629.0449\NHS
4864-8927-7230 .v9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record, and I have mailed a copy to the address of record of the *pro se* plaintiff:

Robert A. Dillow
500 Robery Street, Apt. M
Radford, VA 24141

/s/ Nathan H. Schnetzler
Of Counsel

629.0449\NHS
4864-8927-7230 .v9