## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **ROBERT DILLOW,** | **Case No. 7:22-cv-00280-TTC** |
| *Plaintiff,* | |
| v. | |
| **VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; SHARA PENERMON (in her individual capacity); SHANAI SLOAN (in her individual capacity); STEVEN SCHUH (in his individual capacity); RACHAEL TULLY (in her individual capacity); KATIE POLIDORO (in her individual capacity); ANTHONY SCOTT (in his individual capacity); FRANCES KEENE (in his individual capacity); and DOE DEFENDANTS 1-20 (in their individual capacities),** | **FIRST AMENDED COMPLAINT** |
| *Defendants.* | |

## I.   INTRODUCTION

This is an action arising from Plaintiff's dismissal from Virginia Polytechnic Institute and State University, during which he was subjected to gender-based discrimination and deprived of his due process rights. Plaintiff is seeking damages and injunctive relief for Defendants' violation of Plaintiff's due process and equal protection under 42 U.S.C. §1983 and violations of Title IX under 20 U.S.C. §1681.

Defendants are also responsible for negligent infliction of emotional distress and breach of contract.

## II.   <u>PARTIES</u>

1.     Plaintiff Alex Dillow (hereinafter "Plaintiff" or "Dillow") is a former student of Virginia Polytechnic Institute and State University. Plaintiff is a citizen and resident of Virginia.

2.     Defendant Virginia Polytechnic Institute and State University (hereinafter referred as "the University" or "Virginia Tech") is a land grant institution, founded and incorporated in 1872 at Blacksburg, Virginia — which is located in Montgomery County. At all times relevant to this Complaint, the defendant's principal place of business was located within the Commonwealth of Virginia. Virginia Tech is a recipient of Federal Funding.

3.     Defendant Shara Penermon (hereafter "Defendant Penermon") was employed by Virginia Tech as a Title IX investigator at all times relevant to this litigation.

4.     Defendant Steve Schuh (hereafter "Defendant Schuh") was employed by Virginia Tech as the Assistant Director of Student Conduct at all times relevant to this litigation.

5.      Defendant Rachael Tully (hereafter "Defendant Tully") was employed by Virginia Tech as the Student Conduct Coordinator at all times relevant to this litigation.

6.      Defendant Kathryn Polidoro (hereafter "Defendant Polidoro") was employed by Virginia Tech as a Title IX Coordinator at all times relevant to this litigation.

7.      Defendant Anthony Scott (hereafter "Defendant Scott") was employed by Virginia Tech as the Associate Dean of Students at all times relevant to this litigation.

8.      Defendant Frances B. Keene (hereafter "Defendant Keene") was employed by Virginia Tech as the as the Assistant Vice President for Student Affairs at all times relevant to this litigation.

9.      Defendant Shanai Sloan (hereinafter "Defendant Sloan") was employed by Virginia Tech at all times relevant to this litigation.

10.      Defendants DOES 1-20 (hereafter "DOE Defendants") are individuals who are or were employed by Virginia Tech and participated in Mr. Doe's Title IX proceedings at all times relevant to this litigation.

### III.   JURISDICTION & VENUE

11.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or law of the United States.

12.     In accordance with 28 U.S.C. §1367, this court also has supplemental jurisdiction over Plaintiff's state law claim for negligence infliction of emotional distress.

13.     Defendant Virginia Tech conducts business in the State of Virginia. Defendants Penermon, Sloan, Schuh, Tully, Polidoro, Scott, Keene and Doe Defendants 1-10 on the grounds that they were employees of Virginia Tech at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Virginia.

14.     Venue in this action is property in the Western District of Virginia because the events relevant to this action occurred primary within the geographical confines of the Western District of Virginia.

### IV.   FACTUAL ALLEGATIONS

15.     Plaintiff entered into a contract with Virginia Tech in which Plaintiff was to obtain educational instruction in mutual consideration for payment of funds.

