IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ROBERT DILLOW,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:22cv280 |
| ) | |
| **VIRGINIA POLYTECHNIC INSTITUTE** ) | |
| **AND STATE UNIVERSITY, et al.,** ) | |
| ) | |
| Defendants. ) | |

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants Virginia Polytechnic Institute and State University, Shara Penermon, Steven Schuh, Katie Polidoro, Anthony Scott, and Frances Keene (collectively "Defendants"), by counsel, submit this Reply Memorandum in Support of their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### ARGUMENT & AUTHORITY

### I. Dillow Cannot Amend His Complaint (Again) Through An Opposition Brief

When ruling on a motion to dismiss, the Court must consider only the allegations actually contained in the complaint. Davis v. Cole, 999 F. Supp. 809, 813 (E.D. Va. 1998) (refusing to consider additional allegations in response to motion to dismiss). It is "'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" Rice v. Scholastic Book Fairs, Inc., 579 F. Supp. 3d 786, 795 (E.D. Va. 2022) (quoting Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004)). Therefore, the Court should not consider any additional allegations or exhibits contained in a response in opposition to a motion to dismiss. Maher v. Thomson, No.



7:21cv143, 2021 WL 6072566, 2021 U.S. Dist. LEXIS 244942, *6 (W.D. Va. Dec. 23, 2021) (citing Marsh v. Va. DOT, No. 6:14cv6, 2014 WL 6833927, 2014 U.S. Dist. LEXIS 167333, *25–26 (W.D. Va. Dec. 3, 2014)); Luther v. Wells Fargo Bank, N.A., No. 4:13cv72 2014 U.S. Dist. LEXIS 64977, at *7 n.4 (W.D. Va. Apr. 18, 2014), adopted by, 2014 U.S. Dist. LEXIS 100728 (W.D. Va. July 24, 2014).

Dillow asserts a number of new allegations in his opposition brief that are not contained in the Amended Complaint. See, e.g., ECF No. 41, *14 (referencing Governor Northam's "stay at home" order); *17 (plaintiff was expelled); *18 (witnesses and members of the general public were in fact informed by Defendants that Plaintiff had be [sic] found responsible for rape and sexual violence); *21 (plaintiff gave notice of claim by submitting appeal to President of Virginia Tech); ECF No. 40, *7 (asserting supervisory liability claim under 42 U.S.C. § 1983).

Any new allegations in the opposition briefing must be disregarded for purposes of Defendants' motion to dismiss.

## II. Effect of a Failure to Respond

By failing to respond to a number of Defendants' arguments for dismissal, as noted below, Dillow concedes as to those grounds for dismissal. See Spellman v. Sch. Bd. of Chesapeake, No. 2:17cv635, 2018 WL 2085276, 2018 U.S. Dist. LEXIS 73709, at *40–41 (E.D. Va. Apr. 5, 2018); Wright v. Kent Cnty. Dep't of Soc. Servs., No. ELH-12-3593, 2014 WL 301026, 2014 U.S. Dist. LEXIS 9351, at *76–77 (D. Md. Jan. 24, 2014) (failure to address argument in opposition brief may amount to concession); Ferinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's]" argument in a motion to dismiss, "the plaintiff abandons [her] claim."); Westry v. N.C. A&T



629.0449\NHS
4879-8000-2877 .v2

State Univ., 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003) (collecting cases), aff'd, 94 F. App'x 184 (4th Cir. 2004); Mentch v. E. Sav. Bank, FSB, 949 F. Supp. 1236, 1247 (D. Md. 1997) (plaintiff abandoned claim by failing to address it in opposition brief).

### III. Virginia Tech's Eleventh Amendment Immunity

Citing Constantine v. Rectors & Visitors of George Mason University, 411 F.3d 474 (4th Cir. 2005), Dillow implies that Virginia Tech waived its Eleventh Amendment immunity as to all claims against it by accepting federal funds.[1] This is an incorrect reading of Constantine, and Dillow's failure to cite any authority to support his proposition is telling.

In Litman v. George Mason University, the Fourth Circuit concluded that George Mason waived its Eleventh Amendment immunity by accepting Title IX funds from the federal government. 186 F.3d 544, 554, 556–57 (4th Cir. 1999). Neither Litman nor Constantine, however, extended that waiver to *all* claims. Indeed, in Litman, the Fourth Circuit explained that the waiver was a limited one: by "accepting Title IX funding: (1) the state must comply with Title IX's antidiscrimination provisions, and (2) it consents to resolve disputes *regarding alleged violations of those provisions* in federal court." Litman, 186 F.3d at 554 (emphasis added).

