IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT DILLOW, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22cv00280 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA POLYTECHNIC INSTITUTE | ) | By:   Hon. Thomas T. Cullen |
| AND STATE UNIVERSITY, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

While a student at Virginia Polytechnic and State University ("Virginia Tech"), Plaintiff Robert Dillow met another student, Jane Doe, on social media. He and Doe both agreed that they were not looking for a serious relationship, but rather just to socialize with new people. So, in January 2020, Doe met Dillow and one of his friends for dinner and drinks to celebrate the friend's birthday. Later that evening, Dillow, Doe, and Dillow's friend returned to Dillow's apartment. Although Doe had driven to the bar, she did not feel comfortable driving to Dillow's apartment after drinking, nor did she want to leave her car where she had parked it, so Dillow arranged for another friend to drive Doe's car to Dillow's apartment.

Once they arrived at his apartment, Dillow, Doe, and Dillow's friend played video games and attempted to make brownies. Dillow admits that Doe was in his bedroom as some point, but he has no recollection of engaging in sexual activity. After approximately 90 minutes, Doe fell asleep in Dillow's living room. When she awoke, she called her roommate (who is also her ex-boyfriend) for a ride home. As far as Dillow knew, when Doe left, everything was fine.

The next day, while texting with Doe, Dillow made a comment about finding a condom wrapper on his bedroom floor. He wrote Doe: "I found a condom wrapper on the floor so we either f*cked or we decided to blow it up like a balloon . . . ." Although Dillow asserts that, until that time, there had been no issue between himself and Doe, he claims his joke caused her to believe that he had sexually assaulted her. Dillow vehemently denies that any such assault took place.

Convinced that Dillow had had sex with her against her will, Doe went to the police the same day and formally accused him of rape. A sexual assault PERK[1] exam was performed on Doe, and investigators interviewed both Dillow and his friend. Approximately a week later, prosecutors declined to bring charges against Dillow because of a lack of evidence.

Doe also contacted the Virginia Tech Title IX office and reiterated her allegations against Dillow. A Title IX investigation was commenced and, approximately 2.5 months later, Dillow was found responsible for the offense of "Sexual Violence-Rape" by a panel of Virginia Tech employees. As a result, he was suspended for two years. Dillow appealed that judgment under the university's Title IX protocol, but he was unsuccessful.

In addition to asserting his innocence of the allegations levied against him, Dillow brought suit in this court against Virginia Tech and several administrators related to the Title IX investigation and trial.[2] This matter is now before the court on three motions to dismiss:

---

[1] PERK stands for Physical Evidence Recovery Kit.

[2] The named defendants are: Virginia Tech; Shara Penermon, Virginia Tech's Title IX investigator; Shanai Sloan, a Virginia Tech employee; Steven Schuh, Virginia Tech's assistant Director of Student Conduct; Rachel Tully, Virginia Tech's Student Conduct Coordinator; Katie Polidoro, Virginia Tech's Title IX coordinator; Anthony Scott, Virginia Tech's Associate Dean of Students; Frances Keene, Virginia Tech's Assistant Vice President for Student Affairs; and Doe Defendants 1–20 "who are or were employed by Virginia Tech and participated in [Dillow's] Title IX proceedings . . . ." (See Am. Compl. ¶¶ 3–10 [ECF No. 26].)

(1) for improper service (ECF No. 24); (2) for lack of jurisdiction (ECF No. 30); and (3) for failure to state a claim (ECF No. 33).[3] For the reasons discussed below, the motions to dismiss will be granted and Dillow's claims must be dismissed.

## I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The facts are taken from Dillow's Amended Complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In January of 2020, both Dillow and Jane Doe were students at Virginia Tech. Dillow is male; Doe is female. In early January 2020, Doe broke up with her boyfriend, but the two of them maintained a close relationship. According to Dillow, Doe and her boyfriend shared an apartment and worked at the same location. (Am. Compl. ¶ 18 [ECF No. 26].)

A few weeks after her break-up, Dillow met Doe on the smartphone app "Tinder." Although Tinder is considered a dating app, Doe told Dillow that "she was not interested in pursuing a romantic relationship and that she was 'just looking to go out with people.'" (*Id.* ¶ 20.) Dillow felt the same way; he told Doe that he thought they would have fun together but that he "just got out of something serious that ended horribly" and was content to just hang out. (*Id.*) Doe agreed to meet Dillow and his friend ("Friend") on January 27, 2020, to celebrate Friend's birthday. (*Id.* ¶ 19.)

At around 7:15 p.m. on January 27, Doe met Dillow and Friend at a restaurant in downtown Blacksburg. Dillow and Friend took a bus to the restaurant; Doe drove herself and parked downtown. At the restaurant, Doe and Dillow each had a mixed drink and a meal.

---

[3] A prior motion to dismiss (ECF No. 12) was mooted when Dillow filed an amended complaint (ECF No. 26).

After dinner, the three of them went to a bar where, over the next two hours, Dow and Dillow had one mixed drink each and shared another cocktail. (*Id.* ¶¶ 21–22.)

At some point, the group decided to return to Dillow's apartment. Doe was concerned about leaving her car downtown and did not feel comfortable leaving her car overnight, so Dillow arranged for another friend ("Driver") to pick them up. At about 10:30 p.m., Driver and her boyfriend picked up the group—Driver drove Doe and Dillow, while Driver's boyfriend and Friend took Doe's car back to Dillow's apartment. Everyone arrived at Dillow's apartment around 11:00 p.m. (*Id.* ¶¶ 23–25.) The group played video games and attempted to make brownies.

