## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **ROBERT DILLOW,** | **Case No. 7:22-cv-00280-TTC** |
| *Plaintiff,* | |
| v. | **SECOND AMENDED COMPLAINT** |
| **VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; SHARA PENERMON (in her individual capacity); STEVEN SCHUH (in his individual capacity); RACHAEL TULLY (in her individual capacity); and DOE DEFENDANTS 1-20 (in their individual capacities),** | |
| *Defendants.* | |

## I.    INTRODUCTION

This is an action arising from Plaintiff's dismissal from Virginia Polytechnic Institute and State University, during which he was subjected to gender-based discrimination and deprived of his due process rights. Plaintiff is seeking damages and injunctive relief for Defendants' violation of Plaintiff's due process and equal protection under 42 U.S.C. §1983 and violations of Title IX under 20 U.S.C. §1681.

Defendants are also responsible for negligent infliction of emotional distress and breach of contract.

## II.   <u>PARTIES</u>

1.      Plaintiff Alex Dillow (hereinafter "Plaintiff" or "Dillow") is a former student of Virginia Polytechnic Institute and State University. Plaintiff is a citizen and resident of Virginia.

2.      Defendant Virginia Polytechnic Institute and State University (hereinafter referred as "the University" or "Virginia Tech") is a land grant institution, founded and incorporated in 1872 at Blacksburg, Virginia — which is located in Montgomery County. At all times relevant to this Complaint, the defendant's principal place of business was located within the Commonwealth of Virginia. Virginia Tech is a recipient of Federal Funding.

3.      Defendant Shara Penermon (hereafter "Defendant Penermon") was employed by Virginia Tech as a Title IX investigator at all times relevant to this litigation.

4.      Defendant Steve Schuh (hereafter "Defendant Schuh") was employed by Virginia Tech as the Assistant Director of Student Conduct at all times relevant to this litigation.

5.      Defendant Rachael Tully (hereafter "Defendant Tully") was employed by Virginia Tech as the Student Conduct Coordinator at all times relevant to this litigation.

6.     Defendants DOES 1-20 (hereafter "DOE Defendants") are individuals who are or were employed by Virginia Tech and participated in Mr. Doe's Title IX proceedings at all times relevant to this litigation.

## III.   <u>JURISDICTION & VENUE</u>

7.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or law of the United States.

8.     In accordance with 28 U.S.C. §1367, this court also has supplemental jurisdiction over Plaintiff's state law claim for negligence infliction of emotional distress.

9.     Defendant Virginia Tech conducts business in the State of Virginia. Defendants Penermon, Schuh, Tully and Doe Defendants 1-10 on the grounds that they were employees of Virginia Tech at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Virginia.

10.     Venue in this action is property in the Western District of Virginia because the events relevant to this action occurred primary within the geographical confines of the Western District of Virginia.

## IV.   FACTUAL ALLEGATIONS

11.    Plaintiff entered into a contract with Virginia Tech in which Plaintiff was to obtain educational instruction in mutual consideration for payment of funds.

12.    The contract was executed and Plaintiff enrolled as a student at Virginia Tech.

13.    Jane Doe is a woman, who at all times relevant to this action, was a student at Virginia Tech.

14.    In early January of 2020, Jane Doe broke up with her then-boyfriend (hereinafter "Ex-Boyfriend").   However, the two of them maintained a close relationship.  In fact, Jane Doe worked at the same location as her Ex-Boyfriend and shared an apartment with her Ex-Boyfriend at all times relevant to this action.

15.    Only a few weeks after the breakup, on or about January 22, 2020, Plaintiff and Jane Doe met each other using a smartphone app, used primarily for romantic matchmaking, called "Tinder".  After talking for a few days, it was agreed that Jane Doe would meet Plaintiff along with his Friend (hereinafter "Friend") on January 27, 2020, in order to celebrate the Friend's birthday.

16.    Before their meeting, Jane Doe told Plaintiff that she was not interested in pursuing a romantic relationship and that she was "just looking to go out with people".  Plaintiff replied: "I think you're cool and we would have a fun together.  I also just go out of something serious that ended horribly so I'm just out here hanging

out and if something ends up happening it happens but for now I'm just hanging out." Jane Doe relied approvingly, stating: "Okay sick then that works so well for me".

