# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT DILLOW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:22cv280** |
| | ) | |
| **VIRGINIA POLYTECHNIC INSTITUTE** | ) | |
| **AND STATE UNIVERSITY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Shara Penermon ("Penermon"), Rachael Tully ("Tully"),[1] and Steven Schuh ("Schuh") (collectively "Defendants"), by counsel, submit this brief in support of their Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### STATEMENT OF THE CASE

In his Second Amended Complaint—now the third iteration of his lawsuit—Robert Dillow ("Dillow") claims that his two-year suspension from Virginia Tech violated his constitutional rights to due process and equal protection under the law and violated Title IX of the Education Amendments of 1972. Dillow also asserts claims for negligence and negligent infliction of emotional distress ("NIED") under Virginia law.

As the Court knows, this case stems from a female student's accusation that Dillow sexually assaulted her in February 2020. After the female submitted a Title IX complaint,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

---

[1]  Tully has also filed a motion to dismiss pursuant to Rule 12(b)(5). Pursuant to Rule 12(b), Tully does not waive any defense or objection under Rule 12(b)(5) by joining this motion.

629.0449\NHS
4874-8981-1545 .v4

Virginia Tech commenced an investigation of the woman's allegations, held a disciplinary hearing in April 2020, and ultimately concluded that Dillow's actions warranted a two-year suspension from the university. As set forth below, Dillow's Second Amended Complaint *still* fails to state a cognizable cause of action under any of his various theories.

First, Dillow still fails to allege a liberty or property interest for purposes of his due process claims, and as a matter of law—as the Court already concluded—Dillow received the process he was due. Second, Dillow's equal protection and Title IX claims still fail to state a claim as well, as there are no factual allegations supporting any inference that gender bias was the "but for" cause of his suspension. And finally, Dillow failed to comply with the statutory notice requirements for his negligence and NIED claims, and even if he had, his claims still would fail as a matter of law. As such, this case must be dismissed *with prejudice*.

### SUMMARY OF CHANGES FROM FIRST AMENDED COMPLAINT

Dillow has dropped defendants Shanai Sloan, Frances Keene, Katie Polidoro, and Anthony Scott. He also omitted his breach of contract claim. New allegations appear in paragraphs 26–28, 36, 43–52, 56–58, 60, 63–66, 75, 81–85, 90–91, 98, 103, 107, 110, 117, and 122 of the Second Amended Complaint.

### STATEMENT OF ALLEGED FACTS

In January 2020, a female student at Virginia Tech, Jane Doe ("Doe"), met Dillow, also a Virginia Tech student, through Tinder. ECF No. 49, ¶¶ 15, 16. Doe and Dillow planned to meet in person on January 27. Id., ¶ 15. Dillow and one of his friends met Doe on the evening of January 27 at a restaurant in Blacksburg. There, both Dillow and Doe each consumed a Long Island Iced Tea and a hamburger. Id., ¶ 17. The trio then went to a bar,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

and Dillow and Doe each consumed a cocktail and then shared another cocktail. Id., ¶ 18. Doe was unable to "drive due to her consumption of alcohol," so Dillow called a friend to pick them up from the bar and help move Doe's car so that it would not be towed that night. Id., ¶¶ 19–20.

Dillow and Doe went to Dillow's apartment and played video games and "attempted to make brownies." Id., ¶ 21. At some point, Doe was in Dillow's bedroom. Id. Both were sufficiently intoxicated that neither could remember if they had sexual intercourse that night. Id. Dillow claims Doe fell asleep in the living room around 12:30 am, and at approximately 1:00 am, Doe called her ex-boyfriend to pick her up from Dillow's apartment. Id., ¶ 22. The ex-boyfriend arrived around 1:30 am, and Doe kissed Dillow before leaving the apartment. Id.

The next day, January 28, Dillow and Doe exchanged text messages, and Dillow wrote, "I found a condom wrapper on the floor so we either fu[****] or we decided to blow it up like a balloon LMAO." Id., ¶ 23. Dillow claims this was a joke, but he also admits that he cannot remember if he and Doe did *or did not* have sex the previous night. See id., ¶ 21.

After reading that message, Doe allegedly "came to believe that a sexual assault had occurred" and reported to the Blacksburg Police Department ("BPD") that Dillow had sexually assaulted her. Id., ¶ 24. Doe had "a sexual assault PERK exam performed the same day," and the BPD took statements from Dillow and Dillow's friend. Id. According to Dillow, the Commonwealth's Attorney for Montgomery County declined to bring charges against Dillow "due to a lack of evidence." Id.

On February 3, 2020, Doe made a complaint to Virginia Tech's Title IX office accusing Dillow of sexually assaulting her. Id., ¶ 25. Dillow claims Virginia Tech "accepted [Doe's]



629.0449\NHS
4874-8981-1545 .v4

statements as true" and "failed to investigate whether [Dillow], a male, could be the victim in a Title IX investigation." Id., ¶¶ 26–27. On February 11, Penermon informed Dillow that Virginia Tech had initiated a Title IX investigation against him and issued a no-contact order against him as to Doe. Id., ¶ 29. Penermon conducted the investigation and prepared a Title IX investigation report containing: (1) statements from Dillow, Doe, and others, including Doe's ex-boyfriend; (2) screenshots of text messages between Dillow and Doe and between Doe and her ex-boyfriend; and (3) the BPD police report regarding Doe's allegations. Id., ¶ 30. The "results of the PERK exam were not included" in the report. Id.

Penermon submitted the Title IX report on March 23, 2020. Id., ¶ 31. On April 21, 2020, Dillow received some additional documents Doe prepared and submitted for consideration at the hearing scheduled for the next day. Id., ¶ 32 (". . . Sloan sent Plaintiff several additional documents *that Jane Doe had prepared* for their Title IX hearing . . . .") (emphasis added). Dillow claims Doe's documents contained additional statements that were absent from Doe's statement in the Title IX report. Id. Dillow contends that he did not have a "meaningful time to respond" to these statements because the hearing was set for the next day. Id., ¶ 33.

