IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT DILLOW, | ) |
| Plaintiff, | ) Case No. 7:22cv00280 |
| v. | ) **MEMORANDUM OPINION** |
| VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, *et al.*, | ) By:   Hon. Thomas T. Cullen </br> United States District Judge |
| Defendants. | ) |

This matter is before the court on motions to dismiss (ECF Nos. 52 & 55) Plaintiff Robert Dillow's Second Amended Complaint (ECF No. 49). The court previously granted motions to dismiss Dillow's First Amended Complaint, identifying numerous factual and legal deficiencies with his prior pleading. (*See* Mem. Op., Mar. 2, 2023 [ECF No. 47].) Because those deficiencies persist in his latest Complaint, the court has no alternative but to grant the motions to dismiss. As this Complaint represents Dillow's third bite at the apple, the court must also conclude that the facts do not exist to support the legal actions he asserts, that further pleading would be futile, and that this dismissal must be with prejudice.

### I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The facts are taken from Dillow's Second Amended Complaint, and at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts were described in the court's prior Memorandum Opinion (ECF No. 47), and this Complaint, as far as the court can

tell, does not contain any substantive factual additions.[1]

In January of 2020, Dillow and Jane Doe, students at Defendant Virginia Polytechnic Institute and State University ("Virginia Tech"), met on the dating app Tinder and agreed to "hang out." They went to dinner with Dillow's friend, had one drink each, and then moved on to a bar, where Dillow and Doe each had another drink and shared a cocktail. After about two hours, the group decided to return to Dillow's apartment; they arranged to have Dillow's friends pick them up and move Doe's car so that it would not be towed. The group arrived at Dillow's apartment around 11:00 p.m., where they played video games and tried to make brownies. (*Id.* ¶¶ 17–21.)

At some point, Doe was in Dillow's bedroom, but Dillow claims that he does not recall whether the two of them had sex. Doe ultimately fell asleep on the couch in the living room around 12:30 a.m., but she awoke approximately 30 minutes later and called her roommate (who is also her ex-boyfriend) to pick her up. When she left Dillow's apartment, she kissed him goodbye. (*Id.* ¶ 22.)

The next day, Dillow and Doe "texted back and forth in an amicable fashion." Dillow texted Doe: "I found a condom wrapper on the floor so we either f*cked or we decided to blow it up like a balloon Lmao." Dillow contends that this was not an admission that he and Doe had sex; it was only a joke. In fact, Dillow cannot recall if he and Doe had sex or not. Doe, however, "came to believe that a sexual assault had occurred." She went to the Blacksburg Police Department that day and formally accused Dillow of sexual assault. She also

---

[1] To be sure, the Second Amended Complaint is replete with legal conclusions, but legal conclusions devoid of factual support do not make for an actionable claim.

had a sexual assault PERK examination performed. The Blacksburg police took statements from Dillow and his friend, but ultimately, the Montgomery County Commonwealth's Attorney "declined to bring charges against [Dillow] due to a lack of evidence." (*Id.* ¶¶ 23–24.)

After reporting the alleged assault to the police, but before the charging decision was made, Doe contacted Virginia Tech's Title IX office and reiterated her allegation that Dillow had sexually assaulted her. On February 11, 2020, Defendant Shara Penermon, a Title IX investigator at Virginia Tech, informed Dillow that he was the subject of a Title IX investigation and instructed him not to have any contact with Doe. Penermon was responsible for investigating Doe's complaint and creating an investigation report, including statements from Doe, her ex-boyfriend, Dillow, and other witnesses. Her report also contained screenshots of the text messages Doe and Dillow exchanged, as well as text conversations between Doe and her ex-boyfriend. Although the report contained a copy of the police report, the results of the PERK exam were not included. Penermon submitted her report on March 23, 2020, and a hearing was scheduled for April 22, 2020. (*Id.* ¶¶ 29–32.)