16.     The contract was executed and Plaintiff enrolled as a student at Virginia Tech.

17.     Jane Doe is a woman, who at all times relevant to this action, was a student at Virginia Tech.

18.     In early January of 2020, Jane Doe broke up with her then-boyfriend (hereinafter "Ex-Boyfriend").   However, the two of them maintained a close relationship.  In fact, Jane Doe worked at the same location as her Ex-Boyfriend and shared an apartment with her Ex-Boyfriend at all times relevant to this action.

19.     Only a few weeks after the breakup, on or about January 22, 2020, Plaintiff and Jane Doe met each other using a smartphone app, used primarily for romantic matchmaking, called "Tinder".  After talking for a few days, it was agreed that Jane Doe would meet Plaintiff along with his Friend (hereinafter "Friend") on January 27, 2020, in order to celebrate the Friend's birthday.

20.     Before their meeting, Jane Doe told Plaintiff that she was not interested in pursuing a romantic relationship and that she was "just looking to go out with people".  Plaintiff replied: "I think you're cool and we would have a fun together.  I also just go out of something serious that ended horribly so I'm just out here hanging out and if something ends up happening it happens but for now I'm just hanging out."  Jane Doe relied approvingly, stating: "Okay sick then that works so well for me".

21.     On January 27, 2020, Jane Doe, Plaintiff, and his Friend met in a restaurant in downtown Blacksburg called Sharkey's around 7:15 P.M.  Plaintiff and

his Friend took a bus to the restaurant, and Jane Doe drove her car and parked downtown.  Plaintiff and Jane Doe each consumed a Long Island Iced Tea along with a hamburger.

22.   At approximately 8:15 P.M., the group travelled to a bar called Top of the Stairs (Hereinafter "TOTS").   While at TOTS, Plaintiff and Jane Doe each consumed a "rail" cocktail and shared a vodka cranberry cocktail.  The group stayed at TOTS for approximately two hours.

23.   Jane Doe grew concerned that her car would be towed if she left it overnight.  She could not drive due to her consumption of alcohol.  In response Plaintiff arranged for another friend (hereinafter "Driver") to pick them up.

24.   Around 10:30 P.M., Driver and her boyfriend picked up the group and drove to Jane Doe's Car. Driver then drove Jane Doe's car to Plaintiff's apartment complex because it would not be towed if parked there.  Jane Doe and Plaintiff rode with Driver and Friend rode with Driver's boyfriend.  Driver and her boyfriend lived at the same apartment complex.

25.   Jane Doe, Plaintiff and his friend arrived at Plaintiff's apartment around 11:00 P.M.  The group played video games and attempted to make brownies.  At some point, Jane Doe was present in Plaintiff's bedroom and wrote the following message on his whiteboard: "chocolate on the bed is the fault of English major [*Jane Doe's First Name*] who finds you tolerable."  It is unknown how long Jane Doe was

present in Plaintiff's room. Neither Plaintiff nor Jane Doe can recall that they had sexual intercourse at any point.

26.     Around 12:30 A.M., Jane Doe fell asleep in Plaintiff's living room. At approximately 1:00 A.M Jane Doe called her Ex-Boyfriend to arrange for him to pick her up.  He arrived around 1:30 A.M, at which point, Jane Doe realized that she was missing her keys. Plaintiff walked to Driver's apartment to see if she had them, but there was no answer at the door.  As Jane Doe left the apartment, she kissed Plaintiff.

27.     The next day, Jane Doe and Plaintiff texted back and forth in an amicable fashion.  At one point, while discussing the events of the previous night, Plaintiff made a joke, stating: "I found a condom wrapper on the floor so we either fucked or we decided to blow it up like a balloon Lmao."  This message is clearly not an admission of sexual intercourse but is a joke playing off of Plaintiff's observation of a condom wrapper on his floor.  Crucially, this message also makes no reference to an actual used condom, rather, just to the condom wrapper. Furthermore, there is nothing in this message that indicates when the condom was used, and there is no reference whatsoever to a used condom itself.