Accepting Title IX funds did not completely waive Virginia Tech's Eleventh Amendment immunity, and the Eleventh Amendment bars Dillow's claims for money damages under 42 U.S.C. § 1983 and his state law claims. See Sigma Lambda Upsilon/Senoritas Latinas Unidas Sorority, Inc. v. Rector & Visitors of the Univ. of Va., 503 F. Supp. 3d 433, 442–43, 450 (W.D. Va. 2020); Jacob Doe v. Va. Polytechnic Inst. & State Univ., No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, *9, *9 n.3 (W.D. Va.

---

[1] Dillow raises this argument in both of his opposition briefs.

Mar. 19, 2020); <u>Doe v. Rector & Visitors of George Mason Univ.</u>, 132 F. Supp. 3d 712, 731, 731 n.24 (E.D. Va. 2105).

### IV. <u>Statute of Limitations</u>

Dillow argues that his claims are timely for three reasons: (a) he was not aware of his claim until the appeal of the hearing decision was finalized; (b) the Supreme Court of Virginia's Emergency Orders tolling statutes of limitations for a period during the COVID-19 pandemic tolled his claims by 126 days; and (c) he is entitled to equitable tolling.

#### a. <u>Notice</u>

When a "plaintiff possesses sufficient facts about the harm done to him [such] that reasonable inquiry will reveal his cause of action," the statute of limitations clock starts ticking. <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The "proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981) (per curiam). As Defendants pointed out in their opening brief, Dillow's claim accrued upon receiving notice of the finding of responsibility. Judge Dillon expressly rejected the notion that the claim accrues upon the resolution of any appeal in the cases cited in Defendants opening brief, and Dillow offers no reason for diverging from that analysis.

#### b. <u>Tolling under Supreme Court of Virginia's Emergency Orders</u>

Federal courts applying state statutes of limitations must also follow the state's "rule for tolling that statute of limitations." <u>Scoggins v. Douglas</u>, 760 F.2d 535, 537 (4th Cir. 1985) (citing <u>Bd. of Regents v. Tomanio</u>, 446 U.S. 478, 484–86 (1980)). Dillow maintains that the statute of limitations for his claims was tolled for 126 days as a result of several orders issued by the Supreme Court of Virginia.



629.0449\NHS
4879-8000-2877 .v2

Through a series of seven Orders ("Emergency Orders"), the Supreme Court of Virginia declared a Judicial Emergency in response to the COVID-19 pandemic and tolled certain statutes of limitations and deadlines from March 16, 2020, through July 19, 2020. See Va. Sup. Ct.'s Seventh Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency (July 8, 2020).[2] Contrary to Dillow's argument, the Emergency Orders tolled only those statutes of limitations that were set to expire during the Orders' effective period—March 16, 2020, through July 19, 2020. See English v. Quinn, No. CL20-2857 2022 Va. Cir. LEXIS 7, at *8-10 (Roanoke Cty. Feb. 7, 2022) (Carson, J.) (granting plea in bar as plaintiff was not entitled to tolling of the statute of limitations as his claim's limitation period expired after July 19, 2020).[3]

The Second Emergency Order provided that "all applicable deadlines, time schedules and filing requirements, including any applicable statute of limitations which would otherwise run during the period this order is in effect, are hereby tolled and extended, pursuant to Va. Code § 17.1-330(D), for the duration of this Order." Va. Sup. Ct.'s Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency (Mar. 27, 2020). The Supreme Court's seventh and final Order tolling statutes of limitations states that "[t]he tolling period as a result of the Judicial Emergency for such statutes of limitation and deadlines shall be limited to March 16, 2020 through July 19, 2020. This period of tolling shall not be counted for purposes of determining statute of limitation or other case-related deadlines." See Va. Sup. Ct.'s Seventh Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency (July 8, 2020).

---

[2] https://www.vacourts.gov/news/items/covid/scv_emergency_ordres.pdf.
[3] Currently on appeal to the Court of Appeals of Virginia; oral argument held 10/xx/22.