At some point, Doe went into Dillow's bedroom and wrote a message on Dillow's whiteboard. Dillow does not recall whether the two of them had sex. Doe ultimately fell asleep on the couch in Dillow's living room around 12:30 a.m. She awoke approximately 30 minutes later and called her ex-boyfriend to pick her up. When she left Dillow's apartment, she kissed him goodbye. (*Id.* ¶¶ 25–26.)

The next day, Dillow and Doe "texted back and forth in an amicable fashion." At some point, Dillow texted Doe: "I found a condom wrapper on the floor so we either f*cked or we decided to blow it up like a balloon Lmao." Dillow contends that this was *not* an admission that he and Doe had sex; it was only a joke. Doe, however, "came to believe that a sexual assault had occurred." Doe went to the Blacksburg police that day—January 28—and accused Dillow of sexual assault. (*Id.* ¶¶ 27–28.)

As part of the initial investigation into her claims, Doe had a sexual assault PERK exam performed. And over the next several days, Blacksburg police took statements from Doe,

Dillow, and Friend. Ultimately, the Montgomery County Commonwealth's Attorney "declined to bring charges against [Dillow] due to lack of evidence." (*Id.* ¶ 28.)

On February 3, 2020, *before* the local prosecutor declined to file charges, Doe contacted Virginia Tech's Title IX office and reiterated her allegation that Dillow had sexually assaulted her. On February 11, Defendant Shara Penermon, a Title IX investigator at Virginia Tech, informed Dillow that he was the subject of a Title IX investigation and that he was to have no contact with Doe. (*Id.* ¶ 30.)

In her role as a Title IX investigator, Penermon was responsible for investigating Doe's complaint and creating an investigation report. Penermon's report contained statements from Doe, her ex-boyfriend, Dillow, Friend, and Driver. The report also contained screenshots of the text messages exchanged between Doe and Dillow, as well as text conversations between Doe and her ex-boyfriend. Although the report contained a copy of the police report, the results of the PERK exam were *not* included. Penermon submitted her report on March 23, 2020. A hearing was apparently scheduled on Doe's allegations for April 22, 2020.[4] (*Id.* ¶¶ 31–32.)

On April 21, Defendant Shanai Sloan sent Dillow several additional documents that Doe had prepared for the Title IX hearing. Dillow describes the documents as providing "an extremely inflammatory and biased account of the alleged incident that is unmistakably slanted towards Jane Doe's point of view." Importantly, Doe's new evidence "contain[ed] material assertions that were absent from" Doe's statements during the Title IX investigation. Dillow does not allege that he requested a continuance of the hearing to review and respond to Doe's

---

[4] Dillow does not allege when he was notified of the date of his hearing.

new evidence, though he asserts that he "did not have time to meaningfully respond to any of the assertions contained" in the new documents.[5] (*Id.* ¶ 33–34.)

At the Title IX hearing the next day, Defendants Steve Schuh (Virginia Tech's Assistant Director of Student Conduct) and Defendant Rachael Tully (Virginia Tech's Student Conduct Coordinator) were "responsible for reviewing all the information that was provided for the hearing and determining whether [Dillow] committed a violation of Virginia Tech policy." On April 24, Schuh and Tully informed Dillow "that he was found responsible for the offense of Sexual Violence-Rape." As a result, Dillow was suspended from Virginia Tech for two years. (*Id.* ¶¶ 35–36.)

On May 3, 2020, Dillow appealed the decision to Defendant Frances B. Keene, Vice President for Student Affairs at Virginia Tech. On June 16, he was notified that the original decision had been upheld. (*Id.* ¶ 40.)

Dillow filed suit in this court on June 2, 2022. Defendants Shani Sloan and Rachael Tully appeared specially to move to dismiss the complaint for improper service. (ECF No. 24.) Shortly thereafter, on September 21, Dillow filed an amended complaint. (ECF No. 26.) The remaining defendants—Virginia Tech, Penermon, Schuh, Kathryn Polidoro, Anthony Scott, Keene, and Sloan[6] filed motions to dismiss for lack of jurisdiction (ECF No. 30) and for failure to state a claim (ECF No. 33). The court heard oral argument on the motions on

---

[5] Among the allegations in the new documents were that the PERK kit indicated the use of a latex condom during sexual intercourse, that Doe has a latex allergy, and that Dillow had "cornered" Doe "in his room while shirtless and made physical advances on her." (Am. Compl. ¶ 33.)

[6] Neither Polidoro nor Scott are mentioned at all in Dillow's factual allegations. (*See id.* ¶¶ 15–43.)