17.    On January 27, 2020, Jane Doe, Plaintiff, and his Friend met in a restaurant in downtown Blacksburg called Sharkey's around 7:15 P.M.  Plaintiff and his Friend took a bus to the restaurant, and Jane Doe drove her car and parked downtown.  Plaintiff and Jane Doe each consumed a Long Island Iced Tea along with a hamburger.

18.    At approximately 8:15 P.M., the group travelled to a bar called Top of the Stairs (Hereinafter "TOTS").  While at TOTS, Plaintiff and Jane Doe each consumed a "rail" cocktail and shared a vodka cranberry cocktail.  The group stayed at TOTS for approximately two hours.

19.    Jane Doe grew concerned that her car would be towed if she left it overnight.  She could not drive due to her consumption of alcohol.  In response Plaintiff arranged for another friend (hereinafter "Driver") to pick them up.

20.    Around 10:30 P.M., Driver and her boyfriend picked up the group and drove to Jane Doe's Car. Driver then drove Jane Doe's car to Plaintiff's apartment complex because it would not be towed if parked there.  Jane Doe and Plaintiff rode with Driver and Friend rode with Driver's boyfriend.  Driver and her boyfriend lived at the same apartment complex.

21.     Jane Doe, Plaintiff and his friend arrived at Plaintiff's apartment around 11:00 P.M.  The group played video games and attempted to make brownies.  At some point, Jane Doe was present in Plaintiff's bedroom and wrote the following message on his whiteboard: "chocolate on the bed is the fault of English major [*Jane Doe's First Name*] who finds you tolerable."  It is unknown how long Jane Doe was present in Plaintiff's room. Neither Plaintiff nor Jane Doe can recall that they had sexual intercourse at any point.

22.     Around 12:30 A.M., Jane Doe fell asleep in Plaintiff's living room. At approximately 1:00 A.M Jane Doe called her Ex-Boyfriend to arrange for him to pick her up.  He arrived around 1:30 A.M, at which point, Jane Doe realized that she was missing her keys. Plaintiff walked to Driver's apartment to see if she had them, but there was no answer at the door.  As Jane Doe left the apartment, she kissed Plaintiff.

23.     The next day, Jane Doe and Plaintiff texted back and forth in an amicable fashion.  At one point, while discussing the events of the previous night, Plaintiff made a joke, stating: "I found a condom wrapper on the floor so we either fucked or we decided to blow it up like a balloon Lmao."  This message is clearly not an admission of sexual intercourse but is a joke playing off of Plaintiff's observation of a condom wrapper on his floor.  Crucially, this message also makes no reference to an actual used condom, rather, just to the condom wrapper.

Furthermore, there is nothing in this message that indicates when the condom was used, and there is no reference whatsoever to a used condom itself.

24.    Jane Doe however, came to believe that a sexual assault had occurred. On January 28, 2020, Jane Doe visited the Blacksburg Police Department and accused Plaintiff of sexually assaulting her.  Jane Doe had a sexual assault PERK exam performed the same day. Throughout the next few days, the Blacksburg Police Department took statements from Plaintiff and his Friend.  Ultimately, on February 6, 2020, the Montgomery County Prosecutor's Office declined to bring charges against Plaintiff due to a lack of evidence.

25.    On February 3, 2020, Jane Doe contacted the Virginia Tech Title IX office and again accused Plaintiff of sexually assaulting her.

26.    Based on Jane Doe filing a Title IX complaint, Defendants accepted her statements as true.

27.    Defendants failed to investigate whether Plaintiff, a male, could be the victim in the Title IX investigation.

28.    Plaintiff was discriminated against throughout the Title IX process as a result of him being male.

29.    On February 11, 2020, Defendant Penermon informed Plaintiff that a Title IX investigation was being undertaken against him and that a no-contact order had been issued against him with respect to Jane Doe.

30.     Defendant Penermon was responsible for investigating Jane Doe's Title IX complaint and for creating a Title IX investigation report.   The Title IX investigation report contained statements prepared by Jane Doe, Ex-Boyfriend, Plaintiff, Friend, and Driver.   Additionally, the report contained screenshots of text message conversations between Jane Doe and Plaintiff, as well as between Jane Doe and Ex-Boyfriend.   Finally, the report also contained a copy of the police report prepared by the Blacksburg Police Department, although the results of the PERK exam were not included.

31.     Defendant Penermon's report was submitted on March 23, 2020 and was relied on by the Title IX hearing officers in reaching their decision.