Despite the allegations regarding these "new" assertions, Dillow *does not allege* that he asked anyone at Virginia Tech to reschedule the hearing so that he could consider these additional statements or that Virginia Tech denied any such request. He *also does not allege* when Virginia Tech received these documents *or* that Virginia Tech delayed delivering them to Dillow.

Virginia Tech held a hearing on Doe's allegations against Dillow on April 22, 2020. Id., ¶ 34. Schuh and another hearing officer were responsible for determining if Dillow



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

violated Virginia Tech policy. ***Dillow does not provide any allegations as to what***
***occurred during the hearing or what evidence or testimony was actually presented at***
***the hearing.***

On April 24, 2020, Dillow was found responsible for the offense of Sexual Violence-
Rape and suspended for two years. <u>Id.</u>, ¶ 35. Dillow appealed the decision on May 3, 2020,
and on June 16, 2020, the assigned appellate officer denied Dillow's appeal. <u>Id.</u>, ¶ 40.

Dillow claims he put the defendants "on notice of the causes of action to be brought
against them on May 19, 2022." <u>Id.</u>, ¶ 51. He does not allege to whom he directed the alleged
correspondence and does not attach a copy of it to his Second Amended Complaint.

<u>**ARGUMENT & AUTHORITY**</u>

Dillow's Second Amended Complaint fails to remedy the myriad deficiencies
highlighted by the Court's ruling on Defendants' prior Motion to Dismiss. Because none of
Dillow's claims are viable, this case must be dismissed with prejudice.

**I.   Standard of Review**

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678
(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The complaint's
factual allegations must produce an inference of liability strong enough to push the
plaintiff's claims "'across the line from conceivable to plausible.'" <u>Id.</u> at 683 (quoting
<u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>ACA Fin. Guar. Corp. v. City of Buena Vista</u>, 917 F.3d
206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content
in a complaint that "allows the court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." <u>Id.</u>



629.0449\NHS
4874-8981-1545 .v4

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," ACA Financial Guaranty Corp. v. City of Buena Vista, 298 F. Supp. 3d 834, 855 (W.D. Va. 2018), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." ACA Fin. Guar. Corp., 917 F.3d at 212 (internal quotations omitted).

## II. Negligence and Negligent Infliction of Emotional Distress Claims are Time-Barred

Ordinarily, Virginia's statute of limitations for negligence claims is two years. Va. Code § 8.01-243(A); Peabody v. Rector & Visitors of the Univ. of Va., No. 3:21cv44, 2022 WL 1251318, 2022 U.S. Dist. LEXIS 77263, *10–11 (W.D. Va. Apr. 27, 2022). Because Dillow sued Virginia Tech's officials, however, the claims in Counts Four and Five are subject to the Virginia Tort Claims Act ("VTCA"), which requires that a notice of claim be filed within one year of the accrual of the cause of action. Va. Code § 8.01-195.3; Va. Code § 8.01-195.6(A); Ogunde v. Commonwealth, 271 Va. 639, 642 (2006). While Dillow alleges "Defendants were put on notice of the causes of action to be brought against them on May 19, 2022," ECF No. 49, ¶ 51, and even if the notice complied with the Act, the "notice" came almost two years after the cause of action accrued and well over a year after the statutory



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

notice period provided for in the VTCA. Thus, his negligence claims are forever barred. Va. Code § 8.01-195.6(A).

### III. **Dillow Fails to State an Actionable Procedural Due Process Claim**

Counts I and II of the Second Amended Complaint purport to state a procedural due process claim against Virginia Tech[2] and the individual defendants. Dillow fails to state a claim for a violation of his procedural due process rights because Dillow fails to allege a recognized liberty or property interest. Furthermore, he concedes he received advance notice of the charges against him and an opportunity to be heard prior to the adverse action. See ECF 47, *22–23.

#### a. **Dillow fails to allege a liberty or property interest.**

Dillow's due process claim fails to allege a protected property or liberty interest to buttress his due process claim. As such, the claim fails as a matter of law.

The Fourteenth Amendment provides that "no state shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to allege a due process claim under the Fourteenth Amendment, Dillow must allege facts sufficient to show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011). Whether he satisfactorily alleges a protected property or liberty interest is a pure question of law. Tompkins v. U.S. Dep't of Veterans Affairs, 16 F.4th 733, 739, n.7 (10th Cir. 2021).

---

[2] See Virginia Tech's Motion to Dismiss pursuant to Rule 12(b)(1); see also ECF No. 47, *10–11.

629.0449\NHS
4874-8981-1545 .v4

The deprivation of a protected interest warrants some sort of notice and opportunity to be heard. <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1975). But a procedural due process violation occurs only with respect to the deprivation of liberty and property interests that the Fourteenth Amendment actually encompasses. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).

Dillow claims his property interest exists by virtue of the alleged "contract for his undergraduate education at Virginia Tech . . . ." ECF No. 49, ¶ 60. Dillow describes his liberty interest as "a constitutionally protected liberty interest" in his "good name and reputation for his future academic and professional career." <u>Id.</u>, ¶ 63. Dillow's allegations, however, fall woefully short of those necessary to state a due process claim.

**b. <u>Dillow does not have a property interest in his continued education.</u>**

As to Plaintiff's alleged property interest in his continued education, "[a] property interest is 'created and its dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.'" <u>Doe v. Alger</u>, 228 F. Supp. 3d 713, 725 (W.D. Va. 2016) (hereinafter "<u>Alger II</u>") (internal quotations and citation omitted). Property interests are not created by abstract needs or desires. Rather, they must arise from "state statutes, contracts, regulations, or policies." <u>Id.</u> Additionally, constitutionally protected property interests do not arise from unilateral expectations. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, No. 7:21cv378, __ F.3d __, 2022 WL 3006391, 2022 U.S. Dist. LEXIS 134267, *16 (W.D. Va. July 28, 2022) (hereinafter "<u>Doe II v. Va. Tech</u>").