On April 21, Dillow received several additional documents that Doe had prepared for the Title IX hearing. Dillow describes the documents as providing "an extremely inflammatory and biased account of the alleged incident that is unmistakably slanted towards Jane Doe's point of view." Doe's new evidence "contained material assertions that were absent from" Doe's statements during the Title IX investigation. Notably, the new documents included the allegation that the PERK exam revealed evidence that Doe had been in contact with a latex condom, that she was allergic to latex, and that Doe had "hickies" on her neck. Apparently, the actual results of the PERK exam were not disclosed, only Doe's representations as to what

those results revealed. Dillow does not allege that he requested a continuance of the hearing to review and respond to Doe's new evidence, but he does assert that he "did not have time to meaningfully respond to any of the assertions contained" in the new documents. (*Id.* ¶¶ 32–33.)

At the Title IX hearing the next day, Defendant Steven Schuh (Virginia Tech's Assistant Director of Student Conduct) was "responsible for reviewing all the information that was provided for the hearing and determining whether [Dillow] committed a violation of Virginia Tech policy." On April 24, Schuh informed Dillow "that he was found responsible for the offense of Sexual Violence-Rape." Dillow was subsequently suspended from Virginia Tech for two years. On May 3, 2020, Dillow appealed the decision, but on June 16, he was notified that the original decision had been upheld. (*Id.* ¶¶ 34–35, 40.)

Dillow filed suit in this court on June 2, 2022. Defendants Shani Sloan and Rachael Tully appeared specially to move to dismiss the complaint for improper service. (ECF No. 24). On September 21, 2022, Dillow filed an amended complaint. (ECF No. 26). The remaining defendants—Virginia Tech, Penermon, Schuh, Katie Polidoro, Anthony Scott, and Frances Keene[2]—filed motions to dismiss for lack of jurisdiction (ECF No. 30) and for failure to state a claim (ECF No. 33). The court heard oral argument on the motions on November 16, 2022, and granted all three motions to dismiss, dismissing all claims without prejudice on March 2, 2023. Dillow was given the opportunity to file a second amended complaint, which he did on March 23, 2023, naming only Virginia Tech, Penermon, Schuh, and Tully as defendants. Defendants filed motions to dismiss for lack of jurisdiction (ECF No. 52) and for

---

[2] Polidoro, Scott, Keene, Sloan, and Tully are no longer parties in the instant suit.

failure to state a claim (ECF No. 55). On April 17, 2023, Dillow voluntarily dismissed his claims against Tully. (ECF No. 58.) After reviewing the relevant pleadings, the parties' arguments, and the applicable law, this matter is ripe for disposition.[3]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits defendants to move for dismissal for lack of subject matter jurisdiction. District courts must "view the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (*quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further

---

[3] The court dispenses with a second round of oral arguments because the arguments of the parties are adequately set forth in their written pleadings and argument would not aid the court in deciding the issues before it.

factual enhancement,'" or "a formulaic recitation of the elements of a cause of actions will not do." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

In his second amended complaint, Dillow adds parenthetical explanations next to each count to indicate the party against whom he brings each claim.[4] Taking these new distinctions at face value, Dillow asserts two causes of action against Virginia Tech and three causes of action against administrators Penermon and Schuh. Against Virginia Tech, Dillow asserts: a Section 1983 action for violation of his due process rights (Count 1); and violation of Title IX, 20 U.S.C. § 1681 (Count 3). Against Penermon and Schuh, Dillow asserts: a Section 1983 action for violation of his due process rights (Count 2)[5]; negligence (Count 4); and negligent infliction of emotional distress (Count 5). The defendants have filed two motions attacking the complaint, and the court will address them in turn.

#### A. **Motion to Dismiss for Lack of Jurisdiction (Fed. R. Civ. P. 12(b)(1))**

Virginia Tech moves to dismiss Count 1 because Virginia Tech is not a "person" within the meaning of 42 U.S.C. § 1983. Section 1983 imposes civil liability on any person who, acting under color of state law, deprives another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. "[A] suable 'person' under § 1983

---

[4] One of the glaring deficiencies noted by the court in Dillow's prior pleading was its lack of specificity as to whom each claim was brought against.