28.     Jane Doe however, came to believe that a sexual assault had occurred. On January 28, 2020, Jane Doe visited the Blacksburg Police Department and accused Plaintiff of sexually assaulting her.  Jane Doe had a sexual assault PERK

exam performed the same day. Throughout the next few days, the Blacksburg Police Department took statements from Plaintiff and his Friend.  Ultimately, on February 6, 2020, the Montgomery County Prosecutor's Office declined to bring charges against Plaintiff due to a lack of evidence.

29.     On February 3, 2020, Jane Doe contacted the Virginia Tech Title IX office and again accused Plaintiff of sexually assaulting her.

30.     On February 11, 2020, Defendant Penermon informed Plaintiff that a Title IX investigation was being undertaken against him and that a no-contact order had been issued against him with respect to Jane Doe.

31.     Defendant Penermon was responsible for investigating Jane Doe's Title IX complaint and for creating a Title IX investigation report.  The Title IX investigation report contained statements prepared by Jane Doe, Ex-Boyfriend, Plaintiff, Friend, and Driver.  Additionally, the report contained screenshots of text message conversations between Jane Doe and Plaintiff, as well as between Jane Doe and Ex-Boyfriend.  Finally, the report also contained a copy of the police report prepared by the Blacksburg Police Department, although the results of the PERK exam were not included.

32.     Defendant Penermon's report was submitted on March 23, 2020 and was relied on by the Title IX hearing officers in reaching their decision.

33.     On April 21, 2020, Defendant Sloan sent Plaintiff several additional documents that Jane Doe had prepared for their Title IX hearing the next day.  These documents provide an extremely inflammatory and biased account of the alleged incident that is unmistakably slanted towards Jane Doe's point of view. Furthermore, they contain material assertions that were absent from the statement Jane Doe provided to the Title IX investigation report, including but not limited to:

    a.   Suggesting that Plaintiff coerced Jane Doe into coming to his apartment.

    b.   Suggesting that Jane Doe was much more intoxicated than Plaintiff, and the Plaintiff knowingly took advantage of this.

    c.   That Jane Doe noticed "hickies" on her neck the next morning.

    d.   That the PERK exam had revealed evidence of a latex condom used during sexual intercourse.

    e.   That Jane Doe has a latex allergy.

    f.   That Plaintiff had "cornered" Jane Doe in his room while shirtless and made physical advances on her.

    g.   That Plaintiff said "hey, we're just hanging out" while attempting to have sex with Jane Doe.  It asserted that this statement was a reference to an earlier text made by Jane Doe.

    h.   That Jane Doe asked Plaintiff why his mouth "smelled like pussy."

34.     Given that these documents were presented to Plaintiff the day before the Title IX hearing, Plaintiff did not have time to meaningfully respond to any of the assertions contained within them.

35.     The Title IX hearing was held on April 22, 2020.  Defendant Schuh and Defendant Tully were responsible for reviewing all the information that was provided for the hearing and determining whether Plaintiff committed a violation of Virginia Tech policy.

36.     On April 24, 2020, Defendant Schuh and Defendant Tully notified Plaintiff that he was found responsible for the offense of Sexual Violence-Rape.  As a result of this decision, Plaintiff was suspended from Virginia Tech for two years.

37.     Throughout the summer of 2020, Plaintiff continued to try and work with the school to further an appeal of Defendant's decision.

38.     All subsequent appeals were unsuccessful.

39.     This arbitrary and biased decision has caused immense suffering to Plaintiff and has completely upended his life.  Plaintiff's career aspirations of working in food science have been derailed having been delayed by two years and the presence of a suspension on his academic transcript will make it extremely difficult for Plaintiff to obtain further education necessary to realize his career goals. Furthermore, the experience of being found responsible for a heinous act that he did not commit has taken an immense psychological and emotional toll on Plaintiff.

40.    On May 3, 2020, pursuant to Virginia Tech disciplinary procedure, Plaintiff timely appealed the decision to Defendant Keene. On June 16, 2020, Plaintiff was notified that the original decision had been upheld.

41.    Defendants breached their duty owed to Plaintiff in direct violation of the contract entered into between Plaintiff and Virginia Tech.