629.0449\NHS
4879-8000-2877 .v2

The Orders following the Supreme Court of Virginia's first Emergency Order incorporated the terms of the prior Orders by using such language such as "as recognized" or "as provided." See Va. Sup. Ct's Second through Seventh Orders Extending Declaration of Judicial emergency in Response to COVID-19 Emergency (Mar. 27, 2020 - July 8, 2020). Therefore, according to the Second Emergency Order, the tolling would apply only to applicable statutes of limitations which would have run, *i.e.*, expired, during the tolling period, as stated in the Supreme Court's second Order. English, 2022 Va. Cir. 7, at *9 ("Based on the language of the second Order and the minimal examples provided by the Supreme Court, it appears the intent of the Supreme Court was to toll only the Statutes of Limitations and deadlines that would expire during the tolling period."); Tinsley v. Clarke, No. 7:21cv270, 2022 U.S. Dist. LEXIS 56625, at *17 (W.D. Va. Mar. 28, 2022) (Urbanski, J.) (finding petitioner in a habeas case not entitled to tolling because the deadline to file his petition ran after the Emergency Orders' effective periods ended); see also Claiborne v. Woods, No. 3:22cv3245, 2022 WL 3648191, 2022 U.S. Dist. LEXIS 152687 (E.D. Va. Aug. 24, 2022) (Hudson, J.); Proctor v. AECOM, Inc., No. 1:21-cv-00033, 2021 U.S. Dist. LEXIS 162142, at *10-11 (E.D. Va. Aug. 26, 2021) (Alston, J.) (finding service deadline not tolled by Emergency Orders because it did not fall within the March 16–July 19, 2020 tolling period); Zamma Can. Ltd. V. Zamma Corp., No. 3:20cv353, 2020 WL 7083940, 2020 U.S. Dist. LEXIS 227872 (E.D. Va. Dec. 3, 2020) (Hudson, J.).

The orders that followed the Second Emergency Order did not retract, revise, or rescind any of the language from the Second Emergency Order.

The key language here is the Supreme Court of Virginia's use of the word "run" as opposed to the word, "running" in the Second Emergency Order. The Supreme Court of



629.0449\NHS
4879-8000-2877 .v2

Virginia referred to statutes of limitation "which would otherwise *run* during the period this order is in effect . . . ." According to Black's Law Dictionary, "run" means "[t]o expire after a prescribed period <the statute of limitations had run, so the plaintiff's lawsuit was barred>." Black's Law Dictionary 1533 (10th Ed. 2014).[4]

In English v. Quinn, the Roanoke County Circuit Court concluded that the Supreme Court of Virginia intended by its Emergency Orders to provide relief for the "fact that many law firms and business were closed or had severely reduced numbers of staff during the pandemic's beginning." English, 2022 Va. Cir. 7, at *9 (quoting Brown v. State Farm Fire and Casualty Co., 107 Va. Cir. 343 (Culpeper Cnty. 2021)). Thus, the Supreme Court of Virginia did not intend to give a blanket four-month tolling period for all claims whose limitations period happened to be "running" during the effective periods regardless of whether the unique logistical complications of the early pandemic prevented the claim from being filed. See id. at 9-10.

Indeed, such a premise makes little sense when one considers the various statutes of limitations that extend five years or more from the time the cause of action accrues. See Va. Code § 8.01-243(B) (property damage); Va. Code § 8.01-246 (contracts); Va. Code § 8.01-246-251 (execution of judgments). Moreover, the Emergency Orders looked only twenty-one days in the future, but the Supreme Court of Virginia could have extended the emergency period for the duration of the pandemic pursuant to the third clause of Va. Code § 17.1-330(E). The Court did not do so, demonstrating the Court had no intent to look into the future beyond the 21-day effective period of each individual emergency order. Its focus

---

[4] Even the colloquial use of "run" belies the interpretation Dillow advances. Consider: "Has the statute run?"; "Would the statute have otherwise run absent some grounds for tolling?"; "When does the statute run?".

was on protecting those claims with limitations periods that would expire during the time the orders were in effect.[5]

In addition, the Supreme Court of Virginia did not expressly clarify or retract its language from the Second Emergency Order. Rather, it incorporated that language by reference it in its proceeding orders. And while one might contend that the Court's use of an example in a footnote in the Third Emergency Order would lead to the conclusion that the Orders did apply to limitations periods that expired after the emergency period, that assumption would be mistaken. First, the example in the footnote does not address statutes of limitations but rather deadlines under Part Five of the Rules of the Supreme Court of Virginia. Second, when the Court used that same example again in the Seventh Order, the applicable deadline no longer fell outside the emergency period, demonstrating that the Orders applied only to statutes of limitations actually expiring within that emergency period.