November 16, 2022. After reviewing the relevant pleadings, the arguments of the parties, and the applicable law, this matter is ripe for disposition.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits defendants to move for dismissal for lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In this case, the jurisdictional challenge is based on the doctrine of sovereign immunity under the Eleventh Amendment. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity is a jurisdictional bar). The burden of proving entitlement to sovereign immunity rests with the entity or individual seeking immunity. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

Dismissal is appropriate under Rule 12(b)(5) if the service is legally insufficient. Fed. R. Civ. P. 12(b)(5). If a plaintiff does not effect service of the complaint within 90 days of its filing, the court "must" dismiss the complaint or order that service be made within a specified time. Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* If a party moves for an extension of his time to effect service after the 90-day clock has expired, the court may also extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Once [the sufficiency of service is] challenged, the burden of establishing validity of service under Federal Rule of Civil Procedure 4 shifts to the plaintiff." *Urrego v. Samuel I. White, P.C.*, No. 3:17CV437 (MHL), 2018 WL 4524106, at *5 (E.D. Va. July 3, 2018) (cleaned up); *see also Sanyal*

*v. Toyota Motor Corp.*, 2014 WL 4925842, at *1 (E.D. Va. Sept. 30, 2014). But service need not be perfect; if "the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.  ANALYSIS

In his amended complaint, Dillow asserts six causes of action: a § 1983 action for violation of his due process rights (Count 1); a § 1983 action for violation of his 14th Amendment Equal Protection rights (Count 2); violation of Title IX, 20 U.S.C. § 1681 (Count 3); breach of contract (Count 4); negligence (Count 5); and negligent infliction of emotional distress (Count 6). Presumably, all counts are levied against all defendants. The defendants have filed three motions attacking the complaint, and the court will address them in turn.

a. **Motion to Dismiss for Insufficient Service (Fed. R. Civ. P. 12(b)(5))**

Defendants Sloan and Tully filed a special appearance and move to dismiss the complaint for lack of/improper service. Sloan and Tully assert that they were not timely served with the summons and complaint and so the allegations against them should be dismissed without prejudice. Dillow counters that he tried to serve both Defendants but they had moved, and because they are no longer employed by Virginia Tech, the university would not accept service on their behalf. He asks that they be deemed served since they have "actual notice" of the suit or, in the alternative, that their attorneys be directed to accept service on their behalf.

Service must be accomplished within 90 days of the complaint's filing. *See* Fed. R. Civ. P. 4(m) (noting that, if a complaint is not served within 90 days, it "must" be dismissed unless the plaintiff can show "good cause for the failure"); Fed. R. Civ. P. 6(b)(1)(B) (noting that, if a time limit has expired, it may be extended "if the party failed to act because of excusable neglect"). Despite Dillow's argument, there is no indication that he made any serious effort to serve Sloan or Tully. He apparently tried once at their last-known addresses and, when that failed, he attempted to serve them through Virginia Tech. But when Virginia Tech refused to accept service for its former employees, he gave up.[7]

Because the record does not demonstrate a serious effort to locate Sloan or Tully in order to serve them properly, Dillow has not shown "good cause" or "excusable neglect" for his failure to serve them in the time allotted. *See M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 3:10cv804, 2011 U.S. Dist. LEXIS 56138, at *12–20 (E.D. Va. May 25, 2011) (noting

---

[7] Dillow argues that he was proceeding *pro se* at the time of service. The court is suspicious that he was acting without legal assistance but, even if he was, he now has an attorney. The court is not aware of any further efforts that were made to locate and serve Sloan or Tully since counsel noted his appearance.

that "a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity" do not constitute "excusable neglect"). Accordingly, the claims against Defendants Sloan and Tully will be dismissed without prejudice. Fed. R. Civ. P. 4(m).[8]

   **b.  Motion to Dismiss for Lack of Jurisdiction (Fed. R. Civ. P. 12(b)(1))**

   Virginia Tech and Defendants Penermon, Schuh, Polidoro, Scott, and Keene (collectively the "administrator defendants") all move to dismiss the claims against them for lack of jurisdiction. In short, Virginia Tech argues that it is not a "person," and therefore is not subject to suit under § 1983. As to the § 1983 and state law claims, Virginia Tech argues that it is protected by the sovereign immunity afforded by the Eleventh Amendment. The administrator defendants argue that, although the complaint is styled against each of them in their "individual capacities," Dillow's claims are actually official capacity suits, meaning they are actually against Virginia Tech, and therefore barred for the same reasons. The court agrees and will dismiss Counts 1, 2, 4, 5, and 6.

   **i.  *Virginia Tech is not a "person" within the meaning of 42 U.S.C. § 1983.***

   Section 1983 creates a cause of action to vindicate a violation of an individual's constitutional rights; it "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). The statute imposes civil liability on any person who, acting under color of state law, deprives another person of

---

[8] The court sees no reason to grant Dillow additional time to serve Sloan and Tully. Even if Dillow were to find and serve them, for the reasons discussed more fully *infra*, his claims against them would not survive.

rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.

Virginia Tech is a state agency, not a "person," and so the two claims asserted against it under § 1983 (Counts 1 and 2) must be dismissed. *Accord Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18cv189, 2018 WL 5018487, at *4 (W.D. Va. Oct. 15, 2018) ("Virginia Tech is . . . not a 'person' amendable to suit under § 1983 . . . .").

### ii. *Dillow's § 1983 claims and state law claims are barred by the Eleventh Amendment.*

Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This protection extends to state agencies and instrumentalities, *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), including Virginia Tech, *see Zhao*, 2018 WL 5018487, at *4 ("The court finds that because Virginia Tech . . . is immune under the Eleventh Amendment, it lacks subject matter jurisdiction to adjudicate claims against it."). Absent waiver or abrogation of sovereign immunity, therefore, any claims against Virginia Tech "are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) ("[A]bsent abrogation of sovereign immunity or consent from [the state], McCray cannot seek injunctive or monetary relief from [either state agency].").