32.     On April 21, 2020, Shanai Sloan sent Plaintiff several additional documents that Jane Doe had prepared for their Title IX hearing the next day.   These documents provide an extremely inflammatory and biased account of the alleged incident that is unmistakably slanted towards Jane Doe's point of view. Furthermore, they contain material assertions that were absent from the statement Jane Doe provided to the Title IX investigation report, including but not limited to:

    a.   Suggesting that Plaintiff coerced Jane Doe into coming to his apartment.

    b.   Suggesting that Jane Doe was much more intoxicated than Plaintiff, and the Plaintiff knowingly took advantage of this.

8

c. That Jane Doe noticed "hickies" on her neck the next morning.

d. That the PERK exam had revealed evidence of a latex condom used during sexual intercourse.

e. That Jane Doe has a latex allergy.

f. That Plaintiff had "cornered" Jane Doe in his room while shirtless and made physical advances on her.

g. That Plaintiff said "hey, we're just hanging out" while attempting to have sex with Jane Doe.  It asserted that this statement was a reference to an earlier text made by Jane Doe.

h. That Jane Doe asked Plaintiff why his mouth "smelled like pussy."

33.     Given that these documents were presented to Plaintiff the day before the Title IX hearing, Plaintiff did not have time to meaningfully respond to any of the assertions contained within them.

34.     The Title IX hearing was held on April 22, 2020.  Defendant Schuh and Defendant Tully were responsible for reviewing all the information that was provided for the hearing and determining whether Plaintiff committed a violation of Virginia Tech policy.

35.     On April 24, 2020, Defendant Schuh and Defendant Tully notified Plaintiff that he was found responsible for the offense of Sexual Violence-Rape.  As a result of this decision, Plaintiff was suspended from Virginia Tech for two years.

36.     Student Code of Conduct 8300, Appendix III Formal Title IX Adjudication Process, A. Procedural Guarantees that "In formal conduct hearings for Title IX formal complaints, the complainant and respondent are entitled to the following procedural guarantees and opportunities: … To appeal, regardless of the outcome, based on the following grounds (1) procedural irregularity; (2) significant and relevant new information that was not available at the time of the hearing; (3) the Title IX Coordinator, Investigator, or hearing officer(s) had a conflict of interest or bias, which affected the outcome; (4) unduly harsh or arbitrary findings or sanctions.

37.     Throughout the summer of 2020, Plaintiff continued to try and work with the school to further an appeal of Defendant's decision.

38.     All subsequent appeals were unsuccessful.

39.     This arbitrary and biased decision has caused immense suffering to Plaintiff and has completely upended his life.  Plaintiff's career aspirations of working in food science have been derailed having been delayed by two years and the presence of a suspension on his academic transcript will make it extremely difficult for Plaintiff to obtain further education necessary to realize his career goals. Furthermore, the experience of being found responsible for a heinous act that he did not commit has taken an immense psychological and emotional toll on Plaintiff.

40.     On May 3, 2020, pursuant to Virginia Tech disciplinary procedure, Plaintiff timely appealed the decision. On June 16, 2020, Plaintiff was notified that the original decision had been upheld.

41.     Defendants breached their duty owed to Plaintiff in direct violation of the contract entered into between Plaintiff and Virginia Tech.

42.     On October 28, 2020, Plaintiff, through counsel further challenged the decision through a complaint to the Office of Civil Rights of the U.S. Department of Education (hereinafter "O.C.R.").  On August 12, 2021, O.C.R. informed Plaintiff that his complaint would be dismissed and investigated no further.

43.     As a result of Defendants action Plaintiff suffered a loss of his protected property right in his education.

44.     Plaintiff had a right to his continued education.

45.     Defendant Virginia Tech has a policy in which students are not dismissed without due cause.

46.     As a result of the gender discrimination Plaintiff faced, Plaintiff was disciplined and ultimately dismissed for a violation in which he did not commit.

47.     As a result of Defendants' action, Plaintiff has suffered a loss of his liberty interest in his good name and reputation.

48.     Plaintiff, having been found guilty of a Title IX violation, will forever face the stigmatize of a sexual assault charge on his record that will require disclosure to graduate schools, internships as well as future employers.