Dillow does not rely on a state statute or regulation to support his claimed property interest. Instead, he appears to rely only on an implied contract between Dillow and Virginia Tech based upon his payment of tuition. ECF No. 49, ¶ 60.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW

- 8 -

At the outset, neither the Supreme Court nor the Fourth Circuit has actually recognized a property right to continued enrollment in a public college or university. Sheppard v. Visitors of Va. State Univ., 933 F.3d 230, 239 (4th Cir. 2021). Nor have they recognized "that the Commonwealth of Virginia has created such a right." Doe v. Alger, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) (hereinafter "Alger I"). Indeed, it is "undisputed that the Commonwealth of Virginia has not created a property interest in continued university education." Doe II v. Va. Tech, 2022 U.S. Dist. LEXIS 134267, *19 (citations omitted).[3]

In Alger I, a plaintiff's procedural due process claim survived a motion to dismiss. Id. at 658. But that plaintiff alleged that James Madison University ("JMU") created a property right in the plaintiff's continued education by adopting policies allowing for dismissal, suspension, or expulsion of students only for cause. Id. at 657. The plaintiff in Alger I also claimed that JMU's student rights policy served as a basis for his entitlement to continued enrollment. Id. at 658. In fact, the allegations in Alger I regarding the plaintiff's alleged property interest spanned several single-spaced pages, and he attached and quoted extensively from JMU's Policy on Student Rights to buttress his claim. See Doe v. Alger, No. 5:15cv35, ECF No. 30, at *2–4, 18–19 (July 17, 2015). The Alger I Court did not conclude that a property right actually existed based on those allegations. Rather, the court decided those allegations were sufficient to allow the plaintiff *the opportunity to prove one existed*. See Doe I v. Va. Tech, 400 F. Supp. 3d at 500.



FRITH ANDERSON + PEAKE PC ATTORNEYS AT LAW

---

[3] There is "'no statutory right to be a public or private college or university student.'" M.B. v. McGee, No. 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) (quoting Alger, 175 F. Supp. 3d at 660); see also Abbas v. Woleben, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446, at *19 (E.D. Va. 2013); Nofsinger v. Va. Commonwealth Univ., No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. July 13, 2012), aff'd, 523 F. App'x 204 (4th Cir. 2013); McCoy v. E. Va. Med. Sch., No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, 2012 WL 662529, at *2 (E.D. Va. Feb. 28, 2012); Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006).

By comparison, the allegations in <u>Alger I</u> stand in stark contrast to the single, conclusory allegation present in paragraph 60 of Dillow's Second Amended Complaint. Furthermore, since <u>Alger I</u>, the majority of judges in this Court have declined to find a property right existed based on allegations similar to those here.

This past July, Judge Urbanski concluded that a student failed to allege sufficient facts to support a property interest in continued university education. <u>Doe II v. Va. Tech</u> 2022 U.S. Dist. LEXIS 134267, at *26–28. In that case, the plaintiff alleged his payment of tuition and vague policies and customs created a property interest in continued enrollment. <u>Id.</u> at *27. Judge Urbanski disagreed, finding that student had merely alleged an abstract need or desire for continued enrollment. <u>Id.</u> at *27–28 (citation omitted). That plaintiff filed an amended complaint, and Judge Urbanski again dismissed the student's due process claims for failure to allege a protected property interest. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, No. 7:21cv378, 2023 WL 2188737, 2023 U.S. Dist. LEXIS 30717, *21–24 (W.D. Va. Feb. 22, 2023) (hereinafter "<u>Doe III v. Va. Tech</u>"). Of course, this Court's prior decision in this case followed closely on the heels of Judge Urbanski's decision. <u>See</u> ECF No. 47.

Dillow does not allege any facts to support a property interest in his education, and his claim that his payment of tuition created a property right arising out of some sort of contractual relationship between Dillow and Virginia Tech is the very same argument that has been rejected time and time again. Simply put, courts in this Circuit have routinely found that neither accreditation standards, student handbooks, syllabi, nor the payment of tuition create a contract between the university and its students. <u>See</u> <u>Doe III v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 30717, *20–25; <u>Murray v. Liberty Univ., Inc.</u>, No. 6:22-cv-00025, 2022 WL 4082483, 2022 U.S. Dist. LEXIS 160793, at *15–16 (W.D. Va. Sep. 6, 2022); <u>Doe II v. Va.</u>



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

*Tech*, 2022 U.S. Dist. LEXIS 134267, *27–28.; <u>Owen v. Liberty Univ.</u>, No. 6:19-cv-00007, 2020 WL 1856798, 2020 U.S. Dist. LEXIS 64579, at *21–27 (W.D. Va. Apr. 13, 2020); <u>Jacob Doe v. Va. Tech</u>, No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *17 (W.D. Va. Mar. 19, 2020) (hereinafter "<u>Jacob Doe v. Va. Tech</u>") (citing <u>Doe v. Washington & Lee Univ.</u>, 439 F. Supp. 3d 784 (W.D. Va. 2020); <u>Doe v. Marymount Univ.</u>, 297 F. Supp. 3d 573, 588 (E.D. Va. 2018)); <u>George v. Averett Univ. of Danville</u>, No. 4:19cv8, 2019 WL 3241177, 2019 U.S. Dist. LEXIS 119600, at *7–8 (W.D. Va. July 18, 2019).