[5] While both parties present arguments that involve Plaintiff's purported equal protection claim, the Second Amended Complaint does not adequately allege an equal protection claim beyond making the bare legal conclusion that "defendants deprived [Dillow] of his right to equal protection of the laws without any substantial or justified basis for treating him in this disparate manner." (Second Am. Compl. ¶ 65.) To the extent that Dillow alleges an equal protection claim in Count 2, the court will dismiss it for failure to state a claim, as conclusory assertions of wrongdoing of this type are plainly insufficient. *See, e.g.*, *Hronek v. Maryland*, No. RDB-06-492, 2006 WL 4488736, at *1 (D. Md. Apr. 6, 2006) ("Plaintiff's bald and conclusory allegations of discrimination are insufficient to sustain an equal protection claim.").

does not include a state, a state agency, or a state official sued in his or her official capacity for damages." *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18cv189, 2018 WL 5018487, at *9 (W.D. Va. Oct. 15, 2018) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)).

As the court previously concluded, Virginia Tech is a state agency, not a "person"; the Section 1983 claim asserted against it must be dismissed.[6] (*See* Mem. Op. p. 11, Mar. 2, 2023 [ECF No. 47] (citing *Zhao*, 2018 WL 5018487, at *4 ("Virginia Tech is . . . not a 'person' amenable to suit under § 1983 . . . .")).)

In addition, Defendants Penermon and Schuh move to dismiss the state law claims brought under the Virginia Tort Claims Act ("VTCA"), as Virginia state courts retain exclusive jurisdiction to hear claims under the VTCA. *See* Va. Code Ann. § 8.01-195.4 (stating that "[t]he general district courts shall have exclusive original jurisdiction" over claims under the VTCA); *Creed v. Virginia*, 596 F. Supp. 2d 930, 938 (E.D. Va. 2019) ("The Virginia legislature consented to suit with the express provision that such suits could be heard 'exclusive[ly]' in Virginia courts. The phrase 'shall have exclusive original jurisdiction to . . . render judgment' suggests that the claim must remain with a Virginia court from inception to final judgment. Thus, it does not appear that a VTCA claim could be brought in a federal court in the first instance. Even if a district court could exercise supplemental jurisdiction over it, such an assertion of jurisdiction would violate the terms of the state's agreement to limit its sovereign immunity."). Dillow concedes that the two claims brought under the VTCA must be dismissed for lack of

---

[6] The claims against Virginia Tech are also barred be the Eleventh Amendment "regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. b. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

subject matter jurisdiction. (*See* ECF No. 60.) Accordingly, the court will dismiss Counts 4 and 5 as well.

### B. Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

Counts 1, 4, and 5 will be dismissed under Fed. R. Civ. P. 12(b)(1); that leaves only Counts 2 and 3. As it relates to these remaining claims, when compared to his original complaint (which the court concluded failed in several material respects), Dillow has made few adjustments to his allegations and, importantly, does not allege any additional facts that raise his right to relief above a speculative level. For the reasons discussed below, Count 2 against Defendants Penermon and Schuh and Count 3 against Virginia Tech must be dismissed for failure to state a claim.[7]

### i. Count 2: Dillow did not allege a protected property or liberty interest for his due process claim and, even if he did, his allegations confirm that he was not deprived of his due process rights.

To state a procedural due process claim, a plaintiff must allege: "(1) that he had a constitutionally cognizable life, liberty, or property interest; (2) that deprivation of that interest was caused by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-00378, 2023 U.S. Dist. LEXIS 30717, *13 (W.D. Va. Feb. 22, 2023) (citing *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)).

---

[7] Dillow begins his opposition brief by calling for the court to deny Defendants' motion to dismiss for Defendants' failure to conform with Rule 11(a) of the Federal Rules of Civil Procedure. (*See* Pl. Opp'n Defs.' Mot. Dismiss p. 2 [ECF No. 61].) The Local Rules for the United States District Court for the Western District of Virginia state: "The electronic filing of a petition, pleading, motion, or other paper by an attorney who is a registered participant in this Court's CM/ECF system shall constitute the signature of that attorney under Federal Rule of Civil Procedure 11 and for all other purposes." W.D. Va. Gen. R. 7(c). The court need not address Dillow's argument further.