42.    On October 28, 2020, Plaintiff, through counsel further challenged the decision through a complaint to the Office of Civil Rights of the U.S. Department of Education (hereinafter "O.C.R.").  On August 12, 2021, O.C.R. informed Plaintiff that his complaint would be dismissed and investigated no further.

43.    Plaintiff has thereby exhausted all necessary administrative remedies.

**Respondeat Superior and Agency**

44.    Under federal and Virginia law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

45.    At all times relevant to this action, Defendants Penermon, Sloan, Schuh, Tully, Polidoro, Scott, Keene and Doe Defendants 1-10 were employed by Virginia Tech. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with Virginia Tech.

## V.   CAUSES OF ACTION

**COUNT ONE - VIOLATION OF PROCEDURAL DUE PROCESS
UNDER 42 U.S.C. §1983.**

46.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of the Complaint as fully stated herein.

47.     The Fifth and Fourteenth Amendments of the U.S. Constitution provide, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

48.     Plaintiff has a constitutionally protected property interest that was clearly established after entering into a contract for his undergraduate education at Virginia Tech given that Plaintiff paid tuition to Virginia Tech in order to attend classes. Plaintiff's property interest has been damaged due to Defendants' actions.

49.     Plaintiff and Defendant Virginia Tech entered into a contract by which Virginia Tech offered admission to Plaintiff to receive his degree.

50.     Plaintiff accepted Defendant's offer and attended Virginia Tech as a student.

51.     There was a mutual exchange of consideration for which Plaintiff attended Virginia Tech involving payments and expenditure of time as well as Virginia Tech makings its services including educational opportunities available to Plaintiff.

52.    Plaintiff had a constitutionally protected and clearly established liberty interest. "The Due Process Clause . . . forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of the Clause must be satisfied." Goss v. Lopez, 419 U.S. 565, 574 (1975) (internal citation and quotations omitted). The wrongful allegations of sexual assault and the dismissal from Virginia Tech are detrimental to Plaintiff's good name and reputation for his future academic and professional career.

53.    Plaintiff had a fundamental property and liberty interest in continuing his education at Virginia Tech and as such was entitled to a fair and impartial process with a systematic method for evaluating the plagiarism allegations levied against him, as well as his ultimate dismissal at the conclusion of the appeal process.

54.    Given the immense gravity of Jane Doe's accusations of sexual assault, Plaintiff's constitutionally protected liberty and property interests were directly threatened by the outcome of the April 22, 2020, Title IX hearing.  The Defendants were therefore constitutionally required to ensure that the Title IX hearing was conducted in a fair and impartial manner.  Accordingly, Defendants were, at a minimum, constitutionally required to adhere to Virginia Tech's internal policy which provides that an individual accused of sexual assault cannot be found responsible unless their guilt can be established by a preponderance of the evidence.

55.     Defendant Penermon, Sloan, Polidoro and Scott, and Doe Defendants had direct participation in Plaintiff's Title IX case and were responsible for ensuring that the undertaken in a manner that was fair to Plaintiff. These Defendants were responsible for allowing Jane Doe to submit a highly inflammatory and prejudicial set of documents to the Title IX hearing. These Defendants were also responsible for showing these documents to Plaintiff only one day before the date of the hearing, thereby depriving him of a meaningful chance to respond. By denying Plaintiff the opportunity to meaningfully respond to Jane Doe's inflammatory documents, these defendants violated Plaintiff's due process rights. The precise manner of the involvement by Defendant Sloan, Polidoro and Scott, and Doe Defendants is not fully known to Plaintiff at this time and will be further revealed through the course of litigation.

56.     Defendant Schuh and Defendant Tully were responsible for reviewing the evidence submitted to the Title IX hearing and deciding whether the preponderance of the evidence standard had been met. They therefore had a duty not to find Plaintiff responsible for sexual assault unless a preponderance of the evidence existed to support that conclusion.