In Crosswhite v. Reuters News & Media, Inc., 6:21cv15, 2021 U.S. Dist. LEXIS 246628 (W.D. Va. Dec. 28, 2021), but the issue of whether the 126-day tolling applied to claims falling outside of the emergency period was not contested. Id., at *4. Indeed, the defendants waived that argument in their motion to dismiss brief. Crosswhite v. Reuters News & Media, Inc., 6:21cv15, ECF No. 18, *6 (Aug. 13, 2021); Woodson v. Allstate Ins. Co., 855 F.3d 628, 635 (4th Cir. 2017) (addressing waiver). The issue was not properly before the Court in any event because the plaintiff's claim in that case was untimely even affording him the 126-day tolling period. Crosswhite, 2021 U.S. Dist. LEXIS 246628, at *4. And while Judge

---

[5] The Court's First Emergency Order directed clerks to require e-filing where available, and by the Fourth Emergency Order, court clerks were charged with keeping their offices open and functioning as well as accepting electronically signed pleadings.

Moon has concluded that the 126-day tolling period does apply, <u>Winfree v. Hill</u>, No. 3:21cv39, 2022 WL 2812057, 2022 U.S. Dist. LEXIS 127239 (W.D. Va. July 18, 2022), as noted above, Judge Urbanski has reached the opposite conclusion.

By no account would have the statute of limitations for any of Dillow's claims "run" during the emergency period. Accordingly, he is not entitled to the 126-day tolling period.

### c. **Withholding of evidence and equitable tolling**

Finally, Dillow makes a scattershot argument that Defendants withheld evidence, conferring the benefit of equitable tolling.

Virginia strictly enforces its statutes of limitations. <u>Casey v. Merck & Co., Inc.</u>, 283 Va. 411, 416, 722 S.E.2d 842, 845 (2012). Unless there is a "clear statutory enactment" permitting tolling, <u>Arrington v. Peoples Security Life Insurance Co.</u>, 250 Va. 52, 55–56, 458 S.E.2d 289, 290–91 (1995), or there exists "certain extraordinary circumstance[s], wherein the positive and plain requirements of an equitable estoppel" argument permits tolling, Virginia's statute of limitations may not be tolled, <u>Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.</u>, 221 Va. 81, 85, 266 S.E.2d 887, 889 (1980). On this issue, Virginia stands apart from other states embracing clear tests for applying equitable tolling. <u>See</u>, <u>e.g.</u>, <u>Ex Parte Ward</u>, 56 So.3d 888, 897 (Ala. 2007); <u>Kaiser v. Umialik Ins.</u>, 108 P.3d 876, 881–82 (Alaska 2005); <u>Arthur v. Pierre Ltd.</u>, 100 P. 3d 987, 996 (Mont. 2004).

To claim the right to equitable tolling, or equitable estoppel, Dillow

> must prove by clear, precise, and unequivocal evidence the following elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.



- 9 -

629.0449\NHS
4879-8000-2877 .v2

Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal Co., 221 Va. 81, 86, 266 S.E.2d 887, 889 (1980) (citations omitted).

The basis for Dillow's argument that tolling should apply, however, is simply the basis of his procedural due process claim, *i.e.*, that Defendants allegedly withheld the "new information" Doe provided to them until the day before the hearing. But that occurred *before* his claim accrued. Dillow was advised after the hearing that he had been found responsible, and that is when his claim accrued. Dillow identifies no facts after the finding of responsibility that would support equitable tolling. Accordingly, for the reasons set forth in Defendants' opening brief, Dillow's claims are untimely.

## V. Fourteenth Amendment Claim

### a. Liberty interest

Dillow does not even make a hand-waving attempt to distinguish the authority cited in Defendants' opening brief. Instead, he merely falls back on his claim that his liberty interest arises from his "good name, reputation, honor, or integrity." But that argument misses the point—and the applicable law—as to what a liberty interest is for purposes of due process concerns. He utterly fails to identify a right or status under state law that was altered or distinguished to meet the "stigma-plus" test. The liberty interest question in this case falls squarely within Judge Dillon's analysis in Doe I v. Va. Tech, Jacob Doe v. Va. Tech, and Alger I,[6] and Dillow offers no authority to the contrary to suggest otherwise. As noted previously, Dillow has no statutory right to be a public university student. Therefore, his status under state law was not altered or extinguished by virtue of his suspension. See Doe



---

[6] See ECF No. 34, *16.