"While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983 . . . does not effect such an abrogation." *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993). As it relates to Dillow's state law tort claims against Virginia Tech (Counts 5 and 6), it is true

that the Commonwealth of Virginia has waived sovereign immunity as to many claims by implementing the Virginia Tort Claims Act ("VTCA"). *See* Va. Code Ann. § 8.01-195.1 *et seq.* But "while the VTCA 'waive[s] sovereign immunity for tort claims filed in state courts,' it 'does not waive the state's eleventh amendment immunity' in federal courts." *Holloman v. Va. Dep't of Corr.*, Case No. 7:22-cv-00478, 2022 WL 17477924, at *2 (W.D. Va. Dec. 6, 2022) (quoting *McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1987)).[9]

There is one potentially applicable exception to sovereign immunity under the Eleventh Amendment. "The long-standing doctrine of *Ex parte Young* . . . 'allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute.'" *Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002) (quoting *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir. 2002)). "Specifically, *Ex parte Young* authorizes 'suits against state officers for prospective equitable relief from ongoing violations of federal law.'" *Id.* (quoting *Lytle v. Griffith,* 240 F.3d 404, 408 (4th Cir. 2001)).

Even though Dillow is seeking injunctive relief, his claims against Virginia Tech in counts 1 and 2 are not saved by the exception in *Ex Parte Young*. "[T]he [*Ex Parte Young*] exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past and, crucially, has 'no application in suits against the [s]tates and their agencies, which are barred regardless of the

---

[9] This court cannot exercise supplemental jurisdiction over Dillow's VTCA claims, either, as Virginia state courts retain exclusive jurisdiction to hear claims under the VTCA. Va. Code Ann. § 8.01-195.4 (stating that "[t]he general district courts shall have exclusive original jurisdiction" over claims under the VTCA); *see also McConnell*, 829 F.2d at 1329; *Creed v. Virginia*, 596 F. Supp. 2d 930, 937–39 (E.D. Va. 2009).

relief sought.'" *Sigma Lambda Upsilon/Senoritas Latinas Unidas Sorority, Inc. v. Rector & Visitors of the Univ. of Va.*, 503 F. Supp. 3d 433, 442–43 (W.D. Va. 2020) (quoting *Puerto Rico Aqueduct*, 506 U.S. at 146). Because the exception to Eleventh Amendment immunity found in *Ex Parte Young* only permits prospective injunctive relief against individuals, it does not save Dillow's claims against Virginia Tech.

Finally, as it relates to Count 4 (breach of contract), that claim is likewise barred by the Eleventh Amendment. While the VTCA acts as a limited waiver of sovereign immunity for tort claims, it contains no such waiver or abrogation of that immunity for breach of contract claims in federal court. Because Dillow has not pointed to—and the court is not aware of— any abrogation of Virginia's Eleventh Amendment immunity as to breaches of contract by its state agencies in federal court, Dillow's breach of contract claim must be dismissed. *Accord Fleming v. Va. State Univ.*, Case No. 3:15cv268, 2016 WL 927186, at *4 (E.D. Va. Mar. 4, 2016), *aff'd*, 671 F. App'x 117 (4th Cir. 2016); *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12-cv-236, 2012 WL 2878608, at *12 (E.D. Va. July 13, 2012) (holding that the Eleventh Amendment barred breach of contract claims against Virginia Commonwealth University), *aff'd*, No. 12-1961, 2013 WL 1305672 (4th Cir. Apr. 2, 2013); *Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 540–41 (E.D. Va. 2007) (holding that "the Eleventh Amendment prohibits this Court from exercising subject matter jurisdiction over the breach of contract claim" against Virginia State University).

In sum, the claims against Virginia Tech in counts 1 and 2 are not actionable because Virginia Tech is not a "person," and the claims in Counts 4, 5 and 6 are barred by the Eleventh Amendment. Those claims must be dismissed.

### iii. *Despite suing them in their individual capacities, Dillow's claims against the administrator defendants are official capacity claims and the administrator defendants are therefore protected by the Eleventh Amendment.*

Although Dillow has sued the administrator defendants in their individual capacities, they contend that Dillow's causes of action are, in fact, levied against them in their *official* capacities. This distinction matters because, in their official capacities, the administrator defendants are acting as Virginia Tech, and the defenses invoked by Virginia Tech—including sovereign immunity—would apply equally to them.

The Eleventh Amendment immunity discussed *supra* applies to "judgments against a public servant acting in his official capacity." *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). This is so because such suits against state officers "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

"When suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 101 (1984). A plaintiff's decision to style his suit as one against an officer in his individual capacity can frequently mask what is truly a suit against the State. The Supreme Court has cautioned that allowing an action to proceed simply because the complaint names a state official in his or her individual capacity "would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation

on a federal court's federal-question jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997); *see also Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001) (overruled in part on other grounds by *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ("[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action")). Therefore, the court must determine whether "the state is the real party in interest," in that the "named party is the alter ego of the state." *Hutto v. S. Carolina Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014) (cleaned up).