49.     Plaintiff's injuries as a result of the takings is certain.

50.     Plaintiff has thereby exhausted all necessary administrative remedies.

51.     Defendants were put on notice of the causes of action to be brought against them on May 19, 2022.

52.     Defendants acknowledged though counsel via email on May 20, 2022, that they were aware of the charges to be brought against them.

## Respondeat Superior and Agency

53.     Under federal and Virginia law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

54.     At all times relevant to this action, Defendants Penermon, Schuh, Tully and Doe Defendants 1-10 were employed by Virginia Tech. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with Virginia Tech.

## V.   CAUSES OF ACTION

### COUNT ONE – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. §1983
### (As to Defendant Virginia Tech)

55.    Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

56.    In violation of §1983, defendant Virginia Tech has deprived Plaintiff of his rights to equal protection and due process under the Fourteenth Amendment in that defendant willfully treated Plaintiff in a disparate manner because of his gender (male).

57.    By stigmatizing Plaintiff based on his gender, in violation of §1983 the defendant Virginia Tech deprived him of his right to equal protection of the laws without any substantial or justified basis treating him in this disparate manner.

58.    In further violation of §1983 defendant Virginia Tech also denied him of the right to due process before deprivation of his contractual right as a student of Virginia Tech on the verge of graduation from the program, with significant finances invested in his education, and denied him even the unprejudicial due process of the hearing procedure set out in the Virginia Tech Handbook.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair

13

investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(b)    Grant such other and further relief as justice requires.

## COUNT TWO - VIOLATION OF DUE PROCESS UNDER 42 U.S.C. §1983.
### (As to the Individual Defendants)

59.    Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set out herein.

60.    Plaintiff had a constitutionally protected and clearly established property interest in his continued education at Virginia Tech after entering into a contract with Virginia Tech.

61.    Plaintiff accepted Defendant's offer and attended Virginia Tech as a student.

62.    There was a mutual exchange of consideration for which Plaintiff attended Virginia Tech involving payments and expenditure of time as well as Virginia Tech making its service including educational opportunities available to Plaintiff.

63.    Plaintiff had a constitutionally protected and clearly established liberty interest. "The Due Process Clause... forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of the Clause must be satisfied." Goss v. Lopez, 419 U.S. 565, 574 (1975) (internal citation and quotations omitted). The discipline from Virginia Tech was detrimental to Plaintiff's good name and reputation for his future academic and professional career.

64.    In violation of §1983, defendant Virginia Tech has deprived Plaintiff of his constitutionally protected interests when they denied him any sort of fact-finding or hearing on the part of Defendants. Plaintiff was not allowed to challenge the allegations against him.

65.    By stigmatizing Plaintiff and those like him for his gender, in violation of §1983 the defendants deprived him of his right to equal protection of the laws without any substantial or justified basis treating him in this disparate manner.

66.    In further violation of §1983 defendant Virginia also denied him of the right to due process before deprivation of his contractual right as a student of Virginia Tech on the verge of graduation from the program, with over significant finances invested in his education, and denied him even the due process of the hearing procedure set out in the Student Handbook.

67.    Given the immense gravity of Jane Doe's accusations of sexual assault, Plaintiff's constitutionally protected liberty and property interests were directly threatened by the outcome of the April 22, 2020, Title IX hearing.

68.    The Defendants were therefore constitutionally required to ensure that the Title IX hearing was conducted in a fair and impartial manner.

69.    Virginia Tech's internal policy provides that an individual accused of sexual assault cannot be found responsible unless their guilt can be established by a preponderance of the evidence.

70.    Defendant Penermon and Doe Defendants had direct participation in Plaintiff's Title IX case and were responsible for ensuring that the undertaken in a manner that was fair to Plaintiff.

71.    Defendants were responsible for allowing Jane Doe to submit a highly inflammatory and prejudicial set of documents to the Title IX hearing.

72.    Plaintiff was provided with these documents only one day before the date of the hearing, thereby depriving him of a meaningful chance to respond.

73.    Plaintiff was not provided the opportunity to meaningfully respond to Jane Doe's inflammatory documents.

74.    Defendant Schuh and Defendant Tully were responsible for reviewing the evidence submitted to the Title IX hearing and deciding whether the preponderance of the evidence standard had been met.

75.     Defendant Schuh and Tully failed to review the evidence in an impartial matter and instead concluded that Plaintiff was in violation of Title IX due the fact that he was a male.