Dillow's attempt to assert a property interest in his continued education based upon the payment of tuition has no basis in the law. Accordingly, Dillow fails to allege a cognizable property interest in his continued education.[4]

**c.** **<u>Dillow fails to allege a protected liberty interest.</u>**

Dillow also fails to allege a liberty interest to support a due process claim because there is no protected liberty interest in his "good name and reputation for his future academic and professional career." Under <u>Paul v. Davis</u>, 424 U.S. 693 (1976), to constitute a liberty interest, reputation injury must be accompanied by some "state action that distinctly altered or extinguished a legal status or right . . . ." <u>Alger I</u>, 175 F. Supp. 3d at 660 (citing <u>Shirvinski v. U.S. Coast Guard</u>, 673 F.3d 308, 315 (4th Cir. 2012); <u>Doe v. Rector & Visitors of George Mason Univ.</u>, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015)). This "stigma-plus" element demands allegations showing that "as a result of the state action complained of, a right or status <u>previously recognized by state law</u> was distinctly altered or

---

[4] While not alleged here, there is no liberty interest in a college student's continued education either. <u>See</u> <u>Jacob Doe v. Va. Tech</u>, 2020 U.S. Dist. LEXIS 47754, at *12–13 (citing <u>Alger 1</u>, 175 F. Supp. 3d at 657–58); <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 499.

629.0449\NHS
4874-8981-1545 .v4

extinguished." <u>Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 134267, *29 (internal quotations omitted).

In <u>Doe I v. Va. Tech</u> and <u>Jacob Doe v. Va. Tech</u>, Judge Dillon concluded that an expelled university student failed to state a claim for a deprivation of a liberty interest. <u>Jacob Doe v. Va. Tech</u>, 2020 U.S. Dist. LEXIS 47754, at *12–13; <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 499. Both decisions relied on her prior analysis in <u>Alger I</u>. <u>Id.</u>

In <u>Alger I</u>, Judge Dillon ruled that allegations more substantial than those in Dillow's Amended Complaint were still insufficient to state a claim for deprivation of a liberty interest. <u>Alger I</u>, 175 F. Supp. 3d at 658. The plaintiff in <u>Alger I</u> maintained that "he had 'a protected liberty interest in his good name, reputation, honor, and integrity,'" claimed that "stigmatizing information [would] be part of his permanent record and . . . shared with other colleges and universities." <u>Id.</u> Finding Fourth Circuit precedent in the government employment context distinguishable, the <u>Alger I</u> Court concluded those allegations failed to state a constitutionally protected liberty interest. <u>Id.</u> at 661.

Here, the Second Amended Complaint in this case is similarly ill-fated: Dillow alleges damage to his reputation and that the information regarding his suspension will be disclosed to any graduate school he applies to and to potential employers. ECF no. 49, ¶ 81–85.[5] Other than the cursory, passing reference to his alleged liberty interest, however, Dillow offers no factual allegations to support that claim other than the same type of allegation rejected by the <u>Alger I</u> Court. Furthermore, Dillow's reliance on the alleged contract with Virginia Tech does not support his liberty interest either because as noted

---

[5] Virginia law provides a process to have the notation on Dillow's transcript expunged. <u>See</u> Va. Code § 23.1-900(C).

629.0449\NHS
4874-8981-1545 .v4

previously, there is no implied contract between a university and its students. Thus, Dillow fails to allege sufficient facts to state a prima facie procedural due process claim, and Count I must be dismissed.

### d. **Dillow received due process.**

Even if Dillow has alleged a protected liberty or property interest, his claim still fails because he fails to allege any new facts showing a deprivation of the constitutionally required due process for student discipline.

The fundamental requirements of due process are fair notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976). But what process is due is a "flexible" inquiry and depends on the "particular situation" at hand. Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Dillow claims that "Defendants" were "constitutionally required to ensure that the Title IX hearing was conducted in a fair and impartial manner" and that pursuant to "to Virginia Tech's internal policy . . . an individual accused of sexual assault cannot be found responsible unless their guilt can be established by a preponderance of the evidence." ECF No. 49, ¶¶ 68–69. Dillow alleges that defendants allowed Jane Doe to submit a set of documents to the Title IX hearing and gave them to Dillow the day before the hearing. Id., ¶¶ 71–72. According to Dillow, receiving the documents the day before the hearing denied him a "meaningful opportunity to respond" to them. Id. Yet, he does not allege when anyone at Virginia Tech received these documents, and he fails to allege that he asked for additional time to respond. See ECF No. 47, *23–24, *23 n.16 ("Nevertheless, he does not allege that



629.0449\NHS
4874-8981-1545 .v4

he requested additional time to prepare or that, if any such request was made, Virginia Tech denied it.").

Dillow also maintains that defendant Schuh violated his due process rights by finding him responsible for sexual assault "despite lacking a preponderance of the evidence." Id., ¶ 76. But Dillow offers nothing more than conclusory allegations to support this claim. Indeed, he fails to provide any allegations as to what happened during the hearing or what evidence was presented for the hearing panel to consider.

Defendants afforded Dillow the "rudiments of procedural due process--notice and an opportunity to be heard." Butler v. Rector & Bd. of the Coll. of William & Mary, 121 F. App'x 515, 520 (4th Cir. 2005). To meet that standard in the student discipline context, "[t]he proceedings need not . . . take the form of a judicial or quasi-judicial trial; so long as the student is given notice of the charges against him, notice of the time of the hearing, and a full opportunity to be heard . . . ." B.S. v. Bd. of Sch. Trs., 255 F. Supp. 2d 891, 898 (N.D. Ind. 2003).

In this Circuit, "the standards established by the Fifth Circuit in Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961)" apply. Doe II v. Va. Tech, 2022 U.S. Dist. LEXIS 1324267, *31 (citations omitted).  That standard requires that "the student is given notice of the charges against him, notice of the time and hearing, and a full opportunity to be heard," which includes "be[ing] given the names of witnesses against him and an oral or written report on the facts to which each witness testifies." ECF No. 47, *23 (internal quotations and citations omitted).