**a) Dillow did not allege a protected property interest.**

Despite the court's previous finding that Dillow did not have a property interest based on an implied contract between himself and Virginia Tech, Dillow again alleges that he has a protected property interest in his undergraduate degree. Dillow maintains that "he entered into a contract with Virginia Tech in which [he] was to obtain educational instruction in mutual consideration for payment of funds." (Second Am. Compl. ¶ 11.) Dillow recycles the same allegations regarding this alleged contract and argues that his "furnish[ing] the set tuition. . . complet[ed] the contract for educational services to obtain an undergraduate degree." (*See* ECF No. 61 at 5.) While Dillow correctly cites to *Doe v. Washington & Lee University*, 439 F. Supp. 3d 784, 796 (W.D. Va. 2020), for the proposition that "[t]here is a dearth of authority from Virginia courts holding that an implied contract is created through payment of tuition," the holding in that case cuts squarely against the argument he makes here: specifically, that his payment of tuition created a protected property interest. (*See* ECF No. 61 at 4–5.) To the contrary, and as this court previously held,"[n]othing in the act of paying tuition implies that a student is entitled to any specific procedural protections," and "to the extent that any contract can be implied between a student and his or her university, the student is only protected from irrational, haphazard treatment by the university." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 589 (E.D. Va. 2018).

In its prior opinion, the court cited *Doe v. Alger*, 175 F. Supp. 3d 646 (W.D. Va. 2016), to explain why Dillow had not adequately alleged the existence of a property interest in his continued enrollment at Virginia Tech. Now, Dillow alleges that "Defendant Virginia Tech has a policy in which students are not dismissed without due cause." (Second Am. Compl.

¶ 45.) This additional allegation, presumably included in hopes that the court would "give him the opportunity to prove the legitimacy of his claim to a property right 'in light of the policies and practices of the institution,'" *Alger*, 175 F. Supp. 3d at 658 (cleaned up), is not sufficient to survive a motion to dismiss. While Dillow does mention a policy at Virginia Tech, this singular statement, if true, is not sufficient to show that he has a constitutionally protected property interest in continued enrollment at Virginia Tech. *Accord Doe v. Va. Polytechnic Inst. & State Univ.*, 2023 U.S. Dist. LEXIS 30717, at *21 (finding that a reference to Virginia Tech's "various policies and customs" coupled with citations to the Virginia Tech Code of Conduct was insufficient to show a property interest in his continued enrollment).

It is true, of course, that Judge Dillon found allegations of a property interest sufficient in *Alger*. In that case, the court concluded that the plaintiff's allegation that James Madison University ("JMU"), through its policies and procedures, only dismissed students for cause was sufficient to state a property interest in continued enrollment at the school. The plaintiff further alleged that, through those policies and procedures, JMU "substantially limited its ability to suspend, expel or dismiss" students after admission. *Alger*, 175 F. Supp. 3d at 657. Those allegations, coupled with allegations regarding JMU's adoption of a "students['] rights policy," persuaded the court to "give [the plaintiff] the opportunity to prove the legitimacy of his claim to a property right 'in light of the policies and practices of the institution.'" *Id.* at 658 (quoting *Perry*, 408 U.S. at 603). But Dillow's singular, conclusory allegation does not approach the specific claims asserted by the plaintiff in *Alger*. And after three attempts, the court must conclude that the facts do not exist.

### b) Dillow did not allege a protected liberty interest.

Dillow alleges that his suspension infringed upon his "good name and reputation for his future academic and professional career," which he contends is a "constitutionally protected and clearly established liberty interest." (Second Am. Compl. ¶ 63.) To state a constitutionally protected liberty interest, the plaintiff must satisfy both prongs of the "stigma-plus" standard: "a reputation injury (the stigma), accompanied by a state action that distinctly altered or extinguished a legal status or right (the plus)." *Alger*, 175 F. Supp. 3d at 660 (citing *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012); *Doe v. Rectors & Visitors of Geo. Mason Univ.*, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015)). The legal right must be a statutory right, with employment cases being an exception to this requirement. *Id.* To allege a reputational injury, a plaintiff must show: "[(1)] a statement 'stigmatizing his good name' and damaging his standing in the community; (2) some type of dissemination or publication of the statement; and (3) some other government action that 'alter[s] or extinguishe[s] one of his legal rights.'" *Elhady v. Kable*, 993 F.3d 208, 225 (4th Cir. 2021) (quoting *Paul v. Davis*, 424 U.S. 693, 706–11 (1976)).