57.     Defendant Schuh and Defendant Tully failed their duty and erroneously found Plaintiff responsible for sexual assault despite lacking a preponderance of the evidence.

58.     Defendants Schuh and Tully erroneously found that it was "more likely than not" that Plaintiff had engaged in sexual intercourse with Jane Doe.   The evidence relied on to support this conclusion was 1). the condom wrapper Plaintiff found on the floor of his bedroom" and 2.) the purported findings from Jane Doe's PERK exam which allegedly showed evidence of sexual activity using latex.

59.     First, the mere presence of a condom wrapper cannot support the inference that Plaintiff had sexual intercourse with Jane Doe.   There was no evidence submitted by either party that indicates when the wrapper was left on Plaintiff's floor.   Plaintiff's reference to the condom wrapper in his text messages can only be interpreted as a joke.   Therefore, the presence of a condom wrapper cannot be considered evidence of a sexual assault.

60.     Second, Jane Doe's PERK exam was never itself submitted into evidence. Defendants Schuh and Tully relied entirely on the self-serving and partisan contentions of Jane Doe claiming that the PERK exam revealed the presence of a latex condom in Jane Doe's vagina.   Because the PERK exam was never submitted to them, it is impossible for Defendants Schuh and Tully to know what the results of the PERK exam were.   Defendants Schuh and Tully therefore had no evidence to conclude that the PERK exam revealed the presence of a latex condom in Jane Doe's vagina.

61.     Jane Doe did not provide any evidence that demonstrates that she had a latex allergy.  This was yet another assertion by Jane Doe that Defendant Schuh and Tully took at face value.

62.     Because the available evidence did not plausibly indicate that Plaintiff and Jane Doe had sexual intercourse at all, Defendants Schuh and Tully lacked the necessary preponderance of the evidence to find that Plaintiff sexually assaulted Jane Doe.

63.     Furthermore, the Defendants completely failed to account for the role that Jane Doe's Ex-Boyfriend might have had in influencing her to accuse Plaintiff of sexual assault.  Given that Jane Doe lived with her Ex-Boyfriend and worked at the same place as him, the personal dynamics between them certainly played some role with respect to Jane Doe's accusations.  However, Defendant Penermon failed to investigate this dynamic while Defendants  Schuh and Tully failed to give any weight to this dynamic, which distorted their decision. Defendants Penermon, Schuh and Tully thereby further deprived Plaintiff of his due process rights.

64.     By finding Plaintiff responsible for sexual assault without a preponderance of the evidence, Defendants Schuh and Tully violated Plaintiff's due process rights.

65.     By upholding the decision of Defendants Schuh and Tully on Appeal, Defendant Keene legitimized a Title IX decision that was made without a preponderance of the evidence, and thereby violated Plaintiff's due process rights.

66.     As punishment for being found guilty, Plaintiff was dismissed from the university for two years.

67.     Defendant's due process violations have inflicted irreparable reputational damage to Plaintiff.  Plaintiff's academic record will now reflect that Plaintiff was dismissed for two years.  Given that Plaintiff intends to pursue a career path that will involve attending graduate school, this information will invariably be disclosed by Defendants to any institution Plaintiff will apply to.  This information will also invariably be disclosed by Defendants to any future employer Plaintiff may apply to.  Thus, the actions of Defendants have seriously impugned Plaintiff's reputation.

68.     Defendant's due process violations have also changed Plaintiff's legal status.  When the Defendant found Plaintiff guilty of the above disciplinary violations, Plaintiff's status changed from being a full-time student in good standing, to being a student suspended for two years.  Defendant's actions thus caused a change in Plaintiff's legal status.

69.     In addition to reputational damage, by finding Plaintiff responsible for a heinous act that he did not commit, the Defendants have caused Plaintiff to suffer immense psychological and emotional suffering.

70.     As a direct and proximate result of Defendants' actions or failures, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## COUNT TWO – FOURTEENTH AMENDMENT VIOLATION

71.     Plaintiff restates each and every allegation set forth in the preceding paragraphs of the Complaint as fully stated herein.