629.0449\NHS
4879-8000-2877 .v2

v. Va. Polytechnic Inst. & State Univ., No. 7:21cv378, __ F. Supp. 3d __, 2022 WL 3006391, 2022 U.S. Dist. LEXIS 134267, *29 (W.D. Va. July 28, 2022).[7]

### b. Property interest

Dillow's argument regarding his asserted property interest cuts against the significant weight of authority finding no express or implied contract between a university student and the university. See ECF No. 34, *14–15, *28. And Dillow's citation to Doe v. Alger, 228 F. Supp. 3d 713 (W.D. Va. 2016), a summary judgment decision, misses the mark as well because in that case James Madison University ("JMU") *admitted* in its Answer to the Complaint that plaintiff had a "legitimate claim of continued enrollment" at JMU. Id., at 726–27. That is not the case here. Dillow has no property interest in continued education, and his procedural due process claim fails as a matter of law.

### c. Dillow fails to respond to argument he received due process

Dillow failed to respond to Defendants argument that he received adequate due process. As noted, there are no allegations as to when any of the defendants received the "new information," from Doe, and there are no allegations demonstrating that any defendant intentionally withheld the information from Dillow. Moreover, Dillow does not allege that he requested additional time to consider the "new information" or that he was not allowed to question Doe about the "new information." Dillow received notice and an opportunity to be heard, the rudiments of due process.

---

[7] Dillow's arguments that he was expelled from Virginia Tech and certain unnamed defendants disclosed Dillow's disciplinary record are not facts contained in the Amended Complaint and must be disregarded.

## VI. Title IX

Notwithstanding the fact that Dillow completely misrepresents the Court's ruling from Jacob Doe v. Va. Tech—the Court granted Virginia Tech summary judgment as to that plaintiff's Title IX claim—Dillow hangs his hat on conclusory allegations of bias by claiming the hearing officers "failed to remain objective and expressed a preference for Defendant Doe's account over Plaintiff's account."[8] This argument fails to respond to Defendants' argument that there are no allegations of discriminatory animus, he fails to identify a comparator, and, as noted in the very decision Dillow relies on, believing an alleged victim over an alleged perpetrator is not gender bias as a matter of law.

## VII.     Breach of Contract

### a. Notice

Dillow contends that he complied with Va. Code § 2.2-814's notice requirement by filing his appeal "with the President of Virginia Tech on May 3, 2020, and by filing his claim with the Office of Civil Rights. As to the former, even if the appeal could constitute the appropriate notice—which it does not—Dillow's Amended Complaint belies that statement. He specifically alleged he filed his appeal with defendant Keene, not President Sands. The OCR complaint does not comply with the statute either, and again, there is no allegation the OCR complaint was sent to President Sands.

### b. Failure to respond

As noted above, Dillow fails to rebut the overwhelming authority that Virginia law does not recognize either an express or implied contract between a university and its



---

[8] Jane Doe is not a named defendant and has not made an appearance in the case. See ECF No. 26, ¶ 10.

629.0449\NHS
4879-8000-2877 .v2

student. Going further, however, Dillow failed to respond to Defendants' argument that Dillow's suspension was not arbitrary.

### VIII. Negligence and Negligent Infliction of Emotional Distress

#### a. Failure to respond

Dillow does not dispute that his negligence and NIED claims fall under the Virginia Tort Claims Act or that he failed to comply with the Virginia Tort Claims Act's notice provisions. He also fails to respond to Defendants' argument that (1) he has not alleged a cognizable legal duty, (2) he failed to allege facts to support the elements of a NIED claim under Virginia law, and (3) that the individual defendants are entitled to sovereign immunity under Virginia law. Accordingly, both the negligence and NIED claim should be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants Virginia Polytechnic Institute and State University, Shara Penermon, Steven Schuh, Katie Polidoro, Anthony Scott, and Frances Keene, by counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case with prejudice, and granting such further relief as the Court deems just and proper.



Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, SHARA PENERMON, STEVEN SCHUH, KATIE POLIDORO, ANTHONY SCOTT, and FRANCES KEENE

629.0449\NHS
4879-8000-2877 .v2

/s/
_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: klondos@faplawfirm.com
         nschnetzler@faplawfirm.com


Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Virginia Polytechnic Institute and State University, Shara Penermon, Steven Schuh, Katie Polidoro, Anthony Scott, and Frances Keene*



629.0449\NHS
4879-8000-2877 .v2

- 15 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

                                       /s/ Nathan H. Schnetzler
                                                   Of Counsel



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4879-8000-2877 .v2