The Fourth Circuit addressed the issue of determining the true nature of a plaintiff's claims in *Adams v. Ferguson*.[10] The court first looked to the stated intention of the plaintiff, as evidenced on the face of the complaint. There, the plaintiff's "complaint clearly state[d] that 'Defendant … is sued in her individual capacity." *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018). The court acknowledged that a "mere incantation" of individual capacity would be insufficient on its own to make out the claim but found that "nothing in the remainder of the complaint, or in the record, undermines [the plaintiff's] clear statement that this is a personal-capacity, rather than official-capacity, suit." *Id*. In concluding that nothing "undermined" the plaintiff's designation, the court looked at two factors: (1) the plaintiff's complaint sought "to recover damages only from [the defendant] herself and [made] no mention of relief from the

---

[10] In the defendants' motion to dismiss, they offer *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014) as the controlling standard for determining whether the suit is against officials in their individual or official capacities, but this is incorrect. The *Martin* court resolved a suit brought under the Fair Labor Standards Act, not § 1983. In *Adams*, decided four years after *Martin*, the Fourth Circuit held: "We refuse to apply to § 1983 claims these [*Martin*] factors, which we articulated for use in considering claims under a very different statute, and which would undermine the very purpose of § 1983." *Adams*, 884 F.3d at 226. "Applying the *Martin* factors, which focus on the official character of the defendant's actions, to § 1983 claims would 'absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities.'" *Id*. (quoting *Hafer*, 502 U.S. at 28).

state"; and (2) the complaint asserted "claims against [the defendant], rather than the current" officeholder. *Id. Adams* therefore mandates that the court defer to a plaintiff's clear statement of the nature of his suit, as reflected on the face of the complaint, unless the substance of the complaint sufficiently undermines that conclusion.

Lower courts applying *Adams* have emphasized the importance of the money-damages element of the two-part analysis. *See, e.g., Garrett v. Clarke*, 552 F. Supp. 3d 539, 554–55 (E.D. Va. 2021) (finding that, because plaintiff sought money damages only from defendants listed in their individual capacities and not from the Commonwealth, its entities, or individuals named in their official capacities, the Eleventh Amendment did not bar the claim); *Thresher v. Governor of Va.*, No. 3:20cv307, 2020 WL 12862835, at *5 (E.D. Va. Nov. 23, 2020) (concluding that a finding that the Governor would not *personally* pay a money judgment levied against him would cut against application of sovereign immunity). *But see Kerr v. McKay*, No. 2:20cv00190, 2020 WL 8484879, at *9 (S.D. W.Va. Aug. 17, 2020) (acknowledging that the plaintiff was seeking "at least one category of damages" that was "not recoverable against [the defendant] in her official capacity," a fact that "implie[d]" that the claims were brought against the defendant in her individual capacity). The Supreme Court has said that "[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' . . . ." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947)).

There are two general principles to be gleaned from these cases. First, the Fourth Circuit has imposed a quasi-presumption in favor of a finding that the suit is an individual-capacity one when the plaintiff expressly styles the complaint that way. Second, this

presumption can be overcome by a court's finding that other aspects of the complaint and record sufficiently "undermine" this conclusion. The most critical element courts look to in making the second determination is whether the complaint seeks money damages from the state (or state entities). If the complaint seeks money damages that would ultimately flow from public coffers, the complaint is likely one in which "the state is the real party in interest . . . ." *Ram Ditta v. Md. Nat. Cap. Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987).

In this case, Dillow seeks money damages against *every* defendant—including Virginia Tech—for *every* count.[11] Dillow also has made minimal effort to distinguish which defendants are party to which claims. Rather, he groups them all together as "Defendants" in the prayer for relief for each claim. He does not make any effort to distinguish which of his damages claims are against the officials in their individual capacities, except by naming *all* of the defendants in their individual capacities at the outset. Further, Dillow has not distinguished between Virginia Tech as a defendant (against whom all claims are barred under the Eleventh Amendment), and the named defendants. Within each of his six causes of action, Dillow does not specify which defendants the claims are against, and he makes no effort to delineate the facts supporting his claims against Virginia Tech and those supporting his claims against the administrator defendants, indicating that the claims are for the same alleged acts and are therefore identical. And two defendants are named without ever being mentioned in Dillow's factual allegations *at all*, suggesting that it is their *office*, not their actions, that form the basis of their alleged liability. *See supra* n.6.

---

[11] *See* Am. Compl. ¶¶ 70(a) (Count 1); 83(a) (Count 2); 99(a) (Count 3); 109(a) (Count 4); 113(a) (Count 5); 120(a) (Count 6).

Dillow complains about actions taken by the administrator defendants *solely* in their roles as university administrators. He seeks money damages that, if awarded, would unquestionably be paid by Virginia Tech and/or the state. And he seeks injunctive relief that can only be provided by Virginia Tech. This all leads to one bottom-line conclusion: Dillow's claims against the administrator defendants are claims against them in their official capacities. Accordingly, insofar as he seeks money damages, Dillow's claims against the administrator defendants are barred because, in their official capacities, they are not "persons" under § 1983, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a state nor its officials acting in their official capacities are 'persons' under § 1983"), and because the Eleventh Amendment bars such actions.[12] Counts 1, 2, 4, 5, and 6 will be dismissed against the administrator defendants.

### iv. *Title IX does not permit suits against individuals; Virginia Tech is the only proper defendant for Count 3.*

As previously noted, Dillow's complaint is often unclear about who he levies his claims against. To the extent that he is suing individuals under Title IX, any such claim must be dismissed. "Title IX reaches institutions and programs that receive federal funds, . . . but it has consistently been interpreted as not authorizing suit against school officials, teaches, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). This claim will be dismissed against the administrator defendants.