76.     Defendant Schuh and Defendant Tully failed their duty and erroneously found Plaintiff responsible for sexual assault despite lacking a preponderance of the evidence.

77.     Defendants Schuh and Tully erroneously found that it was "more likely than not" that Plaintiff had engaged in sexual intercourse with Jane Doe.

78.     The evidence relied on failed to support this conclusion.

79.     By upholding the decision of Defendants Schuh and Tully on Appeal, Virginia Tech legitimized a Title IX decision that was made without a preponderance of the evidence, and thereby violated Plaintiff's due process rights.

80.     As punishment for being found guilty, Plaintiff was dismissed from the university for two years.

81.     Plaintiff is forever stigmatized with having a Title IX violation on his record.

82.     The Title IX violation as well as the dismissal will be required to be disclosed to all universities as Plaintiff seeks to continue his education.

83.     The Title IX violation and dismissal will bar Plaintiff from seeking financial assistance in his education.

84.     The Title IX violation will be required to be disclosed on all internship and career applications.

85.     Plaintiff will not be able to obtain education and career opportunities as a result of Defendants unlawful conduct.

86.     Defendant's due process violations have also changed Plaintiff's legal status.   When the Defendant found Plaintiff guilty of the above disciplinary violations, Plaintiff's status changed from being a full-time student in good standing, to being a student suspended for two years.   Defendant's actions thus caused a change in Plaintiff's legal status.

87.      In addition to reputational damage, by finding Plaintiff responsible for a heinous act that he did not commit, the Defendants have caused Plaintiff to suffer immense psychological and emotional suffering.

88.     As a direct and proximate result of Defendants' actions or failures, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)  Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

## COUNT THREE - VIOLATION OF TITLE IX UNDER 20 U.S.C. §1681
### (Against Defendant Virginia Tech)

89.  Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set out herein.

90.  Plaintiff was wrongfully found guilty of a Title IX violation.

91.  The Title IX process was void of due process.

92.  Defendants Schuh and Tully erroneously found that it was "more likely than not" that Plaintiff had engaged in sexual intercourse with Jane Doe.

93.   The evidence relied on to support this conclusion was 1). the condom wrapper Plaintiff found on the floor of his bedroom" and 2.) the purported findings from Jane Doe's PERK exam which allegedly showed evidence of sexual activity using latex.

94.   First, the mere presence of a condom wrapper cannot support the inference that Plaintiff had sexual intercourse with Jane Doe.

95.   There was no evidence submitted by either party that indicates when the wrapper was left on Plaintiff's floor.

96.   Jane Doe's PERK exam was never itself submitted into evidence.

97.   Defendants Schuh and Tully relied entirely on the self-serving and partisan contentions of Jane Doe claiming that the PERK exam revealed the presence of a latex condom in Jane Doe's vagina.

98.   Plaintiff was discriminated against as a male and determined to be guilty absent viable evidence against him.

99.   As the PERK exam was never submitted, it is impossible for Defendants Schuh and Tully to know what the results of the PERK exam were.

100.   Defendants Schuh and Tully had no evidence to conclude that the PERK exam revealed the presence of a latex condom in Jane Doe's vagina.

101.   Jane Doe did not provide any evidence that demonstrates that she had a latex allergy.

102.   The possibility of a latex allergy was yet another assertion by Jane Doe that Defendant Schuh and Tully took at face value.

103.   Jane Doe, as a female, was given the presumption of truth. An opportunity not provided to Plaintiff as a male.

104.   The available evidence did not plausibly indicate that Plaintiff and Jane Doe had sexual intercourse at all, Defendants Schuh and Tully lacked the necessary preponderance of the evidence to find that Plaintiff sexually assaulted Jane Doe.

105.   Furthermore, the Defendants failed to account for the role that Jane Doe's Ex-Boyfriend might have had in influencing her to accuse Plaintiff of sexual assault.

106.   Jane Doe lived with her Ex-Boyfriend and worked at the same place as him, the personal dynamics between them certainly played some role with respect to Jane Doe's accusations.

107.   However, Defendant Penermon failed to investigate this fact while Defendants Schuh and Tully failed to give any weight to this fact, resulting in Plaintiff being found guilty of a Title IX violation in which he did not commit.

108.   By finding Plaintiff responsible for sexual assault without a preponderance of the evidence, Defendants Schuh and Tully reached a decision that was completely against the weight of evidence.