The essence of Dillow's claim is that he did not receive adequate notice in advance of the hearing regarding some documents submitted by Jane Doe. Dillow does not allege



629.0449\NHS
4874-8981-1545 .v4

that he did not receive adequate or timely notice of the *charges* against him. He does not allege that he was not permitted to present witnesses, have a representative to advise him, or cross-examine Jane Doe. He does not allege that he could not present his own documents as evidence. He takes no qualm with the burden of proof at the disciplinary hearing. Rather, he merely claims that—in his opinion—the evidence was insufficient to meet that burden. His claim boils down to a mere disagreement with the findings made by the hearing officers. These allegations do not materially differ from those the Court previously found insufficient to state a claim for relief. See ECF No. 47, *23–24.

By the time of the hearing, Dillow had almost four months' notice of the allegations against him and a little over two months' notice of the initiation of the Title IX investigation by Virginia Tech. The investigator completed her report a month before the hearing. That was more than adequate time to prepare his defense and contact any witnesses. Accordingly, Dillow *still* fails to allege sufficient facts to suggest Virginia Tech denied him adequate notice and a meaningful opportunity to be heard. That Doe submitted an additional statement in advance of the hearing was not in the control of Defendants, and Defendants provided it to Dillow without any allegation of a delay. Dillow had the opportunity to review the statements in advance of the hearing rather than having to respond to them in the moment at the hearing. He also fails to allege that he was prevented from or otherwise unable to cross-examine Doe as to the "new" information he claims was in those documents. Finally, Doe fails to allege that he asked for a continuance or that the "new" information be excluded from consideration. See ECF No. 47, *23 n.16.

Additionally, while Dillow claims that Penermon did not investigate the "dynamic" between Doe and her ex-boyfriend, he does not allege that he was precluded from



- 15 -

presenting any information or evidence on that subject at the hearing, and he concedes that Penermon's report contained text messages and statements from Doe's ex-boyfriend. ECF No. 49, ¶ 30. Lastly, there are no factual allegations as to how the appeal was procedurally defective other than Dillow's disagreement with the outcome.

The Second Amended Complaint confirms Virginia Tech performed an investigation, provided Dillow with notice of the charges against him well before his hearing, provided him additional evidence from his accuser after receiving it and in advance of the hearing, held a hearing, and provided Dillow a right to appeal. Dillow has failed to remedy the myriad deficiencies highlighted by the Court in ruling on Defendants' prior Motion to Dismiss. Accordingly, Dillow's due process claim fails as a matter of law.

## IV. **Dillow Fails to Allege an Equal Protection or Title IX Claim Based on Gender Bias.**

Dillow's equal protection claim and Title IX claim rely on the same essential facts. When a plaintiff asserts an equal protection claim under the Fourteenth Amendment and a Title IX claim based on the same essential facts, courts typically analyze the two claims together. See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 238 (4th Cir. 2021) (affirming dismissal of equal protection claim for "largely the same reasons" as affirming dismissal of Title IX claim); Doe v. Fairfax Cnty. Sch. Bd., 403 F. Supp. 3d 508, 515 (E.D. Va. 2019) (analyzing equal protection and Title IX claims together); but see Peltier v. Charter Day Sch., Inc., 8 F.4th 251, 273–74 (4th Cir. 2021) (citing Wilcox v. Lyons, 970 F.3d 452, 463–64 (4th Cir. 2020)), aff'd en banc 37 F.4th 104 (4th Cir. 2022).

### a. **Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S.



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

Const., amend. XIV. The guarantee is one of laws, not results. <u>Personnel Adm'r of Mass. v.</u> <u>Feeney</u>, 442 U.S. 256, 273 (1979). To state an equal protection claim under the Fourteenth Amendment, "'a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.'" <u>Sheppard</u>, 993 F.3d at 238 (quoting <u>Equity in</u> <u>Athletics, Inc. v. Dep't. of Educ.</u>, 639 F.3d 91, 108 (4th Cir. 2011)). "Allegations of a procedurally or otherwise flawed proceeding combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." <u>Sheppard v. Visitors</u> <u>of Va. State Univ.</u>, No. 3:18cv723, 2019 WL 6039953, 2019 U.S. Dist. LEXIS 198012, *12 (E.D. Va. Nov. 14, 2019) (internal quotations omitted).

b. **Title IX**

Title IX of the Education Amendments of 1972 provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance.

20 U.S.C. § 1681(a).

In <u>Sheppard</u>, the Fourth Circuit clarified the pleading standard for individual Title IX claims in the Fourth Circuit. <u>Sheppard</u>, 993 F.3d at 235–37. The <u>Sheppard</u> Court agreed— in part—with the approach to Title IX cases adopted by the Seventh Circuit, which asks whether "the alleged facts, if true, raise a plausible inference that the university discriminated against the student on the basis of sex?" <u>Sheppard</u>, 993 F.3d at 236 (internal quotations omitted). The <u>Sheppard</u> Court clarified, however, that "a Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged [decision]." <u>Id.</u> That causal link requires "'but-for' causation," which



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

means that the plaintiff's "gender was the 'but-for' cause of his treatment . . . ." Id. at 236–37, 238 (citations omitted). [6]

To meet that standard, the plaintiff must identify "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." Doe I v. Va. Tech, 400 F. Supp. 3d at 503 (internal quotations and citation omitted). Allegations of "clear procedural irregularities" that "are sufficiently numerous, lopsided, and/or important" may "sometimes support an inference of sex discrimination." Jacob Doe v. Va. Tech, No. 7:19cv249, 2022 WL 144420, 2022 U.S. Dist. LEXIS 144420, *32 (W.D. Va. Aug. 12, 2022) (internal quotations and citations omitted).[7]