Even if the court assumes that the disciplinary action and attendant adverse reputational effects satisfy the first element, Dillow has not alleged facts that support the second or third elements. Dillow does not claim that Virginia Tech disseminated or publicized the fact that he was suspended because he was found guilty of sexual assault. Dillow speculates that he will need to disclose the Title IX violation when he applies to graduate schools in the future, but he does not allege that the information has already been disclosed. Furthermore, Dillow has not alleged facts that, if true, would establish that he had a legal right or status that

was altered or extinguished by Virginia Tech's actions. He alleges that his "status changed from being a full-time student in good standing, to being a student suspended for two years," (Second Am. Compl. ¶ 86), but this does not alter any legal right; "[T]here is no statutory right to be a public college or university student." *Alger*, 175 F. Supp. 3d at 660. Therefore, Dillow has not alleged a sufficient liberty interest to state a procedural due process claim.

### c) Dillow received due process.

And if those failings weren't sufficient to warrant dismissal, when Dillow's complaint is read as a whole, his allegations establish that he received the due process that the Constitution requires. As a general rule, "due process" requires "notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "[W]hat process is due" is a "flexible" inquiry that depends on the "particular situation" at hand. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To meet the standard of due process in the student-discipline context, "[t]he proceedings need not . . . take the form of 'a judicial or quasi-judicial trial;' so long as the student is given notice of the charges against him, notice of the time and hearing, and a full opportunity to be heard," due process is satisfied. *B.S. v. Bd. of Sch. Trustees*, 255 F. Supp. 2d 891, 898 (N.D. Ind. 2003) (quoting *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010–11 (7th Cir. 2002)).

Dillow reiterates the same allegations in his Second Amended Complaint regarding notice and his opportunity to be heard, but the court previously determined that Dillow's allegations, taken as true, establish that he, in fact, *received* due process, and that the process employed by Virginia Tech that led to the allegedly erroneous outcome did not violate his

rights.[8] Dillow received notice of the charges against him two months in advance of his hearing; he received a copy of the investigator's report one month before the hearing; he received a copy of additional evidence the day before the hearing;[9] he was given an opportunity to be heard and present his defense; and he had an opportunity to appeal, which he did. Consequently, Dillow's facts, as alleged, show that he received the minimum due process protections to which he was entitled, and he fails to state a claim for violation of his due process rights. *Accord Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508, 520 (E.D. Va. 2019) ("In light of these undisputed facts, which clearly establish that Plaintiff was afforded the notice and opportunity to be heard which are required for due process, Plaintiff's claimed deficiencies in the School Board's procedures . . . do not rise to the level of a denial of due process.").

In his Second Amended Complaint, Dillow again contends that Defendants did not provide him with a "meaningful opportunity to respond to Jane Doe's inflammatory

---

[8] Without passing any judgment whatsoever on the merits of Dillow's claim, the court notes that due process is only the promise of a fair proceeding, not necessarily a correct outcome. *See Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 501 (W.D. Va. 2019) ("[D]ue process does not require any particular result from such proceedings but simply that notice and an opportunity to be heard, appropriate to the context, are given."); *see also Butler v. Rector & Bd. of Visitors of the College of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005) (explaining that the argument that "William & Mary was wrong to believe the charges against her and not believe her" does not rise to the level of a procedural due process violation).

[9] On this point, the Fourth Circuit recently decided another case alleging violations of a student's due process rights during a Title IX hearing to adjudicate a claim of sexual assault. In that case, the Fourth Circuit noted that "[t]here's a difference between having notice of the charges and having notice of the evidence that supports those charges." *Doe v. Va. Polytechnic Inst. & State Univ.*, 77 F.4th 231, 239 (4th Cir. 2023). The Fourth Circuit did not decide the case on those grounds, and this court does not dismiss Dillow's claims on that ground either, but the distinction is one that is worth noting.