72.     Under 42 U.S.C. §1983, Plaintiff is protected from violations of the rights guaranteed to him by the Constitution of the United States.

73.     The equal protection clause of the Fourteen Amendment secures Plaintiff's right to be free from gender discrimination, a right that's well-established and essential to our modern society.

74.     The gender discrimination is evidenced by the fact that Plaintiff was deemed guilty of sexual assault against a female before an investigation had been completed.

75.     Plaintiff has evidence of his innocence, a fact that was brushed off my Defendants as they had already made their mind up of Plaintiff's guilt as he was seen as a male perpetrator.

76.     Throughout the Title IX process, the Defendants afforded Jane Doe, a woman, certain advantages that were not afforded to Plaintiff, thereby further discriminating against him.

77.     Defendant Penermon Sloan, Polidoro and Scott, and Doe Defendants had direct participation in Plaintiff's Title IX case and were responsible for ensuring that the undertaken in a manner that was fair to Plaintiff.  These Defendants were

responsible for allowing Jane Doe to submit a highly inflammatory and prejudicial set of documents to the Title IX hearing.  These Defendants were also responsible for showing these documents to Plaintiff only one day before the date of the hearing, thereby depriving him of a meaningful chance to respond.  By allowing Jane Doe the opportunity to submit inflammatory documents and denying Plaintiff the opportunity to meaningfully respond, these defendants discriminated against Plaintiff.  The precise manner of the involvement by Defendant Sloan, Polidoro and Scott, and Doe Defendants is not fully known to Plaintiff at this time and will be further revealed through the course of litigation.

78.     Furthermore, the Defendants completely failed to account for the role that Jane Doe's Ex-Boyfriend might have had in influencing her to accuse Plaintiff of sexual assault.  Given that Jane Doe lived with her Ex-Boyfriend and worked at the same place as him, the personal dynamics between them certainly played some role with respect to Jane Doe's accusations.  However, Defendant Penermon failed to investigate this dynamic while Defendants Schuh and Tully failed to give any weight to this dynamic, which distorted their decision. Defendants Penermon, Schuh and Tully thereby granted Jane Doe an unfair advantage and discriminated against Plaintiff.

79.     In reaching their decision to find Plaintiff responsible for sexual assault, Defendants Schuh and Tully relied on several findings that simply amount to taking

20

Jane Doe's account at face value as they were never independently verified.  These findings include:

    a.  That Jane Doe recalls asking Plaintiff why his mouth "smelled like pussy."

    b.  Jane Doe having a latex allergy.

    c.  Jane Doe having hickies on her neck.

    d.  That the PERK exam had revealed evidence of a latex condom used during sexual intercourse.

    e.  The Plaintiff got up to retrieve a condom.

    f.  That Jane Doe felt pressure in her vagina consistent with sexual intercourse.

80.  By taking these partisan contentions by Jane Doe as absolute fact, Defendants Schuh and Tully failed to remain objective and expressed a preference for Jane Doe's account over Plaintiff's account.  This preference is a manifestation of gender bias against Plaintiff.

81.  By upholding the decision of Defendants Schuh and Tully on Appeal, Defendant Keene legitimized a Title IX decision that was made on the basis of discrimination, and thereby violated Plaintiff's equal protection rights.

82.    Through their pattern of affording Jane Doe advantages and favorable preference, the Defendants subjected Plaintiff to differential treatment on the basis of his gender and thereby violated Plaintiff's rights to equal protection.

83.    As a result of Defendants' actions Plaintiff has suffered immense emotional distress as well as interruptions to his current education and ability to seek meaningful employment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## COUNT THREE - VIOLATION OF TITLE IX UNDER 20 U.S.C. §1681.

84.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of the Complaint as fully stated herein.

85.   The decisions in Plaintiff's Title IX process were completely against the weight of evidence.

86.   Defendants Schuh and Tully erroneously found that it was "more likely than not" that Plaintiff had engaged in sexual intercourse with Jane Doe.   The evidence relied on to support this conclusion was 1). the condom wrapper Plaintiff found on the floor of his bedroom" and 2.) the purported findings from Jane Doe's PERK exam which allegedly showed evidence of sexual activity using latex.