---

[12] The exception in *Ex Parte Young* could permit Dillow's claims against the administrator defendants to proceed to the extent that he is seeking prospective injunctive relief in the form of reinstatement to Virginia Tech and expungement of his academic record. *See, e.g., Franks*, 313 F.3d at 197; *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) (noting that the *Ex Parte Young* "exception 'permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment.'" (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)). But as discussed below, his claims suffer other fatal pleading deficiencies.

    c.  **Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))**

In addition to the arguments discussed above, Virginia Tech and the administrator defendants move to dismiss all claims against them for failure to state a claim.

    i.  *The statute of limitations was tolled for 86 days.*

As their first argument, Virginia Tech and the administrator defendants contend that Dillow's Complaint is barred by the applicable statutes of limitations. Both 42 U.S.C. § 1983 and Title IX borrow the forum state's personal injury statute of limitations: in Virginia, that is two years. *See Owens v. Baltimore City State's Att'ys Office*, 767 F.3d 379, 388 (4th Cir. 2014) (§ 1983); *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 496 (W.D. Va. 2019) ("*Doe*") (Title IX). Accrual of a cause of action is governed by federal law, and "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

In the present case, Dillow's cause of action accrued when the hearing panel notified him of its decision. *Accord Doe*, 400 F. Supp. 3d at 493 ("[T]he court concludes that the limitations period for plaintiffs' [due process] claims began, and the claim accrued, at the time of the initial decision . . . ."); *id.* at 494 (holding that, as to plaintiffs' Title IX claims, the court was adopting "the same reasoning and conclusion that it reached with regard to plaintiffs' due process claims"). Contrary to Dillow's argument, the existence of an appeal is of no consequence. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[E]ntertaining a grievance . . . does not suggest that the earlier decision was in any respective tentative. The

grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made."); *Doe*, 400 F. Supp. 3d at 490–91.

Dillow alleges that the hearing panel issued its ruling on April 24, 2020 (Compl. ¶ 36), but he did not file this action until June 2, 2022. Therefore, unless the statute of limitations period was tolled for approximately 40 days, Dillow's § 1983 and Title IX claims are time barred.

When a federal court applies a state's statute of limitations, it is obliged to follow the state's "rule for tolling that statute of limitations." *Scoggins v. Douglas*, 760 F.2d 535, 537 (4th Cir. 1985). When the COVID-19 pandemic began, the Supreme Court of Virginia issued several "judicial emergency orders" that tolled statutes of limitations that "ran" from March 16, 2020, through July 19, 2020. Although courts have been split over whether the tolling applied to all causes of action (as Dillow claims[13]) or only those for which the statute of limitations expired during the tolling period (as the defendants argue), the Virginia Court of Appeals recently resolved that question in Dillow's favor. *See English v. Quinn*, 76 Va. App. 80, 88 (Va. Ct. App. 2022) ("[T]he plain language of the judicial emergency orders 'stopp[ed] the limitations clock' for *all* statutes of limitations between March 16, 2020, and July 19, 2020. By their clear and express terms, the orders' tolling provisions were not limited to deadlines that otherwise would have expired during that period."). Accordingly, the statute of limitations

---

[13] Under Dillow's argument, *all* causes of action that were not time barred when the first judicial emergency order was entered were tolled until the order was lifted, meaning *every* cause of action was granted an additional 126 days in which to bring suit. Because Dillow's clock to file suit began ticking during the emergency period, he contends his time to file suit began on July 19, 2020, not April 24, 2020, and would have ended on July 29, 2022, meaning his complaint, filed on June 2, 2022, would have been timely filed.

began running for Dillow on July 19, 2020, and his complaint was therefore filed within the applicable statute of limitations.

Although his claims are timely, for the reasons previously discussed, the majority of Dillow's claims must be dismissed for lack of jurisdiction. But his claims also fail at this stage for other reasons.

      ii.   *Dillow has not alleged a sufficient liberty or property interest, a failure that is fatal to his Due Process claim (Count 1). But even if he had, Dillow alleges that he received all the process that was required by law.*

The defendants argue that Dillow has not alleged a sufficient liberty or property interest, such that his Due Process rights were not implicated by Virginia Tech's actions. The case law is very clear that, absent some special pleading or allegation, an individual does not have a *per se* liberty or property interest in continued enrollment in a college or university. *See Doe v. Alger*, 175 F. Supp. 3d 646, 657–58 (W.D. Va. 2016) ("*Alger*") (holding that a student does not have a protected liberty interest); *Doe*, 400 F. Supp. 3d at 499 (based on a lack of pleading, the "court concludes that [plaintiff] has failed to allege a property interest"). Dillow alleges that he has a property interest by virtue of an implied contract between him and Virginia Tech.

But like the plaintiff in *Alger*, Dillow has not alleged the specifics of any such contract that would raise his right to relief above a speculative level. All that he alleges is that "he entered into a contract with Virginia Tech in which [he] was to obtain educational instruction in mutual consideration for payment of funds." (Am. Compl. ¶ 15.) He repeats that allegation later in his complaint, adding that there "was a mutual exchange of consideration for which

Plaintiff attended Virginia Tech involving payments and expenditure of time as well as Virginia Tech making its services including educational opportunities available to" him. (*Id.* ¶ 51.)