109.   By upholding the decision of Defendants Schuh and Tully on Appeal, Virginia Tech legitimized a Title IX decision that was made without a preponderance of the evidence.

110.   Furthermore, the Defendants' erroneous decision was motived by gender bias against Plaintiff as a male.

111.   In reaching their decision to find Plaintiff responsible for sexual assault, Defendants Schuh and Tully relied on several findings that simply amount to taking Jane Doe's account at face value as they were never independently verified.  These findings include:

    a.   That Jane Doe recalls asking Plaintiff why his mouth "smelled like pussy."

    b.   Jane Doe having a latex allergy.

    c.   Jane Doe having hickies on her neck.

    d.   That the PERK exam had revealed evidence of a latex condom used during sexual intercourse.

    e.   The Plaintiff got up to retrieve a condom.

    f.   That Jane Doe felt pressure in her vagina consistent with sexual intercourse.

112.   By taking these partisan contentions by Jane Doe as absolute fact, Defendants Schuh and Tully failed to remain objective and expressed a preference

for Jane Doe's account over Plaintiff's account.  This preference is a manifestation of gender bias against Plaintiff.

113.   By upholding the decision of Defendants Schuh and Tully on Appeal, Virginia Tech legitimized a Title IX decision that was made on the basis of discrimination, and thereby violated Plaintiff's equal protection rights.

114.   Through their pattern of affording Jane Doe advantages and favorable preference, the Defendants subjected Plaintiff to differential treatment on the basis of his gender.

115.   As a direct and proximate result of Defendants' violations, Plaintiff has suffered immense emotional and psychological harm.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to

Virginia Tech to finish his degree and removing all mention of the

Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all

costs sustained in connection with the prosecution of this action,

including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

**COUNT FOUR – NEGLIGENCE**
**(As to the Individual Defendants)**

116.   Plaintiff incorporates by reference the facts alleged in each and every

allegation set forth in the preceding paragraphs of the Complaint as if fully set out

herein

117.   Defendants owed Plaintiff a duty of reasonable care.

118.   Defendants Penermon Schuh and Tully were negligent in performing

their duty of reasonable care and failed, neglected and/or refused to discharge their

duty properly and fully by, among other things:

a.   Evaluating Plaintiff's Title IX claim against the weight of the evidence.

b.   Failure to provide an adequate appeal in light of the weight of the

evidence.

c.   Failing to ensure that Plaintiff's rights under the University Code of

Conduct were upheld.

119.   By their negligent conduct, Defendants directly and proximately caused Plaintiff financial harm. Plaintiff is confronted with an inability to complete his education, pursue graduate school, practice in his chosen profession, and to pay his mounting student loan debts. Plaintiff has suffered direct financial losses due to Defendants' conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)   Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)   Grant such other and further relief as justice requires.

## COUNT FIVE - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (As to the Individual Defendants)

120.   Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set out herein.

121.   Defendants' actions caused Plaintiff emotional distress.

122.   Plaintiff will be required to disclose his Title IX violation in all future educational and employment application.

123.   Defendants' actions caused Plaintiff emotional distress, worrying about his reputation as Defendants' found him guilty of sexual assault against the weight of the evidence.

124.   Defendants' should have known that their actions would be injurious to Plaintiff.

125.   Defendants' actions were reckless, intentional and outrageous in light of the evidence and used to cause harm to Plaintiff.

126.   Defendants' actions violated Virginia Tech's policies.

127.   Defendants' actions were the proximately caused Plaintiff severe emotional and physical injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)  Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)  Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as readmitting Plaintiff to Virginia Tech to finish his degree and removing all mention of the Title IX investigation and outcome from his educational records;

(c)  Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)  Grant such other and further relief as justice requires.

## VI.    JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury on all issues stated in this action.

Dated: March 23, 2023

Respectfully submitted,

*/s/ Keith Altman*
Keith Altman, Esq.  (*pro hac vice*)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

/s/ *William W. Smith*
William W. Smith, III, Esq.
(VA Bar ID 92533)
Critzer Cardani, PC
12090 West Broad Street, 2nd Floor
Henrico, VA 23233
(804) 793-8010
(804) 767-3436 fax
Will@cclawva.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on March 23, 2023, I served the foregoing Plaintiff's Second Amended Complaint upon all parties herein by filing copies of same using the ECF System.

*/s/ Keith Altman*
Keith Altman, Esq.