Mere conjecture and speculation of discrimination based on sex, however, fails to state a claim under Title IX. Yusuf, 35 F.3d at 715. That a plaintiff believes that his gender was the reason for the alleged discriminatory action, "absent more, does not suffice to render his claim plausible." Sheppard, 993 F.3d at 238. Indeed, mere conclusory allegations are insufficient to make it plausible that gender bias was the but for cause of an alleged erroneous outcome of a disciplinary proceeding. See Doe v. W. New Eng. Univ., 228 F. Supp. 3d 154, 190 (D. Mass. 2016), adopted by 228 F. Supp. 3d 154 (D. Mass. 2017); Sahm v. Miami Univ., 110 F. Supp. 3d 774, 778–80 (S.D. Ohio 2015) (dismissing plaintiff's Title IX claim because the complaint failed to allege any statements of members of the disciplinary body

---

[6] Prior to the decision in Sheppard, courts in the Western District of Virginia generally followed the analysis set forth in Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994) for analyzing Title IX claims. Doe I v. Va. Tech, 400 F. Supp. 3d at 502–03. The Sheppard Court explained that the "selective enforcement" and "erroneous outcome" theories in Yusuf could be avenues to establish the requisite "but for" causation. Sheppard, 993 F.3d at 236.

[7] Hereinafter "Jacob Doe II v. Va. Tech".

629.0449\NHS
4874-8981-1545 .v4

or university officials or any patterns of conduct that permitted the court to infer bias against male students).[8]

**c.  Dillow offers only conclusory allegations of gender bias.**

Dillow's equal protection and Title IX claims fail to state a claim for multiple reasons.

First, he fails to identify a comparator in "circumstances sufficiently similar to his own and . . . treated more favorably by the school." Doe v. Fairfax Cnty. Sch. Bd., 403 F. Supp. 3d 508, 516 (E.D. Va. 2019) (internal quotations omitted). To be "sufficiently similar" for equal protection purposes, the comparator "*must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it.'" Sheppard, 2019 U.S. Dist. LEXIS 70661 at *12 (quoting Saravanan v. Drexel Univ., No. 17-3409, 2017 U.S. Dist. LEXIS 193925, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017)). Thus, "[w]here an accused student seeks to use their accuser as a comparator, the two can be compared to show selective enforcement 'only if they both initiate or attempt to initiate a complaint against each other.'" Doe v. Fairfax Cnty. Sch. Bd., 403 F. Supp. 3d at 516 (quoting Doe v. Fairfax Cnty. Sch. Bd., 384 F. Supp. 3d 598, 608 (E.D. Va. 2019)). Because Dillow does not allege that he made a complaint against his accuser for similar misconduct, Dillow's claim fails as a matter of law. Id. (citing Doe v. Fairfax Cnty. Sch. Bd., 384 F. Supp. 3d 598, 609 n.6 (E.D. Va. 2019); Rossley v. Drake Univ., 342 F. Supp. 3d 904, 933 (S.D. Iowa 2018)).

---

[8] See also Doe v. Univ. of Mass-Amherst, No. 14-30143, 2015 WL 4306521, 2015 U.S. Dist. LEXIS 65452, at *27 (D. Mass. July 14, 2015); Harris v. St. Joseph's Univ., 2014 WL 1910242, 2014 U.S. Dist. LEXIS 65452, at *16–17 (E.D. Pa. May 13, 2014) (dismissing plaintiff's Title IX claim due to his failure to allege sufficient facts to support his claim that gender bias was a motivating factor in the university's decision); see also King v. DePauw Univ., No. 2:14cv70, 2014 U.S. Dist. LEXIS 117075, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) (denying plaintiff's motion for a preliminary injunction based on an alleged violation of Title IX due to the absence of any evidence that "plaintiff's gender was a motivating factor in any of [the university's] actions").

Second, Dillow's Complaint is entirely devoid of any allegations raising an inference that any defendant was motivated by discriminatory animus. <u>Sheppard</u>, 993 F.3d at 238. The only allegations Dillow relies on to support any gender bias are entirely conclusory. <u>See</u> ECF No. 49, ¶ 75, 98, 103, 110.

The core of Dillow's claim is simply that the defendants chose to believe Jane Doe's version of events rather than Dillow's, and therefore the defendants must have been motivated by discriminatory animus. But these are exactly the type of conclusory allegations rejected by this Court and others time and again. ECF No. 47, *24–26; <u>Jacob Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 144420, *28. And there are zero allegations raising any inference of gender bias in regard to the appellate officer or the appeal process.

Indeed, if Dillow's logic rang true, then if the defendants chose to believe Dillow over Doe, that would be the result of discriminatory animus against females. This is the very Catch-22 situation courts have sought to prevent by strictly requiring allegations of facts and circumstances demonstrating gender bias, not just the plaintiff's disagreement with the outcome. And without allegations that any defendant was motivated by discriminatory animus, the implication is that the defendants chose to believe the accuser over the accused, which does not amount to discrimination. <u>See</u> <u>Jacob Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 144420, *28; <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) (bias in favor of alleged victims of sexual assault and against alleged perpetrators is not the equivalent of bias against males) (collecting cases); <u>Doe v. Univ. of Cincinnati</u>, 173 F. Supp. 3d 586, 607 (S.D. Ohio 2016); <u>Haley v. Va. Commonwealth Univ.</u>, 948 F. Supp. 573, 579 (E.D. Va. 1996).