And even more compelling is the Fourth Circuit's repeated reference to Doe's pleading failures—specifically, as it relates to "new" evidence brought forth for the first time at Doe's hearing, "the complaint doesn't allege that [Doe] objected to the new evidence or asked to continue the proceedings." *Id.* Like the court previously noted (and emphasizes again today), Dillow does not allege that he asked for time to consider the new (and admittedly important) evidence or that any such request was denied. This is fatal to his claim.

documents" (Second Am. Compl. ¶ 73), but he still does not allege that he asked for additional time to respond to the new evidence or that Defendants denied any such request. *Cf. Doe v. Va. Polytechnic Inst. & State Univ.*, 77 F.4th 231, 240 (4th Cir. 2023) (holding that the argument that an accused student is entitled to "advance notice of the evidence to be presented against" his was "more striking here because Doe doesn't allege that he sought a continuance . . . ."). Dillow also does not allege that he was denied an opportunity to present his own evidence or witnesses; he simply disagrees with Defendant Schuh's findings and believes that the evidence did not meet a preponderance of the evidence standard. (*Id.* ¶¶ 76–78.) These allegations do not rise to a deprivation of Dillow's due process rights, and therefore, the court must dismiss Count 2 for failure to state a claim.

### ii. Count 3: Dillow's complaint lacks allegations of gender bias, an omission which is fatal to his Title IX claim.

Despite being afforded the opportunity to amend his pleading to assert facts that might establish that bias against Dillow on account of his gender played a role in the hearing or contributed to its outcome, Dillow's amended complaint does not add any facts that, taken as true, would suggest—let alone establish—that his gender played any role in Virginia Tech's actions. Count 3 against Virginia Tech must be dismissed for failure to state a claim.

"[A] Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged [decision]." *Sheppard v. Visitors of Va. St. Univ.*, 993 F.3d 230, 236 (4th Cir. 2021). To plead causation, a plaintiff must identify "sufficiently particularized allegations of gender discrimination," such as statements or "'patterns of decision-making that also tend to show the influence of gender.'" *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 766 (D. Md. 2015). "In an erroneous outcome case, 'the claim is that the plaintiff

was innocent and wrongly found to have committed an offense' on the basis of gender bias."

*Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 502 (W.D. Va. 2019) (quoting

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

> To state a claim for erroneous outcome discrimination, a plaintiff must allege (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." To satisfy the third element, a plaintiff must do more than merely rely on "a conclusory allegation of gender discrimination . . . ." Sufficiently particularized allegations of gender discrimination "might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."

*Salisbury Univ.*, 123 F. Supp. 3d at 765–66 (D. Md. 2015) (quoting *Yusuf*, 35 F.3d at 715). "The first element [of erroneous outcome discrimination claim] can be satisfied by (1) pointing to procedural flaws in the investigatory and adjudicative process, (2) identifying inconsistencies or errors in the findings, or (3) challenging the overall sufficiency and reliability of the evidence." *Doe v. Fairfax Cnty. Sch. Board*, 384 F. Supp. 3d 598, 607 (E.D. Va. 2019).

Even if Dillow could satisfy the first element of erroneous outcome discrimination by challenging the overall sufficiency and reliability of the evidence (as he seems to do in both his complaint and his brief), he cannot satisfy the third element because he does not allege any causal links between the discriminatory conduct and gender bias. Dillow primarily alleges that Defendants took Jane Doe's account "at face value" and "as absolute fact," but he does not allege facts that would permit the court to conclude that Defendants did so *because of her gender*.[10]

---

[10] Dillow asserts that there was no basis to believe Doe's story over his own and posits that the only reason to do so would be gender bias. But even Dillow's allegations highlight a serious credibility concern: although

(Second Am. Compl. ¶¶ 111–12.)  Even if Dillow's allegations were sufficient to permit an inference that Virginia Tech acted in a biased manner against Dillow, he does not allege facts that suggest that any bias was attributable to his gender rather than other non-protected factors. Without particularized allegations from which the court could draw the inference that gender discrimination motivated Virginia Tech's action, Dillow's claim remains deficient and must be dismissed.

### IV. CONCLUSION

For these reasons, both motions to dismiss will be granted and Dillow's claims will be dismissed.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 12th day of September, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

Dillow claims that he only drank 2.5 drinks over the course of several hours, he cannot recall whether he and Dillow had sex or not. (*See* Second Am. Compl. ¶ 21.) He gives no other reason for his faulty memory, even though he learned soon thereafter that Doe had accused him of rape. Again, the court makes no judgment on the merits of Doe's allegations or Dillow's defense, but Dillow himself has conceded at least one reason to question his truthfulness.