87.   First, the mere presence of a condom wrapper cannot support the inference that Plaintiff had sexual intercourse with Jane Doe.   There was no evidence submitted by either party that indicates when the wrapper was left on Plaintiff's floor.   Plaintiff's reference to the condom wrapper in his text messages can only be interpreted as a joke.   Therefore, the presence of a condom wrapper cannot be considered evidence of a sexual assault.

88.    Second, Jane Doe's PERK exam was never itself submitted into evidence.    Defendants Schuh and Tully relied entirely on the self-serving and partisan contentions of Jane Doe claiming that the PERK exam revealed the presence of a latex condom in Jane Doe's vagina.   Because the PERK exam was never submitted to them, it is impossible for Defendants Schuh and Tully to know what the results of the PERK exam were.   Defendants Schuh and Tully therefore had no evidence to conclude that the PERK exam revealed the presence of a latex condom in Jane Doe's vagina.

89.    Jane Doe did not provide any evidence that demonstrates that she had a latex allergy.   This was yet another assertion by Jane Doe that Defendant Schuh and Tully took at face value.

90.    Because the available evidence did not plausibly indicate that Plaintiff and Jane Doe had sexual intercourse at all, Defendants Schuh and Tully lacked the necessary preponderance of the evidence to find that Plaintiff sexually assaulted Jane Doe.

91.    Furthermore, the Defendants completely failed to account for the role that Jane Doe's Ex-Boyfriend might have had in influencing her to accuse Plaintiff of sexual assault.   Given that Jane Doe lived with her Ex-Boyfriend and worked at the same place as him, the personal dynamics between them certainly played some role with respect to Jane Doe's accusations.   However, Defendant Penermon failed

to investigate this dynamic while Defendants Schuh and Tully failed to give any weight to this dynamic, which distorted their decision.

92.    By finding Plaintiff responsible for sexual assault without a preponderance of the evidence, Defendants Schuh and Tully reached a decision that was completely against the weight of evidence.

93.    By upholding the decision of Defendants Schuh and Tully on Appeal, Defendant Keene legitimized a Title IX decision that was made without a preponderance of the evidence.

94.    Furthermore, the Defendants' erroneous decision was motived by gender bias against Plaintiff as a male.

95.    In reaching their decision to find Plaintiff responsible for sexual assault, Defendants Schuh and Tully relied on several findings that simply amount to taking Jane Doe's account at face value as they were never independently verified.  These findings include:

    a.  That Jane Doe recalls asking Plaintiff why his mouth "smelled like pussy."

    b.  Jane Doe having a latex allergy.

    c.  Jane Doe having hickies on her neck.

    d.  That the PERK exam had revealed evidence of a latex condom used during sexual intercourse.

e. The Plaintiff got up to retrieve a condom.

f. That Jane Doe felt pressure in her vagina consistent with sexual intercourse.

96.    By taking these partisan contentions by Jane Doe as absolute fact, Defendants Schuh and Tully failed to remain objective and expressed a preference for Jane Doe's account over Plaintiff's account.  This preference is a manifestation of gender bias against Plaintiff.

97.    By upholding the decision of Defendants Schuh and Tully on Appeal, Defendant Keene legitimized a Title IX decision that was made on the basis of discrimination, and thereby violated Plaintiff's equal protection rights.

98.    Through their pattern of affording Jane Doe advantages and favorable preference, the Defendants subjected Plaintiff to differential treatment on the basis of his gender.

99.    As a direct and proximate result of Defendants' violations, Plaintiff has suffered immense emotional and psychological harm.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in

amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## COUNT FOUR – BREACH OF CONTRACT

100. Plaintiff restates each and every allegation set forth in the preceding paragraphs of the Complaint as fully stated herein.

101. Plaintiff and Defendant Virginia Tech entered into a contract by which Virginia Tech offered admission to Plaintiff on specified terms.