In *Doe*, Judge Dillon explained, in persuasive fashion, why a property interest did not exist, and the distinction between that case and *Alger*:

> In *Alger*, the court found that the plaintiff had alleged enough to survive a motion to dismiss where the plaintiff alleged that his university had a "system of expelling, suspending, or dismissing students only after a finding of cause" and pointed to a student's rights policy indicating as much. As in *Perry [v. Sniderman*, 408 U.S. 593 (1972)], the court in *Alger* did not hold at that time that Doe had "any legitimate claim of entitlement to [continued enrollment]," but it gave him the opportunity to prove the legitimacy of his claim to a property right "in light of the policies and practices of the institution."
>
> Here, even the sparse allegations present in *Alger* are missing. Nowhere does Doe allege that Virginia Tech only expels or suspends students for cause or point to other facts supporting a "legitimate claim of entitlement." Thus, the court concludes he has failed adequately to allege a property interest.

*Doe*, 400 F. Supp. 3d at 500 (cleaned up). The same is true here.[14] Dillow's bare-bones allegations of a "contract" between himself and Virginia Tech—without any effort to define its scope or terms, much less how it relates to processes and procedures when a student is

---

[14] The court recognizes that *Alger* is an outlier in this field precisely for the reason that Dillow's pleading is insufficient. In that case, the court found that the plaintiff's allegation that James Madison University ("JMU"), through its policies and procedures, only dismissed students for cause was sufficient to state a property (but not a liberty) interest in continued enrollment at the school. The plaintiff further alleged that, through those policies and procedures, JMU "substantially limited its ability to suspend, expel or dismiss" students after admission. *Alger*, 175 F. Supp. 3d at 657. These allegations, coupled with allegations regarding JMU's adoption of a "students['] rights policy," persuaded the court to "give [the plaintiff] the opportunity to prove the legitimacy of his claim to a property right 'in light of the policies and practices of the institution.'" *Id.* at 658 (quoting *Perry*, 408 U.S. at 603). Dillow's pleading does not contain similar allegations, only the conclusory allegation that he had entered into a "contract" with Virginia Tech. This singular allegation is insufficient to establish a property interest.

- 22 -

accused of raping another—simply does not allege, for purposes of a motion to dismiss, a legitimate liberty or property interest. Accordingly, his claim will be dismissed.

But more fundamentally, accepting his allegations at face value, Dillow has pleaded that he received due process.[15] At its most basic level, due process includes notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). What process is due, however, is a "flexible" inquiry that depends on the "particular situation" at hand. *Morrissey v. Brewer*, 408 U.S. 471 481 (1972). To meet the standard of due process in the student-discipline context, "[t]he proceedings need not . . . take the form of a judicial or quasi-judicial trial; so long as the student is given notice of the charges against him, notice of the time and hearing, and a full opportunity to be heard," due process is satisfied. *B.S. v. Bd. of Sch. Trustees*, 255 F. Supp. 2d 891, 898 (N.D. Ind. 2003). And ordinarily, "the student should be given the names of witnesses against him and an oral or written report on the facts to which each witness testifies." *Dixon v. Ala. St. Bd. of Educ.*, 294 F.2d 150, 158–59 (5th Cir. 1961).

Fatally, Dillow alleges that he received all the law entitled him to receive. He was notified of the charges two months in advance of his hearing; he received a copy of the investigator's report one month before the hearing; he received a copy of additional evidence the day before the hearing;[16] and he was given an opportunity to be heard and present his own

---

[15] Dillow did not respond to this argument in his brief in opposition, presumably conceding that point. *See United Supreme Council, 33 Degree Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, S. Jurisdiction*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim.")

[16] The court, however, is troubled by Dillow's allegation that he was given evidence the day before the hearing without a meaningful opportunity to review it, *especially* considering the "bombshell" nature of the new evidence, as described by Dillow. (*See, e.g.*, Am. Compl. ¶ 33.) Nevertheless, he does not allege that he requested additional time to prepare or that, if any such request was made, Virginia Tech denied it.

defense.[17] Additionally, he was permitted to appeal the decision, which he did. On these facts, Dillow has alleged that he received the minimum due process protections to which he was entitled and has therefore failed to state a claim for violation of his Due Process rights.

### iii. *Dillow's complaint does not contain allegations of gender bias, a necessary element of his Title IX claim.*

Regarding Dillow's Title IX and 14th Amendment Equal Protection claims, Dillow has not alleged any facts that would establish that his gender played a role in the defendants' actions.

"[A] Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged [decision]." *Sheppard v. Visitors of Va. St. Univ.*, 993 F.3d 230, 236 (4th Cir. 2021). To meet this standard, a plaintiff must identify "sufficiently particularized allegations of gender discrimination," such as statements or "patterns of decision-making that also tend to show the influence of gender." *Doe*, 400 F. Supp. 3d at 503. "In an erroneous outcome case, 'the claim is that the plaintiff was innocent and wrongly found to have committed an offense' on the basis of gender bias." *Id.* at 502 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2nd Cir. 1994)).