629.0449\NHS
4874-8981-1545 .v4

Even if the Defendants reached the wrong decision here, "'trials in civil courts sometimes produce erroneous outcomes as well as procedural errors. Appellate courts do not quickly infer that an erroneous result *must have been caused* by unlawful bias, especially in difficult credibility contests.'" <u>Jacob Doe II v. Va. Tech</u>, 2022 U.S. Dist. LEXIS 144420, *36 (quoting <u>Doe v. Univ. of S. Indiana</u>, 43 F. 4th 784, 799 (7th Cir. 2022)) (emphasis added). There are simply "no facts pled that would plausibly link [Dillow's suspension] . . . to any personal animus or discrimination on the part of the individual Defendants." <u>Nofsinger v. Va. Commonwealth Univ.</u>, No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, *29–30 (E.D. Va. July 13, 2012), <u>aff'd</u> 2013 U.S. App. LEXIS 6579 (4th Cir. Apr. 2, 2013); <u>see</u> <u>also</u> <u>Gulyas v. Appalachian State Univ.</u>, No. 5:16cv225, 2017 WL 3710083, 2017 U.S. Dist. LEXIS 137868, *24–25 (W.D.N.C. Aug. 28, 2017) (". . . Plaintiff does not allege any facts . . . that suggest that any bias . . . was attributable to Plaintiff's gender as opposed to the result of any number of possible non-protected factors . . . .").

Again, the crux of Dillow's claim appears to be that the hearing officers chose to believe Doe's version of events over Dillow's. But that alone coupled only with conclusory allegations of gender bias does not meet the pleading standard set forth in <u>Sheppard</u>. Without factual allegations to demonstrate the steep causation requirement that gender bias was "***the*** but-for" cause of the university's decision, Dillow fails to state a claim under the Equal Protection Clause or Title IX.

**V.** **<u>Negligence & Negligent Infliction of Emotional Distress</u>**

Dillow's negligence and negligent infliction of emotional distress claims are subject to the Virginia Tort Claims Act. Because he does not allege facts that he gave proper notice



629.0449\NHS
4874-8981-1545 .v4

or that such notice was timely, his claim fails as a matter of law. The Virginia Tort Claims Act provides that:

> the Commonwealth shall be liable for claims for money . . . on account of . . . personal injury or death caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment under circumstances where the Commonwealth . . . if a private person, would be liable to the claimant for such . . . injury or death.

Va. Code § 8.01-195.3. In Counts Four and Five, Dillow plainly alleges that employees of the Commonwealth caused him personal injury. Thus, these claims are subject to the VTCA. Regardless, Dillow's negligence claims would fail for myriad other reasons as well.

### a. **Neither Virginia Tech nor the individual defendants are proper parties to a VTCA claim.**

While the "General Assembly has provided an express, limited waiver of sovereign immunity by enacting the Virginia Tort Claims Act," Va. Code §§ 8.01-195.1 through 195.9, this express and limited waiver must be strictly construed, and it does not apply to the agencies of the Commonwealth. Billups v. Carter, 268 Va. 701, 707, 711, 604 S.E.2d 414, 418, 420 (2004). ("[T]he [Virginia Tort Claims] Act had the effect of creating a limited waiver of the sovereign immunity of the Commonwealth but not of its agencies."). The VTCA provides a "waiver only of the Commonwealth's sovereign immunity but does not disturb the sovereign immunity of the Commonwealth's agencies." Rector & Visitors of Univ. of Va. v. Carter, 267 Va. 242, 245, 591 S.E.2d 76, 78 (2004). Dillow bears the burden of demonstrating an unequivocal waiver of sovereign immunity, and any waiver must be strictly construed in favor of the State. See Williams v. United States, 50 F.3d 299, 204 (4th Cir. 1995); see also Library of Congress v. Shaw, 478 U.S. 310, 318 (1986).

Thus, Dillow's negligence claims are properly brought against the Commonwealth pursuant to the VTCA, not against Virginia Tech. Rector & Visitors of the Univ. of Va. v.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

- 22 -

Carter, 267 242, 244–46 (2004); see also Chamberlain v. Mathena, No. 7:19cv879, 2021 WL 789858, 2021 U.S. Dist. LEXIS 37076, *15–16 (W.D. Va. Mar. 1, 2021).  Dillow's failure to name the proper party is not a mere misnomer either. Billups, 268 Va. at 711 n.4, 591 S.E.2d at 420 n.4. Accordingly, Dillow fails to state a claim in Counts Four and Five.

### b. Dillow failed to give proper notice.

Not only did Dillow sue the wrong parties—again—Dillow failed to comply with the VTCA in the first place. Virginia Code § 8.01-195.6 provides, in pertinent part:

> The claimant or his agent, attorney or representative shall, in a claim cognizable against the Commonwealth, mail the notice of claim via the United States Postal Service by certified mail, return receipt requested, ***addressed to the Director of the Division of Risk Management or the Attorney General in Richmond***. . . .

> In any action contesting the filing of the notice of claim, the burden of proof shall be on the claimant to establish mailing and receipt of the notice in conformity with this section.

Here, as already noted, Dillow not only failed to give notice timely as required by the VTCA, but he also fails to allege facts showing that he sent the proper notice to the correct individual. As such, the negligence claims in Counts Four and Five must be dismissed.

### c. Dillow fails to allege a valid legal duty.

In order to state a claim for negligence under Virginia law, a plaintiff must identify a legal duty owed by the defendant. Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 271 Va. 206, 218, 271 S.E.2d 55, 62 (2006). Whether such a duty "exists is a pure question of law." Burns v. Gagnon, 283 Va. 657, 668, 272 S.E.2d 634, 641 (2012).

Dillow fails to state a claim for negligence because Virginia law does not impose a duty of care on universities or university employees to develop, implement, oversee, or follow policies or to generally look out for the well-being of students. In fact, the Supreme



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

629.0449\NHS
4874-8981-1545 .v4

Court of Virginia has rejected the notion that there is a special relationship between teachers and their students, and as many courts in this District have decided, it is unlikely the Supreme Court of Virginia "would conclude that a special relationship exists as a matter of law between colleges and universities and their students." <u>Schieszler v. Ferrum College</u>, 236 F. Supp. 2d 602, 609 (W.D. Va. 2002). Under these circumstances, "a federal district court is not empowered to recognize a new common law tort that has not been previously recognized by the Virginia courts," and "Virginia law does not support the proposition that a university owes its students a duty of care . . . ." <u>Owen v. Liberty Univ.</u>, 2020 U.S. Dist. LEXIS 64579, at *29–30; <u>Doe v. Washington & Lee Univ.</u>, 439 F. Supp. 3d 784, 797–98; <u>Jackson v. Liberty Univ.</u>, No. 6:17cv41, 2017 WL 3326972, 2017 U.S. Dist. LEXIS 122104 at *27 (W.D. Va. Aug. 3, 2017); <u>Chitty v. Liberty Univ.</u>, No. 6:13cv43, 2013 U.S. Dist. LEXIS 10502, 2013 WL 3877664, at *1 (W.D. Va. July 25, 2013), <u>aff'd</u>, 547 F. App'x 299 (4th Cir. 2013). As such, Dillow fails to state a claim for negligence under Virginia law.

**d. <u>The individual defendants enjoy sovereign immunity for state-law claims against them involving their use of discretion.</u>**

"'The doctrine of sovereign immunity remains 'alive and well in Virginia.'" <u>Pike v. Hagaman</u>, 292 Va. 209, 214, 787 S.E.2d 89, 92 (2016) (quoting <u>Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n</u>, 289 Va. 34, 56, 768 S.E.2d 79, 89 (2014)). It serves to protect "the state from burdensome interference with the performance of its governmental functions." <u>Id.</u> at 215 (internal quotations omitted). Certain government employees enjoy the same immunity as the state because the state can operate only through its servants. <u>Id.</u> Indeed,

> unless the protection of the doctrine extends to some of the people who help run the government, the majority of the purposes for the doctrine will remain unaddressed. For example, limiting protection to the State itself does



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

- 24 -

nothing to insure that officials will act without fear. If every government employee is subject to suit, the State could become as hamstrung in its operations as if it were subject to direct suit.

Messina v. Burden, 228 Va. 301, 308, 321 S.E.2d 657, 661 (1984). Sovereign immunity also protects the public purse, provides a safety net for those reluctant to pursue public service, and "promotes the proper administration of government." Id. at 307-08, 321 S.E.2d at 660.

To determine whether a state employee is entitled to the protection of sovereign immunity, Virginia courts apply a four-factor test which considers:

1. The function the employee was performing;
2. The state's interest and involvement in that function;
3. Whether the act performed by the employee involved the use of judgment and discretion; and
4. The degree of control and direction exercised by the state over the employee.

Pike, 292 Va. at 215 (citing James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980)). Where (1) the function at issue is one in which the state has an interest; (2) the function is under the control of the state; and (3) the function involves the use of judgment and discretion, then sovereign immunity applies. See Messina, 228 Va. at 313-14, 321 S.E.2d at 664.

Dillow alleges that each individual defendant is a high-ranking official within Virginia Tech's administrative framework. It is beyond question that the Commonwealth has a direct interest and involvement in Virginia Tech, its largest university. Peterson v. Commonwealth, 80 Va. Cir. 21, 26 (2010). The General Assembly exercises control over Virginia Tech's Board of Visitors, Va. Code § 23-91.24, and the operations of public institutions of higher learning in the Commonwealth are governed by Title 23 of the Virginia Code. The judgments and decisions of the defendants (to the extent alleged) involved their discretion in the investigation and adjudication of Dillow's conduct violations. See, e.g., Burns v. Gagnon, 283 Va. 657, 676, 727 S.E.2d 634, 646 (2012); Stanfield



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW

- 25 -

v. Peregoy, 245 Va. 339, 343–44, 429 S.E.2d 11, 13 (1993); Lentz v. Morris, 236 Va. 78, 82–83, 372 S.E.2d 608, 610–11 (1988); Messina v. Burden, 228 Va. at 310, 321 S.E.2d at 662. Accordingly, each individual defendant is entitled to sovereign immunity to the extent Dillow seeks to hold them individually liable for any alleged negligence.

**e.   Plaintiff fails to state facts to support a NIED claim**

As noted above, Dillow's NIED claim fails because Defendants did not owe him any legal duty. Owen v. Liberty Univ., 2020 U.S. Dist. LEXIS 64579, at *64.

Additionally, the tort of negligent infliction of emotional distress has historically been disfavored under Virginia law. Naccash v. Burger, 223 Va. 406, 415, 290 S.E.2d 825 (1982); Hughes v. Moore, 214 Va. 27, 34, 197 S.E.2d 214 (1973); Bowles v. May, 159 Va. 419, 433, 166 S.E. 550 (1932). The claim may proceed only when

> "the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury."

Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 523 S.E.2d 826, 833–34 (2000) (quoting Hughes, 214 Va. at 34, 197 S.E.2d at 219). Dillow fails to allege he suffered any "fright or shock" or any physical injury as a result of any of the individual defendants' alleged negligence. Owen v. Liberty Univ., 2020 U.S. Dist. LEXIS 64579, *64–65. Accordingly, Dillow fails to state a claim for negligent infliction of emotional distress.

## CONCLUSION

Dillow's *third* bite at the apple fails to rectify the myriad deficiencies originally identified by Defendants and the Court. Accordingly, Defendants Virginia Polytechnic Institute and State University, Shara Penermon, Rachael Tully, and Steven Schuh, by



629.0449\NHS
4874-8981-1545 .v4

counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case with prejudice, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND
STATE UNIVERSITY, SHARA PENERMON,
RACHAEL TULLY, and STEVEN SCHUH

/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:      540/772-9167
Email: klondos@faplawfirm.com
          nschnetzler@faplawfirm.com

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Defendants*

FAP
FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW

- 27 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ Nathan H. Schnetzler
Of Counsel

629.0449\NHS
4874-8981-1545 .v4