102. Plaintiff accepted Defendant's offer and attended Virginia Tech as a student.

103.    There was a mutual exchange of consideration for which Plaintiff attended Virginia Tech involving payments and expenditure of time as well as Virginia Tech making its services including educational opportunities available to Plaintiff.

104.    The contract establishes in Student Code of Conduct 8300, Appendix III Formal Title IX Adjudication Process, A. Procedural Guarantees that "In formal conduct hearings for Title IX formal complaints, the complainant and respondent are entitled to the following procedural guarantees and opportunities: … To appeal, regardless of the outcome, based on the following grounds (1) procedural irregularity; (2) significant and relevant new information that was not available at the time of the hearing; (3) the Title IX Coordinator, Investigator, or hearing officer(s) had a conflict of interest or bias, which affected the outcome; (4) unduly harsh or arbitrary findings or sanctions.

105.    Defendant Virginia Tech breached this policy when it failed to assure that Plaintiff had a fair Title IX hearing.

106.    Defendant Virginia Tech further breached this policy when they upheld the original Title IX decision on June 16, 2022 against the weight of the evidence.

107.    Defendant Virginia Tech breached this policy when the Title IX decision became finalized after the appeal on June 16, 2022.

108.    The Title IX process concluded on June 16, 2022.

28

109.   As a direct and proximate result of Defendant CU's actions, Plaintiff was dismissed from Virginia and has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## <u>COUNT FIVE – NEGLIGENCE</u>

110.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

111.   Defendants Penermon, Sloan, Schuh, Tully, Polidoro, Scott and Keene were negligent in performing their duty of reasonable care and failed, neglected and/or refused to discharge their duty properly and fully by, among other things:

    a.   Evaluating Plaintiff's Title IX claim against the weight of the evidence.

    b.   Failure to provide an adequate appeal in light of the weight of the evidence.

112.   Defendant Virginia Tech was negligent in performing its duty of reasonable care and failed, neglected and/or refused to discharge its duty properly and fully by, among other things:

    a.   Failing to ensure that Plaintiff's rights under the University Code of Conduct were upheld.

    b.   Failing to assist Plaintiff after being informed of the individual Defendant's negligence.

113.   By their negligent conduct, Defendants directly and proximately caused Plaintiff financial harm. Plaintiff is confronted with an inability to complete his education, pursue graduate school, practice in his chosen profession, and to pay his

mounting student loan debts. Plaintiff has suffered direct financial losses due to Defendants' conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## COUNT SIX - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

114.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

115.   Defendants' actions caused Plaintiff emotional distress, worrying about his future academic and professional career.

116.   Defendants' actions caused Plaintiff emotional distress, worrying about his reputation as Defendants' found him guilty of sexual assault against the weight of the evidence.

117.   Defendants' should have known that their actions would be injurious to Plaintiff.

118.   Defendants' actions were reckless, intentional and outrageous in light of the evidence and used to cause harm to Plaintiff.

119.   Defendants' actions violated Virginia Tech's policies.

120.   Defendants' actions were the proximately caused Plaintiff severe emotional and physical injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in

amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## VI.   JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury on all issues stated in this action.


Dated: September 21, 2022                 Respectfully submitted,


Keith Altman, Esq.  (*pro hac vice*)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

/s/ *William W. Smith*
William W. Smith, III, Esq.
(VA Bar ID 92533)
Critzer Cardani, PC
12090 West Broad Street, 2nd Floor
Henrico, VA 23233
(804) 793-8010
(804) 767-3436 fax
Will@cclawva.com

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **ROBERT DILLOW,** | Case No. 7:22-cv-00280-TTC |
| *Plaintiff,* | |
| v. | |
| **VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, et al.** | **CERTIFICATE OF SERVICE** |
| *Defendants.* | |

I certify that on September 21, 2022, I served the foregoing Plaintiff's First Amended Complaint upon all parties herein by filing copies of same using the ECF System.

Respectfully Submitted,

Keith Altman, Esq.

35