> To state a claim for erroneous outcome discrimination, a plaintiff must allege (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." To satisfy the third element, a plaintiff must do more than merely rely on "a conclusory allegation of gender discrimination . . . ." Sufficiently particularized allegations of gender discrimination "might include, *inter alia*, statements by members of the disciplinary

---

[17] Importantly, Dillow does not allege any facts regarding the form or content of the hearing from which the court could conclude, taking his allegations as true, that Dillow was denied the opportunity to offer a full and fair defense against Doe's claims.

> tribunal, statements by pertinent university officials, or patterns
> of decision-making that also tend to show the influence of
> gender."

*Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 765–66 (D. Md. 2015) (cleaned up).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause "guarantees equal laws, not equal results." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979). "Based on that proposition, within the context of a gender-based discrimination claim, government action whose effects burden one sex more than another does not violate the Equal Protection Clause absent a showing of intentional or purposeful discrimination." *Doe v. Fairfax Cnty. Sch. Bd.* ("*Fairfax Cnty.*"), 403 F. Supp. 3d 508, 515 (E.D. Va. 2019) (citing *Feeney*, 442 U.S. at 274). Accordingly, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated *and that the unequal treatment was the result of intentional or purposeful discrimination*." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added).

"Courts have recognized two theories that could support an Equal Protection or Title IX claim in student-discipline cases: a 'selective enforcement' theory and an 'erroneous outcome' theory." *Fairfax Cnty.*, 403 F. Supp. 3d at 515. Because Dillow is proceeding under an "erroneous outcome" theory, the court analyzes his Equal Protection (Count 2) and Title IX (Count 3) claims simultaneously.

In his complaint, Dillow does not allege any facts—outside of conclusory allegations— that would support an inference that the decision to suspend him was motivated by sex or

gender bias. For instance, Dillow does not allege any statements by the hearing panel members that would suggest, let alone establish, that his gender was a factor in the outcome, nor does he attempt to show that men fare worse than women in Title IX investigations at Virginia Tech based on publicly available data from the university or the U.S. Department of Education's Office of Civil Rights. Absent factual allegations from which the court could draw the inference that such discrimination motivated Virginia Tech's actions, his claim is deficient and must be dismissed.

### iv.   *Dillow's state law claims—even if they were not barred by the Eleventh Amendment—are procedurally barred.*

All of Dillow's state-law claims are barred by his failure to present notice of them to the proper individuals or agencies, as required by Virginia law. As it relates to his breach of contract claim (Count 4), Virginia law states that

> [a]ny person having any pecuniary claim against the Commonwealth upon any legal ground shall present the same to the head of the department, division, institution or agency of the Commonwealth responsible for the alleged act or omission which, if proved, gives rise to the claim. If, however, the claimant cannot identify the alleged act or omission with any single department, division, institution or agency of the Commonwealth, then the claim shall be presented to the Comptroller.

Va. Code Ann. § 2.2-814(A). Although Dillow argues that he gave the required notice by appealing the Title IX hearing panel's decision, that argument is flawed for several reasons.

First, in his complaint, Dillow alleges that he appealed to Keene, not the President of Virginia Tech, who is the individual to be noticed under Virginia law. *See id.* Second, there is no indication that an appeal of a hearing panel's decision would put Virginia Tech on notice that it was to be sued for a breach of contract. In *Cominelli v. Rector & Visitors of the Univ. of*

- 26 -

*Va.*, this court, through Judge Moon, held that sending a copy of the complaint to the university's counsel (and engaging in months of settlement negotiations) was insufficient to satisfy the notice statute. The court noted that, "[w]hen viewed in tandem with Section 8.01-192, it is evident that Section 2.2-814 requires a claimant to present his pecuniary claim to the President and have the claim rejected before filing a Complaint in circuit court." 589 F. Supp. 2d 706, 719 (W.D. Va. 2008). Clearly, the notice must put Virginia Tech on notice of a "pecuniary claim;" the appeal of a disciplinary hearing does not suffice.

As to the negligence and negligent infliction of emotional distress claims (Counts 5 and 6), the Virginia Tort Claims Act requires that similar notice be given:

> Every claim cognizable against the Commonwealth or a transportation district shall be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable, within one year after such cause of action accrued. Failure to provide such statement shall not bar a claim against the Commonwealth or a transportation district, provided that (i) for claims against the Commonwealth, the Division of Risk Management or any insurer or entity providing coverage or indemnification of the claim or the Attorney General or (ii) for claims against a transportation district, the chairman of the commission of the transportation district, had actual knowledge of the claim, which includes the nature of the claim, the time and place at which the injury is alleged to have occurred, and the agency or agencies alleged to be liable, within one year after such cause of action accrued.

Va. Code. Ann. § 8.01-195.6(A). There is no allegation that Dillow delivered such a notice to anyone at Virginia Tech, and no allegation that would suggest that the savings provision (actual notice of the claim by the Division of Risk Management or any insurer) would apply.

Although Dillow styled a section of his response brief "PLAINTIFF'S NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST DEFENDANTS ARE PROPERLY BEFORE THIS COURT" (Pl.'s Br. in Opp. to Defs.' Mot. to Dismiss pg. 23, Nov. 2, 2022 [ECF No. 41]), his argument is unrelated to the VTCA's notice provisions (*see id.* at 23–24). Accordingly, his claims are barred under that statute.

## IV.   CONCLUSION

For these reasons, all three motions to dismiss will be granted and Dillow's claims will be dismissed without prejudice. Dillow will be given 21 days to file a second amended complaint, if he so chooses.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 2nd day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE